**FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT A. LEVY, D.M.D., LLC, et al., | ) | |
| on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 4:20-cv-00643-SRC |
| v. | ) | |
| | ) | |
| HARTFORD FINANCIAL SERVICES | ) | |
| GROUP INC, DBA THE HARTFORD, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................................................... 1

II.   PROCEDURAL BACKGROUND ................................................................................. 2

III.  ARGUMENT ................................................................................................................. 4

    A.   The Amended Complaint Adequately Alleges That The Hartford (or HFSG) Was a Party to the Contracts ................................................................................................................................. 4

    B.   The Hartford Has Not Established the Basis for Dismissal for Lack of Standing ..................... 10

    C.   The Case Should Not Be Dismissed for Lack of Personal Jurisdiction ..................................... 11

    D.   The Amended Complaint States a Claim Against HFSG ......................................................... 13

    E.   In the Alternative, the Court Should Allow Discovery on Whether HFSG is the Alter Ego of the Other Defendants ................................................................................................................. 14

IV.   CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. v. St. Louis* Cty., *Mo.*,
   2015 WL 4426234 (E.D. Mo. July 17, 2015) ........................... 4

*Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*,
   836 F.3d 963 (8th Cir. 2016) ........................... 10

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ........................... 11

*Barry v. St. Paul Fire & Marine Ins. Co.*,
   555 F.2d 3 (1st Cir. 1977) ........................... 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................... 4

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................... 11

*Chaichian v. Hartford Fin. Servs. Grp., Inc.*,
   2016 WL 4480038 (W.D. Ark. Aug. 3, 2016) ........................... 13

*Dever v. Hentzen Coatings, Inc.*,
   380 F.3d 1070 (8th Cir. 2004) ........................... 11

*Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*,
   885 S.W.2d 771 (Mo. App. E.D. 1994) ........................... 14

*Engel v. Hartford Ins. Co. of the Midwest*,
   2012 WL 275200 (D. Nev. Jan. 31, 2012) ........................... 13

*Fleming Companies, Inc. v. Rich*,
   978 F. Supp. 1281 (E.D. Mo. 1997) ........................... 15

*In re Milk Prod. Antitrust Litig.*,
   195 F.3d 430 (8th Cir. 1999) ........................... 10

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
   648 F.3d 588 (8th Cir. 2011) ........................... 11, 12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................... 10

*LV Diagnostics, LLC v. Hartford Fin. Servs. Grp., Inc.*,
   2018 WL 651327 (D. Nev. Jan. 31, 2018) ................................................................ 13

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) ...................................................................................... 10

*Miller v. Redwood Toxicology Lab., Inc.*,
   688 F.3d 928 (8th Cir. 2012) ..................................................................................... 9

*Mt. Hebron Dist. Missionary Baptist Ass'n of AL, Inc. v. Hartford Co.*,
   2017 WL 2486092 (M.D. Ala. Mar. 16, 2017) ........................................................ 13

*NBL Flooring, Inc. v. Trumbull Ins. Co.*,
   2014 WL 317880 (E.D. Pa. Jan. 28, 2014) .............................................................. 13

*NBL Flooring, Inc. v. Trumbull Ins. Co.*,
   2012 WL 3135533 at *2 (E.D. Pa. Aug. 1, 2012) .................................................... 13

*Pfountz v. Navient Sols., LLC*,
   2018 WL 534434 (E.D. Mo. Jan. 24, 2018) ............................................................... 4

*Saidawi v. Giovanni's Little Place, Inc.*,
   987 S.W.2d 501 (Mo. App. E.D. 1999) .................................................................... 14

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) .................................................................................................... 4

*Smith v. Sentinel Ins. Co.*,
   2011 WL 2883433 (N.D. Okla. July 15, 2011) ........................................................ 14

*Smith v. Sentinel Ins. Co., Ltd.*,
   2010 WL 5174377 (N.D. Okla. Dec. 15, 2010) ....................................................... 14

*Stalley v. Catholic Health Initiatives*,
   509 F.3d 517 (8th Cir. 2007) .................................................................................... 10

*Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir.2011) ..................................................................................... 11

*Whaley v. Esebag*,
   946 F.3d 447 (8th Cir. 2020) .................................................................................... 11

*Winkler v. Hartford Fin. Servs. Grp., Inc.*,
   2011 WL 1705559 (D. Nev. May 3, 2011) .............................................................. 13

*Wong v. Wells Fargo Bank N.A.*,
  789 F.3d 889 (8th Cir. 2015) ........................................................................................ 10

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................... 2

Fed.R.Civ.P. 12(b)(6) ..................................................................................................... 9

## I.    INTRODUCTION

Defendant Hartford Financial Services Group ("HFSG" as it calls itself or "The Hartford" as Plaintiffs do) bases its argument that it has nothing to do with this case principally on the supposed fact that it is merely "a holding company that does not write insurance."[1] For this, it relies on nothing but a self-serving statement in an SEC document that it "has no significant business operations of its own" and its assertion that "The Hartford" is simply "a registered trademark that refers to HFSG and all of the subsidiaries that provide property and casualty insurance." Def. Mem. at 4. To establish the crucial fact that "The Hartford" is merely a registered trademark and not a name that it uses for itself, it relies on one exhibit, a page from its SEC Form 10-K, which it submitted as Exhibit 1, Doc. # 22-1. *See* Def. Mem. at 4 ("'The Hartford' is a ***registered trademark*** that refers to HFSG and all of the subsidiaries that provide property and casualty insurance. *See* Ex. 1, Form 10-K at p. 6."), 10 ("'The Hartford' is a ***registered trademark*** used by HFSG and its subsidiaries and does not refer to any specific entity. Ex. 1, Form 10-K at p. 6.") (emphasis added). But a search of HFSG's Exhibit 1 for the words "registered trademark" – or even just "trademark" – comes up empty and puts the lie to The Hartford's argument. Nowhere in this exhibit, whether on page 6 or anywhere else, is there a reference to a "trademark." Thus, the record is devoid of anything other than HSFG's unsupported say-so to support its notion of what "The Hartford" refers to or doesn't refer to.

As Plaintiffs show herein, the insurance policies at issue in this case refer over and over again to the entity with which the insured is doing business as "The Hartford"– in fact, by as many as ***40 times*** the number of references to the nominal "insurers," two of which, Sentinel Insurance Company ("Sentinel") and Twin City Fire Insurance Company ("Twin City"), don't

---

[1] Memorandum of Law in Support of Defendant Hartford Financial Services Group, Inc.'s Motion to Dismiss Under Rule 12(b)(1), 12(b)(2), and 12(b)(6) ("Def. Mem"), Doc. #22, at 4.

even have "Hartford" in their name. Not only that, but, on behalf of the entity or entities with which Plaintiffs were contracting, each of the policies was signed by two individuals identified as "Our President and Secretary." Whose President and Secretary were they? The policies don't say, but one was President *of HFSG* and the other was an individual who lists her employer on www.linkedin.com as HFSG and only HFSG. And the third signatory was ***HFSG's*** Compliance Officer, who identifies her employer on her LinkedIn page as The Hartford. Yes, knows that "The Hartford" equals HFSG.

The basis for this motion thus falls apart. By alleging that they purchased their policies from The Hartford, Plaintiffs have established Article III standing and personal jurisdiction sufficient to survive this motion. The same is true of The Hartford's argument that Plaintiffs fail to state a claim. Perhaps The Hartford can come up with a sufficient evidentiary basis to show it doesn't belong in this case, but that's for summary judgment, as courts repeatedly found when The Hartford tried this same gambit before. It doesn't warrant dismissal under Fed. R. Civ. P. 12.

