# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
BARROSO, INC., doing business    .   Civil Action No. 1:20cv632
as Guajillo Mexican Cuisine,     .
                                 .
            Plaintiff,           .
                                 .
     vs.                         .   Alexandria, Virginia
                                 .   November 10, 2020
TWIN CITY FIRE INSURANCE         .   11:59 a.m.
COMPANY,                         .
                                 .
            Defendant.           .
                                 .
. . . . . . . . . . .
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE
(Via Teleconference)

APPEARANCES: (by telephone)

FOR THE PLAINTIFF:            CHRISTOPHER L. LaFON, ESQ.
                              The Veritas Law Firm
                              1225 19th Street, N.W.
                              Suite 320
                              Washington, D.C. 20036


FOR THE DEFENDANT:            SARAH D. GORDON, ESQ.
                              Steptoe & Johnson LLP
                              1330 Connecticut Avenue, N.W.
                              Washington, D.C. 20036


OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
                              U.S. District Court, Third Floor
                              401 Courthouse Square
                              Alexandria, VA 22314
                              (703)299-8595


(Pages 1 - 17)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1    P R O C E E D I N G S

2             THE COURT:  All right, counsel, this is the matter of
3    Barroso, Inc., doing business as Guajillo Mexican Cuisine,
4    versus Twin City Fire Insurance Company, et al., Civil Action
5    20cv632.  Do we have counsel there for the plaintiff?

6             MR. LaFON:  Yes, Your Honor.  Chris LaFon on behalf
7    of the plaintiff, Guajillo.

8             THE COURT:  Good morning, Mr. LaFon.
9             And how about for the defendant?

10            MS. GORDON:  Good afternoon, Your Honor.  Sarah
11   Gordon on behalf of the defendant, Twin City Fire Insurance
12   Company.

13            THE COURT:  All right.  Now, we are on the record
14   with my court reporter, but obviously, we can't see you,
15   although since I have a male and a female, we shouldn't have
16   any problem knowing who's speaking.  You'll be the only two
17   speakers today.

18            Before we get started, though, Mr. LaFon, I want to
19   clear up one matter with you, and that is, you named as an
20   additional defendant in this case the Commonwealth of Virginia,
21   and that technically would destroy diversity, and this is not a
22   federal case.  My understanding is you've never served the
23   defendant, and I don't think the defendant has entered -- that
24   defendant has entered any appearance.

25            When the case was removed from state court, the

1  insurance company represented that this was basically a

2  fraudulent joinder.  We always have to determine our

3  jurisdiction first, so I want to make sure, is it correct that

4  you're not pursuing the commonwealth in this case?

5              MR. LaFON:  Yes, Your Honor.  Once it was removed, we

6  believe this Court can adequately handle these matters and

7  wanted to proceed as quickly as possible.

8              THE COURT:  All right.  Then we're going to go ahead

9  and formally dismiss the commonwealth out of this -- out of

10 this case.  That does mean we clearly have proper diversity --

11 sorry, we have proper jurisdiction now because there is not --

12 there is not a problem with diversity.

13             All right.  And then, Mr. LaFon, as you know, both

14 sides have filed motions for summary judgment, the plaintiff

15 requesting partial summary judgment on the issue of coverage,

16 and the defendant has asked for summary judgment or moved for

17 summary judgment on the entire case.

18             In looking at the pleadings, it's my understanding

19 that there really is no dispute about the facts, that this case

20 boils down to an interpretation of the relevant insurance

21 contract.  Do either -- does either side disagree with that

22 description of the situation?  Mr. LaFon?

