# EXHIBIT B

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

DAB DENTAL PLLC D/B/A
SUNSHINE DENTISTRY, on behalf of
itself and all other similarly-situated
persons,

       Plaintiff,                                      CASE NO:    20-CA-5504
                                                        DIVISION:   H
v.

MAIN STREET AMERICA PROTECTION
INSURANCE COMPANY,
       Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

       **THIS MATTER** came before the Court for telephonic hearing on November 4, 2020, on Defendant, Main Street America Protection Insurance Company's *Motion to Dismiss Plaintiff's Complaint with Prejudice*, filed August 31, 2020. On November 2, 2020, Plaintiff filed its *Response to Motion to Dismiss*. On November 3, 2020, Defendant filed a *Notice of Filing Supplemental Authority in Support of Defendant's Motion to Dismiss Plaintiff's Complaint with Prejudice*. Having reviewed the Motion and Response, considered the argument of counsel at the hearing, and analyzed the applicable legal authority, the Court finds as follows:

### PROCEDURAL HISTORY

       This breach of contract and declaratory relief action hinges on an interpretation of an insurance policy between Plaintiff and Defendant. Plaintiff seeks business income losses and extra expenses pursuant to Section A(5)(h) of the Business Coverage Form of the Policy, which is entitled "Civil Authority" (hereinafter "Civil Authority Provision" or "Provision").[1] Plaintiff alleges that by repudiating its obligations under the Policy, by anticipatorily breaching the Policy, and by failing to pay Plaintiff's claim, Defendant, its insurer, breached its duties and obligations under the Policy and caused damages. With respect to Plaintiff's declaratory judgment claim, Plaintiff alleges that it is in doubt of its rights under the Policy, in particular the Virus Exclusion. Plaintiff contends that the Civil Authority Provision covers losses caused by the civil authority action at issue here and that no exclusion bars coverage, while Defendant contends that the Virus Exclusion applies. The Policy was attached to the Complaint.

       The July 7, 2020, *Complaint and Demand for Jury Trial* alleges that Plaintiff was forced to close its dental practice to comply with the Governor's Executive Order 20-91 (hereinafter "Executive Order"). Issued April 1, 2020, Plaintiff contends that the "stay-at-home order" was an action of civil authority that forced businesses like Plaintiff to close and remain closed until the Executive Order

---

[1] This Provision is found in BPM P 1FL 03 19, Businessowners Coverage Form.

expired.² Plaintiff alleges that the forced closure resulted in lost Business Income and Extra Expenses, as defined in the Policy, for both Plaintiff and similarly-situated businesses. Plaintiff specifically alleges that the Executive Order was not issued due to Plaintiff's premises sustaining direct physical loss or damage. Instead, Plaintiff alleges that the Executive Order prohibited access to Plaintiff's premises due to *other* property sustaining the direct physical loss or damage of COVID-19 being present. Plaintiff alleges that its losses are covered under the Civil Authority Provision and that no condition, exclusion, or coverage defense bars coverage. Plaintiff alleges that Defendant repudiated or anticipatorily breached the Policy by preemptively sending correspondence to its policyholders stating its intent to deny claims for lost income based on the Virus Exclusion. Plaintiff alleges that despite its requests, Defendant never provided a coverage decision and never paid Plaintiff's claim. As such, Plaintiff contends that Defendant effectively denied the claim or repudiated or anticipatorily breached its obligations under the Policy.

Defendant contends that the Complaint should be dismissed for three reasons. First, Plaintiff was an essential business excluded from the requirements of the Executive Order and thus, was not required to close. Second, even if the Executive Order applied to Plaintiff, the Civil Authority Provision would not provide coverage because Plaintiff has failed to, and cannot in good faith, allege that the Executive Order prohibits access to its premises "due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Finally, Defendant contends that the Virus Exclusion excludes coverage.