## II.    PROCEDURAL BACKGROUND

Plaintiff Robert A. Levy, D.M.D., LLC ("Levy"), a dental practice in St. Louis County, brought this action against Hartford Casualty Insurance Company ("Hartford Casualty") on May 14, 2020, alleging that it and a putative class of other Missouri dental practices insured by Hartford Casualty had sustained business losses when forced to shut down because of the COVID-19 pandemic. Plaintiff's Class Action Complaint, Doc. #1. It relied on a provision in its insurance policy that provided for reimbursement of losses when a business suspension was "caused by direct physical loss of or physical damage to property." *Id.* ¶ 56.

In response, Hartford Casualty moved to dismiss. [2] It relied entirely on the policy's so-called "Virus Exclusion" that provides that the insurer will not pay for losses caused by the "[p]resence,

---

[2] *See* Mem. of Law in Supp. of Def. Hartford Casualty Ins. Co.'s Motion to Dismiss Plaintiff's Complaint, Doc. #13.

growth, proliferation, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus." *Id.* at 3. It did not challenge Plaintiff's allegation that it had sustained losses due to a suspension of its business "caused by direct physical loss of or physical damage to property."

Plaintiff followed with an Amended Complaint, Doc. #17. Three plaintiffs, all dental or orthodontics practices in St. Louis County with similar business losses, were added as Plaintiffs: Vanessa Keller D.M.D. & Trisha M. Young D.M.D., P.C. ("Keller"); Rivka Goldenhersh D.M.D., LLC ("Goldenhersh"); and Farhad Moshiri and Mazyar Moshiri, D.M.D., M.S., P.C ("Moshiri"). They sued the companies shown as "insurers" on their policies, Sentinel for Keller, Twin City for Goldenhersh, and both Twin City and Sentinel for Moshiri (there were two consecutive Moshiri policies, one with each entity). Am. Comp. ¶ 80. All Plaintiffs also alleged that they had purchased the policies from The Hartford, which had issued the policies. *Id.* ¶¶ 1, 3, 15, 17, 19, 21, 80. They used the name "The Hartford" for HFSG. *Id.*, Introductory Paragraph.

Plaintiffs alleged that the Virus Exclusion did not apply because it requires the "presence" of a virus on the insured's property and there was "no evidence that the virus ha[d] ever been in their premises." *Id.* ¶ 113. Plaintiffs also alleged that, even if the Virus Exclusion were applicable, "under the principles of regulatory estoppel and general public policy, Defendants should be estopped from enforcing it." *Id.* ¶ 115. In support, Plaintiffs alleged that the insurance industry, including The Hartford, had obtained regulatory approval of the Virus Exclusion by falsely claiming that it was a mere clarification in that – or so the industry represented – the policies had never been, nor were intended to be, a source of recovery for loss caused by disease-causing agents. *Id.* ¶¶ 116-25. That representation was false because "courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its

intended use constituted 'physical loss or damage to such property.'" *Id.* ¶ 121.

In response, Hartford Casualty (and the other nominal "insurers," Twin City and Sentinel) abandoned the position that the complaint should be dismissed for failure to state a claim. Instead, they answered the Amended Complaint.[3] The case against those companies is therefore now at issue, and discovery can begin once the Court holds a Scheduling Conference. The Hartford, however, attacked the Amended Complaint with the instant motion.

## III.   ARGUMENT

### A.  The Amended Complaint Adequately Alleges That The Hartford (or HFSG) Was a Party to the Contracts

As noted above, the Amended Complaint uses the short name, "The Hartford," for Hartford Financial Services Group, Inc., and alleges that Plaintiffs purchased their policies from it. Am. Comp. ¶¶ 1, 3, 15, 17, 19, 21. On a motion to dismiss, that must be regarded as true. "The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *A.H. v. St. Louis* Cty., *Mo*., 2015 WL 4426234, at *1 (E.D. Mo. July 17, 2015) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his or her] claims.'" *Pfountz v. Navient Sols., LLC*, 2018 WL 534434, at *2 (E.D. Mo. Jan. 24, 2018) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). But there is no reason even to think that proof of those facts is improbable here. Everything about these transactions suggests that The Hartford was a party.