23             MR. LaFON:  No, I don't think there is an issue of

24 fact here, Your Honor.  I do believe that depending on what is

25 argued today, there could be an issue with respect to perhaps

1  the issue of whether there was any type of COVID infection or
2  contamination at the restaurant, but from my understanding,
3  that's not being something that is contentious at this point.
4             THE COURT:  Well, my understanding is that there has
5  not been any representation or allegation that the virus itself
6  was ever in the premises; that is, there's no evidence in this
7  record of any employee or customer becoming -- showing positive
8  for the virus.
9             Are you disputing that?
10            MR. LaFON:  No, Your Honor.  That's correct.  I, I
11 assume that Twin City is also not disputing that, but I just
12 wanted to make that small representation that that is being --
13 that it's not, I do not believe there is an issue of fact
14 regarding that.
15            THE COURT:  All right.  Well, Ms. Gordon, again, as I
16 read the pleadings, it did not appear as though there's any
17 fact that the sides are disputing.  Is that a correct
18 description of your understanding?
19            MS. GORDON:  Your Honor, from our perspective, there
20 is absolutely no factual dispute with respect to coverage, but
21 we obviously have not addressed any damages, related issues, to
22 the extent there is a finding of coverage.  So -- but there are
23 no facts with respect to coverage.  That is our view.
24            THE COURT:  All right. And that's, of course, the
25 core issue today.  I mean, if the Court finds -- grants your

1  motion for summary judgment, effectively the Court is finding

2  that there's no coverage, so we never would reach the damages

3  issue.

4       MS. GORDON:  Exactly.

5       THE COURT:  Yeah, all right.

6       Well, Mr. LaFon, I must tell you I think you've got

7  an uphill battle here.  The vast majority of the case law, in

8  my view, is definitely and unfortunately tipped against you,

9  but as you know, this particular insurance policy has what I

10 think is a very clear virus exclusion, and I think you have to

11 really address that issue because I think that is the primary,

12 core issue in this particular case.

13      MR. LaFON:  Certainly, Your Honor.  Yes, the limited

14 coverage endorsement does contain some exclusionary language

15 which I know that Twin City is relying on.  Here I think there

16 are two issues regarding applicability.

17      First, I believe that all facts that are understood

18 and which this Court could take judicial notice support that

19 the government orders are what is the predominant and proximate

20 cause of the business -- loss of business income here, that

21 there were COVID infections before and after and certainly now

22 more than ever, and it was not those infections, even if COVID

23 is considered a virus, that led to the partial suspension of

24 operations at the restaurant, not allowing basically the core

25 function of it, the table seating and bar seating and service.

1  So for that reason, we don't believe here that the
2  virus is a cause of the business income loss, and that the
3  causal chain doesn't extend back to, to when this virus began
4  or when people were being infected in the area, but a
5  determination by government, which is -- has been different in
6  almost every state regarding the actions that were taken by
7  government, and that that order is what caused the loss here.
8  We're not seeking losses of income due to people not
9  frequenting restaurants -- not frequenting this restaurant
10  before or after, or perhaps now, when things are, you know,
11  seemingly even worse for us, but just that limited period of
12  time in which the government had ordered the prohibition of
13  table and bar seated service.
14  We also note that in the endorsement providing
15  limited coverage, that it does provide limited coverage with an
16  exception regarding civil commotion as well as a part of -- the
17  first part of the endorsement beginning on Part A stating that
18  part of the endorsement only applies to increased costs of
19  construction and additional coverage, and that only excludes
20  coverage for costs associated with an enforcement or an
21  ordinance or law which requires insured or others to, among
22  other things, contain, neutralize, or respond or assess the
23  effects of viruses, and with that, if that would go to what we
24  are talking about here, and yet that coverage was only excluded
25  with respect to increased costs of construction and not with

7

1 respect to general loss of business income.

2 THE COURT: But, you know, I mean, the defendant has
3 argued, I think, very strongly that if you just read the
4 language of the endorsement -- and, of course, we have to read
5 the insurance policy, you know, word for word -- it says that
6 they will not pay for loss or damage caused directly or
7 indirectly by, and then they talk about the virus.

8 Now, their argument is that you would not have --
9 that these orders from the governor would not exist but for the
10 presence of the virus, and the orders themselves recite, as did
11 the general orders here for the Court when we reduced our
12 operations, there are recitations about the presence of the
13 virus circulating in society and the need to reduce the
14 potential for a broad spread of the virus.

15 So I don't know how you can actually argue that
16 the -- even if it's the governor's -- and I agree with you,
17 it's the governor's orders that are the immediate cause of your
18 injury, but those orders only issued because of the virus, and
19 so when you have the word "indirectly," how do you get around
20 the fact that the virus is not the indirect cause of your loss
21 or damage?