### APPLICABLE LEGAL AUTHORITY

Defendant alleges dismissal is appropriate pursuant to Florida Rule of Civil Procedure 1.140. Despite not explicitly stating so in their Motion, the gravamen of Defendant's position is that Plaintiff has failed to state a cause of action and thus, dismissal pursuant to Rule 1.140(b)(6) is appropriate. "A motion to dismiss is designed to test the sufficiency of a complaint, not to determine issues of fact." *Lowery v. Lowery*, 654 So. 2d 1218, 1219 (Fla. 2d DCA 1995). As such, "[t]he material allegations of the complaint must be taken as true." *Davison v. Iona-McGregor Fire Prot. & Rescue Dist.*, 674 So. 2d 858, 859 (Fla. 2d DCA 1996). However, "[a] party does not properly allege a cause of action by alleging in conclusive form, which tracks the language of the statute, acts which lack factual allegations and merely state bare legal conclusions." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490, 501 (Fla. 3d DCA 1994) (disagreed with on other grounds in *Condo. Ass'n of La Mer Estates, Inc. v. Bank of New York Mellon Corp.*, 137 So. 3d 396 (Fla. 4th DCA 2014)). The Court is limited to a review of the four corners of the complaint, but such review includes any exhibits attached to it. *See Haslett v. Broward Health Imperial Point Med. Cnt*, 197 So. 3d 124, 127 (Fla. 4th DCA 2016). "[A] complaint should not be dismissed for failure to state a cause of action 'unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim.'" *Meadows Community Ass'n, Inc. v. Russell-Tutty*, 928 So. 2d 1276, 1280 (Fla. 2d DCA 2006) (*quoting Ingalsbe v. Stewart Agency, Inc.*, 869 So. 2d 30, 35 (Fla. 4th DCA 2004)).

"A party may not maintain a claim for breach of contract where the plain language of the contract upon which the claim is based unambiguously establishes that the defendant did not breach the duty alleged in the complaint." *Detwiler v. Bank of Central Fla.*, 736 So. 2d 757, 758 (Fla. 5th DCA 1999), *cf. Consuegra v. Lloyd's Underwriters at London*, 801 So. 2d 111, 112 (Fla. 2d DCA 2001) (finding that the contract in that case did not unambiguously establish that Lloyd's did not

---

² Plaintiff alleges that the Executive Order was effective on April 3, 2020, and lasted through April 30, 2020.

breach the duty alleged in the complaint). The contract at issue here is a policy of insurance. Florida law provides that the construction of an insurance policy is a question of law for the court. *See generally U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). Such policies must be "construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Moreover, "[i]n construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Gen. Star Indem. Co. v. West Fla. Village Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004). "Indeed, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders." *Id.* (*citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003)). Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) (*quoting State Farm Mutual Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). "Where no ambiguity exists, the policy shall be construed according to the plain language of the policy . . ." *Gen. Star Indem. Co.*, 874 So. 2d at 30. Policy language is considered ambiguous only if it "is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007).

## CONCLUSIONS OF LAW

The Court first addresses Defendant's contention that Plaintiff was excluded from the requirements of the Executive Order and thus, was not required to close its business. To support this argument, Defendant relies on documents and allegations outside the four corners of the Complaint. Defendant contends that this Court may take judicial notice of executive orders, and attaches the following documents to its Motion:

1. Executive Order 20-91
2. Advisory Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, dated March 28, 2020
3. Guidance on the Essential Critical Infrastructure Workforce: Ensuring Community and National Resilience in COIVD-19 Response
4. Executive Order 20-89
5. Miami-Dade County Emergency Order 07-20
6. Amendment No. 1 to Miami-Dade County Emergency Order 07-20
7. Amendment No. 2 to Miami-Dade County Emergency Order 07-20
8. Amendment No. 3 to Miami-Dade County Emergency Order 07-20

The Court takes as true Plaintiff's allegation that Executive Order 20-91 required Plaintiff to close its dental practice. None of the foregoing eight documents are attached to the Complaint, and only Executive Order 20-91 is addressed within the allegations of the Complaint.[3] It would be reversible error for this Court to take judicial notice of and then consider documents outside the four corners of the Complaint when deciding a motion to dismiss. *See Norwich v. Global Financial Associates, LLC*, 882 So. 2d 535, 537 (Fla. 4th DCA 2004) (finding that "the trial court erred when it

---

[3] While Plaintiff's Complaint alleges Executive Order 20-91 was the civil authority that required closure, the Executive Order was not actually attached as an exhibit to the Complaint.

ventured outside the four corners of the complaint, took judicial notice of the final judgment of dissolution of marriage, and dismissed the complaint with prejudice"). Moreover, even if the Court could take judicial notice of these documents at the motion to dismiss stage, the court file does not reflect that Defendant provided Plaintiff timely written notice of its request for judicial notice. *See* § 90.23, Fla. Stat. (2014). Rather, Defendant made a passing statement of permissibility within the body of its Motion. The Court cannot and will not consider documents, information, or allegations outside the four corners of the Complaint in ruling on this motion to dismiss.