Plaintiffs were invoiced by The Hartford and paid their bills to it. Am. Comp. ¶ 28. Each of the policies, which are nearly 200 pages or longer, refers to "The Hartford" vastly more times than it does to the nominal "insurer." Look at the scoreboard:

---

[3] *See* Answer and Affirmative Defenses of Hartford Casualty Insurance Company, Sentinel Insurance Company, Limited, and Twin City Fire Insurance Company to Plaintiffs' Amended Class Action Complaint, Doc. #23.

| Plaintiff | Doc. No. of Policy | Nominal "Insurer" | References to The Hartford | References to Supposed Insurer |
|---|---|---|---|---|
| Levy | 17-1 | Hartford Casualty | 75 | 2 |
| Keller | 17-2 | Sentinel | 80 | 2 |
| Goldenhersh | 17-3 | Twin City | 94 | 5 |
| Moshiri | 17-4 | Twin City | 81 | 3 |
| | 17-5 | Sentinel | 82 | 2 |

Those totals don't even count the references to "The Hartford" in the company logo below a drawing of a reindeer on the top right of many pages. (Those aren't searchable in the pdfs.) And nowhere do the policies indicate that "The Hartford" and the name of the nominal "insurer" are used interchangeably.

When Dr. Goldenhersh renewed her policy, she was thanked for being a loyal customer, not of Twin City, but of "The Hartford":



Doc. # 17-3 at 3. Twin City doesn't even have "Hartford" in its name. Who else was thanking her but HFSG?

In fact, everything about these policies indicates that The Hartford/HFSG was running the show. Take the two Moshiri policies. The first one was from April 1, 2019 to April 1, 2020, with Twin City as the nominal "insurer." *See* Doc. # 17-4 at 12. But it's not called a "Twin City policy. It's "your Spectrum policy from The Hartford":



Doc. #17-4 at 2. That page says that, when "this policy" is renewed, they're only going to

provide the pages that have changed, so – in bold-faced underlining to make sure the

policyholder gets the message – "**YOU SHOULD RETAIN ALL OF THESE DOCUMENTS**

**INDEFINTELY**." Moshiri did renew and, in the new policy, was thanked for doing so:



Doc. 17-5 at 2. But who did the renewing? Not Twin City, the "insurer" in the old policy. Now

the nominal "insurer" of what had been called "this policy" is none other than Sentinel. How can

there be a "renewal of this policy" with a different entity? "Renew" means "to arrange for

something to continue for a longer period of time."[4] If this "something" that is continuing was a

---

[4] https://www.macmillandictionary.com/us/dictionary/american/renew (accessed 9/9/2020.

6

policy only with Twin City, as HFSG contends, it wasn't *renewed*. It could only have been renewed if the new policy was with the same entity, and the only entity in the picture that could qualify for that role is "The Hartford" – or, in other words, HFSG.  HFSG therefore has to have been a party to both policies or it simply didn't get "renewed." And where does the policy tell the policyholder to go for information on it? To www.thehartford.com, the same as every other Hartford policyholder.

Now consider who signed for the insurance company. Here's the signature page:



Doc. #17-1 at 28; *see also* Doc. #17-2 at 29, #17-3 at 30, #17-4 at 25, #17-5 at 30. "Our President and Secretary." Note that it doesn't say whose President and Secretary they are. For the President, the answer is that Mr. Elliot is President of, that's right, HFSG.[5] As for Ms. Levin, on her LinkedIn page, she says that her employer for the past 13 years has also been HFSG, where she is now Assistant General Counsel:[6]

---

[5] Copies of all web pages cited herein are attached as Exhibits to Ex. A, the Declaration of Roxanna Carr. This one is Ex. B and is available at https://www.bloomberg.com/profile/person/3700927 (accessed 9/9/2020).
[6] Ex C, available at https://www.linkedin.com/in/lisa-levin-a2297b4a/ (accessed 9/9/2020).



Maybe she moonlights as Secretary of all these subsidiaries, but if so, it's not important enough for her to list. She doesn't mention any of them.