22 MR. LaFON: Your Honor, with respect to the
23 anti-concurrent language, there were no Virginia cases that I
24 could determine, and both sides, Twin City as well, that
25 discussed the situation of the anti-concurrent language being

1  applied in the situation where there weren't two types of
2  actions that were causing a loss.
3           Here, I don't think that it is the virus -- well, we
4  are arguing that the virus here -- obviously, it -- there is
5  the Corona virus. It began infecting the population. But
6  these government orders were decisions by the state, and then
7  that is what caused the actual prohibition here, and when those
8  ended, the restaurant began opening back up despite the
9  presence of the virus.
10          And so even if they were related to trying to stop
11 the spread of COVID, that was a proximate and predominant
12 action that caused the loss here. Even if there was the virus
13 within society at that point, that here, that basically the
14 causation doesn't go back, doesn't go back to China. It starts
15 at the point at which it, the restaurant had to shut down part
16 of its operations, and that only began at the time in which the
17 governor issued the orders.
18          THE COURT: All right. Ms. Gordon, do you want to
19 respond?
20          MS. GORDON: Yes, thank you, Your Honor. I, I think
21 Mr. LaFon's position was a little divorced from reality. The
22 only reason we have these orders is because of a virus. And
23 the policy not only says directly or indirectly; it says such
24 loss or damage is excluded regardless of any other cause or
25 events that contributes concurrently or in any sequence to

```
 1  loss.
 2          So even assuming the virus is just one of the causes
 3  and the orders are the main cause here, taking Mr. LaFon at his
 4  word here, the virus exclusion still applied, and Mr. LaFon
 5  does nothing to refute the numerous cases we've listed in our
 6  motion for summary judgment -- I'm looking at page 17 of
 7  doc. 23, carries on to the next page -- showing that Virginia
 8  courts routinely enforce these anti-concurrent causation
 9  clauses.
10          But more to the point, I mean, there has been a
11  mountain -- a chorus of opinions nationwide rejecting the exact
12  argument Mr. LaFon is making here.  The, the argument has been
13  rejected by a number of courts.  One court in California called
14  it nonsense.
15          You can't separate the governmental orders from the
16  virus that precipitated them, and four courts have already
17  interpreted this exact exclusion for Hartford-related
18  affiliates and found it barred COVID-19 claims, just like the
19  law says here.  Those cases we've submitted either with our
20  briefing or supplemental because of the timing, but that's the
21  *Wilson* case, the *Founder* case, the *Franklin* case, and the
22  *Nahmad* case.
23          And besides those four that address this exact
24  exclusion, by my count, approximately 18 other courts applying
25  similar other exclusions have dismissed and found because the
```

1  exclusions apply.

2  There's just -- I can't think of a situation more on
3  all fours with the virus exclusion than the present pandemic.
4  The virus is what is causing his loss.  The only way to get
5  around the virus exclusion would be to fit into an exception,
6  and they don't do that here.

7  THE COURT:  All right, Mr. LaFon?  Because I think --
8  I mean, frankly, although there are other arguments here that I
9  think are, are well stated by the defense as well in terms of,
10 you know, direct physical loss and -- but I don't even think we
11 have to get to that in this case because it's so clear in the
12 Court's view that the virus exception, which you've really not
13 been able to articulate a decent argument against, it just
14 prevails.  There is no case law that really favors your
15 position.

16 MR. LaFON:  Your Honor, the other point which I don't
17 think I at least clarified here, and I understand the Court's
18 position, are -- although the case law is in its infancy there,
19 have been, frankly, a minority, but some courts have determined
20 that at least the motion to dismiss stage, that coverage was
21 possible under policies, particularly one that we have supplied
22 the Court that did include a virus endorsement similar to here.

23 We also argued that as an exception to the exclusion
24 here is that the virus, if that is found to be what is the
25 cause of the loss, that there is an exception to that involving

11

1  a virus that is being spread through civil commotion.

2  Here, that is, frankly, what the government was -- if
3  it's deemed to be related to the viruses, that the government's
4  orders related to regarding a spread of COVID-19, and, and the
5  civil commotion that, frankly, was occurring because people
6  were, you know, not adhering to distancing rules and not
7  adhering to rules that was allowing this to spread, that we
8  believe that that would result in the exception being fulfilled
9  to the exclusion here in even though such limited, limited
10 times in which this actual limited coverage endorsement would
11 provide any coverage, which would be a spread of a virus or
12 bacteria or fungi through these certain limited things, but
13 here we've argued that the civil commotion exception would
14 allow basically the coverage to be possible even with respect
15 to the exclusion if applicable.