Having dispensed with that preliminary matter, the Court must now evaluate whether coverage was triggered based on the allegations in the Complaint. This Court is sympathetic to the plight of so many business owners in the wake of the COVID-19 pandemic. Yet, this Court cannot allow sympathy to cloud its review of the plain meaning of an insurance policy. Here, the Policy does not provide for coverage of the alleged economic losses resulting from the COVID-19 pandemic. Taking as true the facts alleged in the Complaint, and considering such facts in conjunction with the plain language of the Policy, the Court must grant the motion to dismiss.

The Policy's Coverage Form defines coverage as follows:

> We will pay for *direct physical loss of or damage to* Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.[4]

(emphasis added).

The term "Covered Cause of Loss" is defined in the Policy as follows:

> 3. Covered Causes of Loss
>    Risks of direct physical loss unless the loss is:
>    a. Excluded in Paragraph B. Exclusions in Section I; or
>    b. Limited in Paragraph A.4. Limitations in Section I.[5]

The Civil Authority Provision was the basis for Plaintiff's claim of loss. This Provision provides in relevant part as follows:

> When the Declarations show you have coverage for Business Income and Extra Expense, we will pay for the actual loss of Business Income you sustain and necessary Extra Expenses caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

Plaintiff alleges that the Executive Order—an action of civil authority—prohibited access to its premises due to COVID-19 being present at other businesses, which Plaintiff alleges constituted a

---

[4] This is found in BPM P 1FL 03 19, Businessowners Coverage Form.

[5] This definition is found in BPM P 1FL 03 19, Businessowners Coverage Form.

direct physical loss or damage to property, and that such loss or damage was caused by or resulted from a Covered Cause of Loss—the presence of COVID-19. Defendant's position is that the presence of COVID-19 on a business's premises does not constitute direct physical loss of or damage to property. Thus, in this case, the applicability of the Civil Authority Provision turns largely on whether the mere presence of COVID-19 on business premises indeed constitutes *a direct physical loss of or damage to property*. This is a legal determination suitable for resolution on a motion to dismiss. A plain reading of the Policy language and a consideration of Florida law lead to the only reasonable interpretation that the mere presence of COVID-19 on business premises does not constitute a direct physical loss of or damage to property. As such, it is also not a Covered Cause of Loss and cannot serve as the basis for Civil Authority coverage.

Plaintiff argues that the presence of harmful substances which render property uninhabitable or unusable constitutes direct physical loss or damage; that tangible or structural damage is not required. However, all of Plaintiff's cited legal authority is from outside this jurisdiction and does not apply Florida law. Instead, Florida law "reflect[s] that actual, concrete damage is necessary." *Infinity Exhibits, Inc. v. Lloyd's London*, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020) (finding unpersuasive an argument that "economic damage is synonymous with 'physical loss'") (*citing Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed.Appx. 868 (11th Cir. Aug. 18, 2020) ("*Mama Jo's II*").[6] "A 'loss' is the diminution of value of something [. . .] Direct and physical modify loss and impose the requirement that the damage be actual." *Mama Jo's II*, 823 Fed.Appx. at 879 (finding that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'") (*citing Black's Law Dictionary* (10th ed. 2014), *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017), and *Vazquez v. Citizens Prop. Ins. Corp.*, 2020 WL 1950831, at *3 (Fla. 3d DCA March 18, 2020); *citing also MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) ("A direct physical loss 'contemplates an actual change in insured property.'")). Similar to Plaintiff's argument here, in *Diesel Barbershop*, plaintiffs argued that the policy did not require tangible physical loss and that restricted usage due to governmental orders in connection with COVID-19 was a covered loss. *See Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).[7] The *Diesel Barbershop* Court acknowledged that some courts have found direct physical loss despite the lack of physical damage. *Id.* at *5 (citations omitted). Yet, the Court found more compelling the line of cases requiring tangible injury to property. *Id.* (citations omitted). This Court similarly finds.

Moreover, persuasive authority for the Court's analysis is found in cases applying Florida law in the context of COVID-19-related losses. In the Middle District's opinion in *Infinity*, the Court noted that plaintiff "[was] not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property."[8] The *Infinity* Court further stated that "[c]ourts across the country have held that

---

[6] In *Infinity*, the Court granted a motion to dismiss for failure to state a claim. *Mama Jo's II* was decided on a motion for summary judgment.

[7] The Court notes that *Diesel Barbershop* applied Texas law, but given the similarity in argument, the Court finds such case to be persuasive authority.