The only other signatory on the policies is that of Susan L. Castaneda, Authorized Representative, on the Declarations pages. *See* Docs. #17-1 at 16, #17-2 at 15, #17-3 at 17, #17-4 at 12, and #17-5 at 16. According to her LinkedIn page, she is Vice President and P&C (Property & Casualty) Compliance Officer of "The Hartford," where she has been employed for nearly 15 years; her page doesn't mention Hartford Casualty, Sentinel *or* Twin City, just The Hartford.[7] Ms. Castaneda is shown in a photo on the website of a Compliance conference speaking on a panel and identified as being "of the Hartford Financial Services Group."[8] In other words, she is a compliance officer with HFSG and calls her employer "The Hartford." She certainly knows what "The Hartford" means.

Additionally, the letters denying coverage show HFSG's involvement, despite its denials that it issued such letters. Def. Mem. at 7. The Complaint attaches two documents regarding

---

[7] Ex. D, available at https://www.linkedin.com/in/susan-castaneda-8479b950/ (accessed 9/10/2020).
[8] Ex. E, available at https://www.complianceweek.com/best-of-cw2019/photos-compliance-week-2019/27132.article (accessed 9/10/2020).. To see her photo, one must scroll through a number of pictures.

Defendants' consideration of these claims. Jackie Beamish, identified as "Inside Claim Rep," signed an email on the Levy claim. Doc. #17-9 at 3. Well, inside what? According to her Facebook page, it's – you guessed it – HFSG, where she's a Claims Adjuster:[9]



Charles Weimer signed the letter denying the Keller claim. Doc. # 17-10 at 3. According to Zoominfo.com,[10] he also works for HFSG.[11] It was clearly HFSG that handled the claims.

In short, HFSG is all over these policies, both literally and figuratively. But HFSG says that, according to page 6 of its Exhibit 1, "'The Hartford' is a ***registered trademark*** used by HFSG and its subsidiaries and does not refer to any specific entity." Def. Mem. at 10 (emphasis added); *see also id.* at 4. That exhibit, however, nowhere mentions a trademark. What's on page 6 of that exhibit (page 7 of the pdf with the cover page) is the registrant's "safe harbor" section on Forward-Looking Statements. It says, "Forward-looking statements are based on management's current expectations and assumptions regarding future economic, competitive, legislative and other developments and their potential effect upon The Hartford Financial Services Group, Inc.

---

[9] Ex. F, available at https://www.facebook.com/Jbeamer43 (accessed 9/9/2020).
[10] Ex. G, available at https://www.zoominfo.com/p/Charles-Weimer/-1814767848 (accessed 9/9/2020).
[11] Plaintiffs believes that the Court can consider the various items they refer to, such as the Facebook and LinkedIn pages. "'When considering ... a motion to dismiss under Fed.R.Civ.P. 12(b)(6)[ ], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (citation omitted) [ellipsis and bracket in original].Defendant argues that the Court can consider its Form 10-K because it is "in the public domain …." Def. Mem. at 7, n. 1. That also applies to the materials Plaintiffs cited. However, if the Court believes they need to be alleged in the complaint to be considered, Plaintiff requests leave to file a Second Amended Complaint.

and its subsidiaries (collectively, the 'Company' or 'The Hartford')." It says nothing about what "The Hartford" means in its ***insurance policies*** – or, for that matter, anywhere outside of its forward-looking statements. And as for a "trademark?" It says nothing at all.

### B.  The Hartford Has Not Established the Basis for Dismissal for Lack of Standing

Plaintiffs have the burden on Article III standing, but "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.'" *Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016) (citation omitted). That means that, at this stage, the Court must assume that Plaintiffs will prove that they purchased their policies from HFSG, as they alleged.