16 THE COURT: Well, when you articulated that in your
17 briefs, though, didn't you make a reference to the, the civil
18 commotion surrounding the death of George Floyd and that you
19 were trying to argue that that commotion was sort of the
20 impetus for the governor's orders? And, of course, as has been
21 pointed out, the governor's orders were two months before that
22 event, so that couldn't possibly have been the impetus for it.

23 But I don't recall in reading the governor's orders
24 any discussion about civil commotion. Civil commotion, you'd
25 have to really find something in the language. I mean, if the

12

1  governor were to say, you know, people are not abiding by, by
2  the law and we have unrest in the streets and we have all this
3  commotion, and as a result, the virus is spreading, you know,
4  you might have an argument, but that's not what those orders
5  say.
6        MR. LaFON:  Right, Your Honor.  The orders,
7  particularly the beginning ones, don't spell out the discussion
8  of civil commotion, but they do speak to keeping people inside,
9  and they continued orders that were in place to do so, and then
10 there have been at least reports through media, media that have
11 articulated that those weren't being adhered to and causing the
12 potential spread of infection of the virus, and that's what we
13 relied on, not, not with respect to protests that occurred
14 after George Floyd's death, but those that were occurring
15 during the early stages and during the time in which the
16 governor's prohibition on the table seated service were in
17 place.
18       THE COURT:  Well, I think you're stretching the
19 word "civil commotion" way beyond its normal meaning.
20       And, Ms. Gordon, do you want to respond to that?
21 Because I don't, I don't think that's how you articulate it in
22 your briefs.
23       MS. GORDON:  I do, and thank you for the opportunity.
24 The first is with respect to the case Mr. LaFon first pointed
25 to, the Florida *Urogynecology* case, you know, that case is

1   obviously different procedurally.  It was a motion to dismiss,
2   not a motion for summary judgment, which we've done at
3   Barroso's request here, but, you know, that court and that
4   decision was based on a misunderstanding about whether the
5   policy was in the record.  It actually was.
6          And two courts after that decision have found it not
7   persuasive.  The court in *Founder* expressly stated the district
8   court in *Urogynecology* didn't cite anything in the complaint or
9   elsewhere that would support a conclusion that the business
10  shutdown due to a pandemic falls outside the scope of the virus
11  exclusion.
12         So, frankly, you know, in the approximately seven
13  weeks since it was decided, no one has relied on it, and, in
14  fact, numerous other courts have gone the other way.
15         With respect to the limited coverage, I think Barroso
16  is wrong on, on all fronts.  The Barroso -- for the limited
17  coverage to apply, you have to have two things here.  The first
18  is you have to have a virus that is the result of a specified
19  cause of loss, and the second is you have to have direct
20  physical loss or damage to cover property because of a virus.
21         Now, they can't meet either of those.  I'll talk
22  first about the civil commotion because that's what the Court
23  and Mr. LaFon was addressing, but I'm happy to talk about the
24  second element as well.
25         So the specified cause of loss which was talked about

14

 1   that he identified is civil commotion, but if you read the

 2   papers, they never say that civil commotion resulted in virus.

 3   What they say, and I'm looking at doc. 18, page 35, they say

 4   the civil commotion "resulted in the continued mandates

 5   concerning the prohibition on dine-in and seated restaurant

 6   service and public gatherings."

 7              That by the plain terms of the policy doesn't meet

 8   the limited coverage first requirement.  The virus has to be

 9   the result of the civil commotion, and they don't say it's the

10   virus that's the result of the civil commotion.  That's not

11   their argument in any way.

12              Secondly, as Your Honor pointed out, I think they're

13   stretching civil commotions far beyond reasonable

14   interpretation and beyond what courts have said civil commotion

15   means, which we've cited in our papers and I won't repeat here.

16              And third, this is just a moving target for them.  At

17   first they said it was the George Floyd -- resulting activities

18   from the death of George Floyd that were the civil commotion,

19   but when we pointed out those were two months later, they said,

20   oh, actually it was people violating governmental mandates and

21   reentering the public in ways that would spread the virus, and

22   that also, of course, came after the virus had been in Virginia

23   and after their restaurant had been shut down.  They're just

24   trying to squeeze themselves as a square peg here into a round

25   hole, and they don't fit.