[8] Of note, Plaintiff cited to *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Missouri Aug. 12, 2020) which found that "Plaintiffs here have plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable" which was sufficient to survive a

such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage." *Infinity*, at *4 (*citing Turek Enter., Inc. v. State Farm Mutual Auto. Ins. Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020), *10E, LLC v. Travelers Indem. Co. of Conn.*, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), and *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020)).[9] In *Infinity*, the Middle District of Florida found no coverage where the insured alleged lost income due the mandated closure of non-essential businesses as there was no allegation of direct physical loss. Similarly, in *Malaube*, the Southern District of Florida found no direct physical loss based on allegations that two Florida Emergency Orders limited the full use of a restaurant. *Malaube*, 2020 WL 5051581, at *4-5 (*citing,* among others, 10A *Couch On Insurance* § 148.46 (3d Ed. 2019) ("[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.")). There is no allegation that COVID-19 physically altered or physically damaged any property. Nor is Plaintiff's lack of access to its own premises a direct physical loss or damage, as those terms are defined by Florida law. The Court concludes that the mere presence of COVID-19 on business premises does not constitute a direct physical loss of or damage to property. As such, it cannot be found that the Executive Order prohibiting access to the premises was due to a direct physical loss of or damage to property other than at Plaintiff's premises.[10] *See generally Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of *physical damage* to other premises in the proximity of the insured's property.") (citations omitted) (emphasis added). Moreover, because no direct physical loss or damage is alleged in this case, no covered cause of loss can be found.

---

motion to dismiss. *Id.* at *6 (applying Missouri law). The factual allegations of the complaint in *Studio 417* were far more extensive than those in this case. Here, Plaintiff simply alleges that the Executive Order prohibited access to its premises due to COVID-19 being present at other businesses. Plaintiff alleges that the mere presence of COVID-19 at other business premises constituted a direct physical loss or damage to property, and that such loss or damage was caused by or resulted from a Covered Cause of Loss—the presence of COVID-19. Here, the Court is concluding that the mere presence of COVID-19 does not constitute a direct physical loss or damage to property. This leaves Plaintiff with an allegation of lack of access, which similarly is not a direct physical loss. An additional critical difference between *Studio 417* and the present case is that the policies at issue in *Studio 417* did not exclude or limit losses from viruses.

[9] *Turek*, *10E*, and *Malaube* were all decided on motions to dismiss.

[10] Additionally, the Court notes that Plaintiff alleges Executive Order 20-91 was *Florida's* stay-at-home order, implying state-wide applicability. Plaintiff alleges that the Order forced Sunshine and similarly-situated businesses to close. Yet, there is no allegation that the Order was issued due to direct physical loss of or damage to particularized property other than at the described premises, as is contemplated in cases such as *Dickie Brennan*. Instead, the allegation is that the stay-at-home order broadly prohibited access to Sunshine's premises (and all other similarly-situated businesses) due to other property generally experiencing the presence of COVID-19. The distinction as the Court sees it is that this Executive Order was issued on a state-wide preventative basis versus on a targeted basis particularized to certain property as is contemplated by civil authority provisions generally. *See generally Dickie Brennan*, 636 F.3d at 686-87. The distinction is a fine one, but notable.

Because the allegations of the Complaint demonstrate that multiple factors required for coverage under the Civil Authority Provision remain unmet, the Court finds that Plaintiff has failed to state a cause of action for breach of contract. *See Detwiler*, 736 So. 2d at 758. This Court's analysis matches that of a growing body of cases addressing economic loss as a result of the COVID-19 pandemic, and the governmental directives aimed at slowing its spread. *See generally Infinity*, *Turek Enter., Inc.*, *10E, LLC* and *Malaube*; *see also Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) (similarly finding that New York law requires damage to property and explaining that "[coronavirus] damages lungs. It doesn't damage printing presses."). While these cases provide only persuasive authority, the Court finds value in considering how other courts are evaluating similar policy provisions in the context of COVID-19-related losses.[11]

Even if the Court assumes that Plaintiff has presented allegations sufficient to trigger coverage under the Civil Authority Provision, the Court further finds that the Virus Exclusion applies to exclude such coverage. The Virus Exclusion reads in relevant part:

> B. *We will not pay for loss or damage caused by or resulting from any virus*, bacterium or other microorganism *that induces or is capable of inducing physical distress, illness or disease*.

(emphasis added).[12] The Court will first address Plaintiff's argument that the Virus Exclusion is not enumerated within the definition of Covered Cause of Loss and therefore, it cannot exclude coverage. More specifically, Plaintiff argues that Covered Cause of Loss is defined in the Policy as:

> Risks of direct physical loss unless the loss is:
> a. *Excluded in Paragraph B. Exclusions in Section I*; or
> b. Limited in Paragraph A.4. Limitations in Section I.[13]

(emphasis added). Because the Virus Exclusion is not found in Paragraph B, but rather in a standalone endorsement, Plaintiff contends that it cannot bar coverage. The Court disagrees. The Virus Exclusion is an endorsement to the Policy which begins with the following:

> A. The exclusion set forth in Paragraph B. *applies to all coverage under Section I-Property in all forms and endorsements that comprise this Businessowners Policy*, except as provided in Paragraph C. *This includes* but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover *business income, extra expenses or action of civil authority*.

The Court finds that a plain reading of the Virus Exclusion leads to the only reasonable conclusion that it modifies the definition of a Covered Cause of Loss to the extent that this endorsement provides an additional exclusion. Finding that the Virus Exclusion can indeed exclude

---

[11] Notably, *Infinity*, *Malaube*, and later-cited *Martinez* all apply Florida law.

[12] This Exclusion is found in BPM 1115FL 03 16 Florida-Exclusion of Loss Due to Virus or Bacteria.

[13] Again, this definition is found in BPM P 1FL 03 19, Businessowners Coverage Form.

coverage, the Court turns to whether the Virus Exclusion is triggered by the facts alleged in the Complaint.

Plaintiff also argues that the Virus Exclusion is inapplicable because its loss was not caused by or resulting from COVID-19. Rather, Plaintiff contends that its losses were caused by and resulted from the Executive Order. This is a narrow application of the Exclusion to the alleged facts which is not supported by a plain and reasonable reading of the language. While the economic losses at issue here were purportedly suffered as a result of business closures required by the Executive Order, the Executive Order would not have been issued had COVID-19 not created a public health concern necessitating the Order. The Executive Order was in direct response to the threat of COVID-19 and aimed at slowing its spread. *See generally Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (highlighting a California case which considered the argument that the loss was created by the Closure Orders not the virus, finding such argument to be nonsensical); *see also Martinez v. Allied Ins. Co. of Am.*, Case No.: 2:20-cv-00401-FtM-66NPM (M.D. Fla. Sept. 2, 2020) (dismissing with prejudice upon finding that policy specifically excludes loss caused by a virus, therefore dentist failed to state a claim for breach of contract and declaratory judgment); *see generally Diesel Barbershop*, 2020 WL 4724305, at *6 ("While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community."). Plaintiff also pleaded that COVID-19 was the reason the Executive Order was issued—due to COVID-19 being present at other businesses. Given this, the Court finds that Plaintiff's purported loss was caused by or resulted from COVID-19—a virus. Therefore, this Court finds that the Virus Exclusion applies to exclude coverage.

Given the foregoing, the Court finds that a plain reading of the Policy contradicts Plaintiff's claim of coverage. The Civil Authority Provision requires direct physical loss or damage, and Florida law supports a legal conclusion that the mere presence of COVID-19 on business premises does not constitute direct physical loss or damage. Without direct physical loss or damage, there is no covered cause of loss. Even if Plaintiff's allegations established coverage, the Virus Exclusion applies. This Policy does not cover the economic losses Plaintiff allegedly suffered as a result of its business closure required by the Executive Order which was issued to address a public health crisis caused by COVID-19. As such, the Court finds that Plaintiff has failed to state a cause of action for breach of contract— without coverage, there can be no breach. *See generally Ranieri v. Paincaire Holdings, Inc.*, 889 So. 2d 106 (Fla. 5th DCA 2004) (affirming order granting dismissal based on trial court's interpretation of employment contract as unambiguous and such plain language contradictory to a claim for breach of contract).

Moreover, Plaintiff has failed to state a cause of action for declaratory relief because there is no basis for Plaintiff to be in doubt of its rights under the Policy where the plain language and law do not extend coverage for the alleged loss. The Policy, the Civil Authority Provision, and the Virus Exclusion are all clear and unambiguous, and none are subject to any other reasonable interpretation. Amendment would be futile under the circumstances. Dismissal with prejudice is warranted.

It is therefore **ORDERED AND ADJUDGED** that

1. Defendant, Main Street America Protection Insurance Company's *Motion to Dismiss Plaintiff's Complaint with Prejudice* is hereby **GRANTED** and Plaintiff's *Complaint and Demand for Jury Trial* is **DISMISSED WITH PREJUDICE**.

2. Plaintiff shall go hence without day.

DONE AND ORDERED on: _____.

                                                  Electronically Conformed 11/10/2020
                                                  Emmett L. Battles_____
                                                    **E. LAMAR BATTLES,**
                                                    **Circuit Court Judge**

Electronic Copies Provided Through JAWS