But The Hartford's standing argument is simply that plaintiffs "do not have a contract with HFSG." Def. Mem. at 8. Its basis is evidentiary. It couldn't have had a contract, it insists, because its SEC 10-K says it "has no significant business operations of its own." Def. Mem. at 4. (Then what in the world are all those HFSG employees doing signing policies and denying claims?) That simply is a factual refutation of Plaintiffs' allegations that they purchased the policies from The Hartford; it cannot be considered on a motion to dismiss. Plaintiff's allegation must be taken as true. For that reason, HFSG's cases are all off-point. In *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895 (8th Cir. 2015), and *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 61 (2d Cir. 2012), the plaintiffs did not *allege* contractual relationships with the defendants. In *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 432 (8th Cir. 1999), the dismissal for lack of standing was not based on the pleadings but came "[a]fter more than two years of discovery …."

Similarly, *Barry v. St. Paul Fire & Marine Ins. Co.*, 555 F.2d 3, 13 (1st Cir. 1977), *aff'd,* 438 U.S. 531 (1978), was decided on summary judgment, not a motion to dismiss. In *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1050 (E.D. Mo. 2009), the court merely held that an increased risk of harm cannot establish the requisite injury for standing. Like HFSG's other cases, it has no application here.

### C.  The Case Should Not Be Dismissed for Lack of Personal Jurisdiction

HFSG devotes most of its argument on personal jurisdiction to general personal jurisdiction. Def. Mem. at 9-11. But here the basis of personal jurisdiction is specific personal jurisdiction, which depends on "whether the defendant has 'purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In a diversity case, personal jurisdiction exists to the extent permitted by the forum state's long-arm statute. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (citation omitted). "Missouri's Long-Arm Statute authorizes personal jurisdiction over defendants who … make a contract … within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 593 (8th Cir.2011)) (last ellipsis in original). However, a contract with "an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *K-V*, 648 F.3d at 563. Courts also look to "prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* (citations omitted).

Defendants recognize that entering into contracts providing for insurance in Missouri – the real object of the transaction – is sufficient for personal jurisdiction. After all, they do not contest

personal jurisdiction on behalf of Hartford Casualty, Sentinel or Twin City.[12] The question is whether Plaintiffs have established similar facts in order to survive this motion by HFSG.

The first step in the analysis is whether Plaintiffs have made "a prima facie showing that personal jurisdiction exists by pleading sufficient facts …." *K-V*, 648 F.3d at 591. Plaintiffs have done so by alleging that they purchased their policies from The Hartford/HFSG. The next step is to see whether Plaintiffs have offered sufficient evidentiary support for that allegation. The evidentiary showing required at this stage "is minimal." *Id* at 592 (citation omitted). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *Id.* at 592.

Here, the evidence shows that "The Hartford" is used throughout the policies. There is nothing in the record to support HFSG's assertion that "The Hartford" is a registered trademark that refers to anything other than HFSG. Its assertion must therefore be rejected. Certainly, if there is such a registered trademark and it supports what HFSG says about it, it could have – and, presumably would have – offered evidence to show that, but it did not.

On the other side of the equation is the evidence discussed above that shows HFSG's involvement in these transactions. The fact that a policy was "renewed" with a different nominal "insurer" shows that the policies must have actually been issued and renewed by HFSG. Most telling is that each of the five Hartford representatives shown in the documents are employees of HFSG. They include its President and Compliance Officer, as well as the two claims representatives who wrote to Plaintiffs' representatives *in Missouri*. Because the Court must resolve all factual conflicts in Plaintiffs' favor, that suffices.

---

[12] *See* Answer and Aff. Def. of Hartford Casualty Insurance Co., Sentinel Insurance Co., Ltd., and Twin City Fire Insurance Co. to Plff's Am. Class Action Complaint, Doc. #23, ¶ 28.

### D.  The Amended Complaint States a Claim Against HFSG

The Hartford's contention that the Plaintiffs fail to state a claim against it is based on the same argument it made against standing and personal jurisdiction, namely that it doesn't have a contract with Plaintiff. It fails for the same reasons.

The Hartford states that "[c]ourts routinely dismiss claims against HFSG" that are similar to the ones in this case. But the six decisions on which it relies show nothing of the sort. In one the plaintiff *stipulated* to HFSG's dismissal.[13] In another, the plaintiff did not oppose the motion.[14] Another was brought by the plaintiff pro se and it isn't clear that the plaintiff offered anything to show a contractual relationship.[15] Another case was dismissed because the plaintiff – who did not allege that HFSG was a party to the contract – relied on an inapplicable statute to establish vicarious liability.[16] And one case turned on personal jurisdiction, not failure to state a claim; the plaintiff had alleged that HFSG was "doing business in the State of Alabama," but HFSG submitted uncontradicted affidavits from its Vice President and Assistant Vice President stating that that wasn't true.[17] HFSG has submitted nothing like that here.

That leaves *NBL Flooring, Inc. v. Trumbull Ins. Co.*, 2014 WL 317880, at *1 (E.D. Pa. Jan. 28, 2014). There, the court ***denied*** HFSG's motion for judgment on the pleadings and allowed discovery. *NBL Flooring, Inc. v. Trumball Ins. Co.*, 2012 WL 3135533 at *2 (E.D. Pa. Aug. 1, 2012). In the decision that HFSG cites, the court commented that it had denied the earlier motion and considered the issue on summary judgment. *NBL*, 2014 WL 317880, at *1. That is what this Court should do, if The Hartford decides to renew its position in a summary judgment motion.

---

[13] *Winkler v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 1705559, at *2 (D. Nev. May 3, 2011)

[14] *LV Diagnostics, LLC v. Hartford Fin. Servs. Grp., Inc.*, 2018 WL 651327, at *2 (D. Nev. Jan. 31, 2018)

[15] *Chaichian v. Hartford Fin. Servs. Grp., Inc.*, 2016 WL 4480038, at *2 (W.D. Ark. Aug. 3, 2016), report and recommendation adopted, 2016 WL 4467910 (W.D. Ark. Aug. 23, 2016).

[16] *Engel v. Hartford Ins. Co. of the Midwest*, 2012 WL 275200, at *2 (D. Nev. Jan. 31, 2012).

[17] *Mt. Hebron Dist. Missionary Baptist Ass'n of AL, Inc. v. Hartford Co.*, 2017 WL 2486092, at *3 (M.D. Ala. Mar. 16, 2017), supplemented, 2017 WL 4838867 (M.D. Ala. Apr. 3, 2017), and report and recommendation adopted, 2017 WL 2485228 (M.D. Ala. June 8, 2017).

It's also what the court did in *Smith v. Sentinel Ins. Co., Ltd.*, 2010 WL 5174377, at *1 (N.D.

Okla. Dec. 15, 2010), where HFSG made the ***identical*** argument it makes here. The court ruled:

> The contract is replete with references to both "The Hartford" and to "Sentinel
> Insurance Company's" ("Sentinel") role in the contract. (See Dkt. # 2–1, p.6–38).
> The complaint thus states a plausible claim that HFSG is a proper party defendant
> in this case. HFSG's arguments that "The Hartford" is merely a trade name, and
> that HFSG did not have sufficient involvement in the insurance claim to either be
> in privity or a special relationship are arguments better addressed on summary
> judgment. Therefore, the Motion to Dismiss (Dkt. # 16) is denied.

*Id.* The court reiterated its ruling when HFSG argued that, because it was not a proper party to

the lawsuit, it should not have to respond to discovery:

> After examining the record herein, the Court finds that the relationship among the
> various Hartford entities and HFSG's role in the corporate structure is unclear;
> consequently, the Court cannot find that the information Plaintiffs seek could
> have no possible bearing on the claims/defenses in this case. Therefore, the
> relevance objection is overruled. Furthermore, simple fairness dictates that if
> HFSG has filed a Motion for Summary Judgment supported by evidentiary
> materials, Plaintiffs be given an opportunity to respond with evidence of their
> own—evidence gathered through the process of discovery.

*Smith v. Sentinel Ins. Co.*, 2011 WL 2883433, at *2 (N.D. Okla. July 15, 2011). (The case was

settled while summary judgment was pending. Doc. #123 in *Smith v. Sentinel Insurance Co.,*

*Ltd.*, No. 4:10-cv 00269 (N.D. Okla.)). This Court should take the same approach.

### E.  In the Alternative, the Court Should Allow Discovery on Whether HFSG is the Alter Ego of the Other Defendants

In the alternative, Plaintiffs request that the Court allow Plaintiffs to take discovery on

whether HFSG is subject to "alter ego" liability under Missouri law. "'Under the alter ego rule,

when a corporation is so dominated by a person as to be a mere instrument of that person and is

indistinct from the person controlling it, then the court will disregard the corporate form if to

retain it would result in injustice.'" *Saidawi v. Giovanni's Little Place, Inc*., 987 S.W.2d 501,

504–05 (Mo. App. E.D. 1999) (*quoting Edward D. Gevers Heating & Air Conditioning Co. v. R.*

*Webbe Corp*., 885 S.W.2d 771, 773 (Mo. App. E.D. 1994)).

14

Under that test, "first, the corporation must be controlled and influenced by persons or another corporation; second, evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud." *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997). Also, "the wrong must "be the proximate cause of the injury to the third person who dealt with the corporation." *Id.*

Plaintiffs believe that discovery might well enable them to establish these elements. The first one is pretty clear already. If HFSG doesn't control and influence Hartford Casualty, Sentinel and Twin City, why else are its employees, up to its President, signing the policies? Why else are its employees responding to Plaintiffs' claims? No other reason is conceivable.

And there is also a basis to believe that discovery will show that The Hartford is using its corporate cloak "to defeat public convenience, to justify a wrong, or to perpetrate a fraud." Hartford Defendants have been sued in no fewer than 188 COVID-19 cases, with more filed every week.[18] Many are class actions, some nationwide, many state-wide and not limited to a particular industry group as this case is.[19] Damages – the total losses due to COVID-19 shutdowns of all Hartford insureds – may be inconceivably huge, more than the subsidiaries can pay themselves. A subterfuge to defeat public convenience? You bet. A wrong? Absolutely. And a proximate cause of injury to Hartford's insureds? If their damages can't be paid, no question.

## IV.    CONCLUSION

The Hartford's motion to dismiss should be denied. In the alternative, if the Court believes the motion has merit, Plaintiffs request leave to file a Second Amended Complaint to update its allegations against HFSG only.

Dated: September 11, 2020                 Respectfully submitted,

---

[18] https://cclt.law.upenn.edu/ (accessed 9/10/2020).
[19] Hartford's Resp. in Opp. to Order to Show Cause Purs. to 28 U.S.C.§ 1407, Doc. 146 in MDL No. 2963, at 13-17.

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By:  _/s/ Richard S. Cornfeld_____
      Richard S. Cornfeld, #31046MO
      Daniel S. Levy, #66039MO
      1010 Market Street, Suite 1645
      St. Louis, Missouri 63101
      P. 314-241-5799
      F. 314-241-5788
      rcornfeld@cornfeldlegal.com
      dlevy@cornfeldlegal.com

      And

      Anthony S. Bruning, #30906MO
      Anthony S. Bruning, Jr., #60200MO
      Ryan L. Bruning, #62773MO
      THE BRUNING LAW FIRM, LLC
      555 Washington Avenue, Suite 600
      St. Louis, Missouri 63101
      P. 314-735-8100 / F. 314-898-3078
      tony@bruninglegal.com
      aj@bruninglegal.com
      ryan@bruninglegal.com

      And

      Alfredo Torrijos (*Pro Hac Vice* to be submitted)
      ARIAS SANGUINETTI WANG & TORRIJOS, LLP
      6701 Center Drive West, 14th Floor
      Los Angeles, CA
      T: (310) 844-9696
      F: (310) 861-0168
      alfredo@aswtlawyers.com

      ***Attorneys for Plaintiffs***

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of September, 2020, the foregoing was filed with the Court Clerk via the Court's electronic filing system and served on upon all counsel of record via the Court's electronic notification system.

*/s/ Richard S. Cornfeld*