1    You know, I'd also note that what he's talked about a
2 lot is the spread of the virus, but nowhere does the limited
3 coverage say the spread of the virus is the result of a civil
4 commotion, and I'm quoting here from the limited coverage,
5 which is on page 159 of doc. 17.  It says:  "The coverage
6 described . . . below only applies when the 'fungi,' wet or dry
7 rot, bacteria or virus is the result of one or more of the
8 following causes that occurs during the policy period," and it
9 goes on from there, and one or more of the following causes is,
10 "A 'specified cause of loss' other than fire or lightning."
11    So the virus has to be the result of civil commotion.
12 So they don't even allege, let alone prove, at the summary
13 judgment stage that the virus is the result of a civil
14 commotion.
15    And then as I started, sort of the -- the limited
16 coverage has two elements.  The first is one we just talked
17 about, what is the virus a result of, and the second is direct
18 physical loss or damage to covered property from the virus, and
19 they don't allege that, and they don't prove that either.  In
20 fact, they concede in the Juarez declaration expressly that
21 nothing physical at all happened to their property.
22    THE COURT:  All right.  Just so we complete the
23 record, Mr. LaFon, do you want to respond to that last argument
24 about there being no evidence in this record of a direct
25 physical loss?

1     MR. LaFON:  Your Honor, with respect to the direct
2 physical loss, only addressing it with respect to the limited
3 exception to the exclusion here, we had articulated that at
4 least that direct physical loss was the loss that was caused by
5 the governor's orders.
6     You know, to the extent that those are found to be
7 caused by the virus, then the orders in this sense would also
8 be caused by the virus, and thus resulting in the direct
9 physical loss of the usability of the tables and chairs and bar
10 in the restaurant.
11     THE COURT:  Okay.  Well, I think you can see from the
12 way the argument is going, I mean, I'm more than satisfied
13 that, number one, there are no material facts in dispute here;
14 and number two, that the overwhelming authority supports the
15 defendant's position, that under the specific language of this
16 insurance contract and in particular the very, in my view,
17 clear exclusion for injuries that are the result, either
18 directly or indirectly, of a virus, means that your client is
19 not covered by this insurance contract.  So I'm granting
20 summary judgment for the defendant.
21     And I want to thank both of you for signing in, and
22 hopefully you both will stay safe.  But thank you.  We'll get
23 an order out to you today.
24     MR. LaFON:  Thank you, Your Honor.
25     THE COURT:  All right.

1   MR. LaFON: Please be safe as well.
2   THE COURT: All right, goodbye.
3   MS. GORDON: Thank you.
4                   (Which were all the proceedings
5                    had at this time.)
6
7               CERTIFICATE OF THE REPORTER
8   I certify that the foregoing is a correct transcript of
9   the record of proceedings in the above-entitled matter.
10
11
12                          _____/s/_____
                                    Anneliese J. Thomson
13
14
15
16
17
18
19
20
21
22
23
24
25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BARROSO, INC., d/b/a/ GUAJILLO )
MEXICAN CUISINE, )
)
Plaintiff, )
)      1:20-cv-632 (LMB/MSN)
v. )
)
TWIN CITY FIRE INSURANCE CO., et al., )
)
Defendants.

## ORDER

For the reasons stated during a telephone conference held on the record with attorneys for plaintiff Barroso, Inc. ("plaintiff") and defendant Twin City Fire Insurance Co. present, Plaintiff's Motion for Partial Summary Judgment on the Issue of Coverage [Dkt. No. 17] is DENIED, Defendant Twin City Fire Insurance Company's Motion for Summary Judgment [Dkt. No. 22] is GRANTED, and it is hereby

ORDERED that defendant Commonwealth of Virginia be and is DISMISSED from this civil action; and it is further

ORDERED that the Clerk enter judgment under Federal Rule of Civil Procedure 58 in favor of defendant Twin City Fire Insurance Co.

The Clerk is directed to forward copies of this Order to counsel of record, and close this civil action.

Entered this 10 day of November, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge