# Exhibit G



CAUSE NO. DC-20-05751-A

| | | |
|---|---|---|
| LOMBARDI'S, INC., et al | § | IN THE JUDICIAL COURT |
| | § | |
| VS. | § | 14TH DISTRICT COURT |

INDEMNITY INSURANCE                    DALLAS COUNTY
COMPANY OF NORTH AMERICA

## ORDER DENYING MOTION TO DISMISS PURSUANT TO RULE 91A

On this date came to be heard Defendant Indemnity Insurance Company of North

America's Amended Motion to Dismiss Pursuant to Rule 91A. After considering the

pleadings on file and arguments of Counsel the Court is of the opinion that the Motion should

be **DENIED**.

**IT IS SO ORDERED**.

Signed this 15th day of October 2020

JUDGE ERIC MOYÉ
14TH DISTRICT COURT

CAUSE NO. DC-20-05751

| | | |
|---|---|---|
| LOMBARDI'S INC.; LOMBARDI'S FAMILY CONCEPTS, INC.; PENNE SNIDER, LLC; PENNE PRESTON, LLC; ALBERTO LOMBARDI INTERESTS, LLC; TAVERNA DOMAIN AUSTIN, LP; CAFÉ TOULOUSE RIVER OAKS DISTRICT; CAFÉ MONACO HPV, LLC; PENNE LAKEWOOD, LLC; TAVERNA BUCKHEAD, LP; TAVERNA AUSTIN, L.L.C.; TAVERNA FT. WORTH, LLC; TOULOUSE KNOX BISTRO, LLC; TAVERNA ARMSTRONG, L.L.C.; TOULOUSE DOMAIN AUSTIN, LP; BISTRO 31 LEGACY, LP; TAVERNA LEGACY, LP; TAVERNA BUCKHEAD, LP; AND LOMBARDI'S OF DESERT PASSAGE, INC. | § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | § § § | |
| Defendant. | § § | A-14TH JUDICIAL DISTRICT |

## DEFENDANT INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S AMENDED MOTION TO DISMISS PURSUANT TO RULE 91A

Defendant Indemnity Insurance Company of North America ("**Chubb**") files this Amended[1] Motion to Dismiss Pursuant to Rule 91a of the Texas Rules of Civil Procedure, and would show:

---

[1] Chubb filed its original Motion to Dismiss Pursuant to Rule 91a on August 14, 2020, with a hearing set for September 17, 2020. Plaintiffs filed a First Amended Petition on September 14, 2020, "at least 3 days before the date of the hearing," which entitled Chubb to file this "amended motion directed to the amended cause of action" before the date of the hearing. Tex. R. Civ. P. 91a.5(b). This amended motion "restarts the time periods in [the] rule." Tex. R. Civ. P. 91a.5(d).

*Preliminary Statement*

It would be difficult to overstate the magnitude of the economic and societal challenges and, in too many instances, hardships created by the current global health crisis. Rewriting clear and unambiguous contractual language, however, is not the solution to the extraordinary challenges arising from the coronavirus pandemic. In seeking coverage for alleged losses stemming from the COVID-19 pandemic, Plaintiffs ask the Court to do precisely that, namely ignore a case-dispositive virus exclusion in the Policy at issue here.

Specifically, Plaintiffs seek to recover lost "business income" allegedly incurred by their restaurants due to local COVID-19 related ordinances under a commercial property insurance Policy that provides coverage for such losses *only* when the insured property has suffered "direct physical loss" and, even then, *only* for the time it takes to repair the property. Here, Plaintiffs do not contend that their restaurants suffered any direct physical loss, but instead allege that they lost income because Dallas ordinances restricted them from providing in-restaurant seated dining.

Plaintiffs' claim for coverage under the Policy fails because they have not alleged that the insured property suffered any physical loss—and even concede that it did not. Similarly, Plaintiffs are not entitled to recover under the provision insuring against losses resulting from an exercise of civil authority because that provision also requires physical loss to nearby property, which Plaintiffs have not alleged. Moreover, Plaintiffs' claims for coverage are precluded by two separate exclusions, one barring losses resulting from a virus and another barring losses resulting from ordinances that restrict use of insured property. Because Plaintiffs' claim for coverage under the Policy fails, so, too, must their claims for breach of the duty of good faith and fair dealing and for violation of the Prompt Payment Act.

Rule 91a is designed to dispose of baseless lawsuits such as this one. Plaintiffs rely on a novel construction of policy language that no court applying Texas law has ever accepted, and which numerous courts have squarely rejected. Finding for Plaintiffs here would require this Court to ignore longstanding rules of construction for insurance policies—rules which Texas courts have followed even during times of crisis like the one we are currently experiencing. Plaintiffs' claims should be dismissed.

## FACTUAL BACKGROUND

Plaintiffs' allegations relevant to this Motion, taken as true, together with inferences reasonably drawn from them, are as follows:

Chubb entered into a contract of commercial property insurance with the Lombardi's family of restaurants.[2] Throughout the Original Petition, Plaintiffs refer to and quote from the Commercial Property and General Liability Policy No. MCRD38196169 (the "**Policy**"),[3] issued by the Indemnity Insurance Company of North America to Lombardi Family Concepts Inc.[4] as the named insured, for the policy period June 30, 2019 to June 30, 2020.[5] The Policy provides commercial property coverage for sixteen dine-in restaurants in Texas, Georgia, and Nevada.[6]

On March 16, 2020, in response to the COVID-19 virus,[7] Dallas County Judge Clay Jenkins issued an order that, in relevant part, provided that "Restaurants with or without drive-in or drive-through services . . . may only provide take out, delivery, or drive-through services as allowed by law."[8] Also on March 16, 2020, the City of Dallas issued a similar order prohibiting

---

[2] Plaintiffs' First Amended Petition, filed on September 14, 2020 ("**Petition**") ¶ 7.
[3] Relevant excerpts of the Policy, highlighted for the Court's convenience, are attached hereto as Exhibit A. Chubb will make a complete, certified copy of the Policy available upon the Court's request.
[4] The various insureds under the Policy that are Plaintiffs in this coverage action will be referred to herein as "Plaintiffs."
[5] Pet. ¶¶ 7-8.
[6] Pet. ¶¶ 7, 39.
[7] Pet. ¶¶ 43-46
[8] Pet. ¶ 47.

restaurants from providing dine-in services.[9]  Harris County also ordered restaurants to close for dine-in services and to only provide "take out, delivery, or drive-through services."[10]  Plaintiffs cite numerous other city, county, and federal declarations and orders, but the remainder of the ordinances they reference do not directly address any restrictions on the operation of restaurants. Notably, the orders cited by Plaintiffs do not restrict *access* to the restaurant premises or *close* the premises, but rather only *regulate* the type of business that the restaurants may operate. While Plaintiffs' locations include Georgia and Nevada restaurants, they identify no orders or restrictions in those jurisdictions that restrict restaurant operations. Nor do Plaintiffs reference provisions that would affect operation of their restaurants in Austin, Fort Worth, or Plano.

On March 17, 2020—one day after the Dallas and Houston orders were issued—Plaintiffs provided to Chubb a notice of claim under the Policy "in connection with the recent events involving the 2019 Novel Coronavirus pandemic" ("the March 17 Claim").[11]

By letter dated April 3, 2020, Chubb declined the March 17 Claim as not covered by the language of the Policy.[12]  On April 29, 2020, Plaintiffs brought this coverage action against Chubb.

## ARGUMENT

### I.   Legal Standard

#### A.  Rule 91a Motion to Dismiss

Rule 91a of the Texas Rules of Civil Procedure, promulgated in 2013 to increase judicial efficiency, allows for the disposal of baseless claims on the pleadings.[13]  TEX. R. CIV. P. 91a.1;

---

[9] Pet. ¶ 48.
[10] Pet. ¶ 55.
[11] Pet. ¶ 79.
[12] Pet. ¶ 84.
[13] While more than sixty days have elapsed from when Plaintiffs served their Petition on Defendant on April 29, 2020 to the filing of Chubb's Motion to Dismiss on August 14, 2020, this Motion is timely because it was filed when this case has been pending before this state court for less than sixty days.  All Texas state court deadlines and

*see also In re Joe Kelley Interests, Inc.*, No. 05-19-00559-CV, 2019 WL 2521725, at *1 (Tex. App.—Dallas June 19, 2019, no pet.) ("The purpose of Rule 91a . . . is to require the early and speedy dismissal of baseless claims."). "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. Rule 91a provides two circumstances under which a cause of action has no basis in law: (1) where the petition does not allege sufficient facts "to demonstrate a viable, legally cognizable right to relief" and (2) where the plaintiffs "allege[] additional facts that, if true, bar recovery." *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

For a petition to survive a Rule 91a motion to dismiss, it must contain "enough facts to state a claim to relief that is plausible on its face." *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "The [petition] is . . . construed in favor of the plaintiff, and all well-pleaded facts are taken as true." *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* However, only factual allegations—not legal conclusions or conclusory statements—should be taken as true for purposes of ruling on a Rule 91a motion to dismiss. *See City of Austin v. Liberty Mut. Ins.*, No. 431 S.W.3d 817, 826 (Tex. App.—Austin 2014, no pet.) ("[A] legal conclusion need not be taken as true in evaluating the sufficiency of the pleadings.").

---

time periods are tolled during the time that a case is removed to federal court until it is remanded back to the state court, and this case was removed to federal court from May 27 to July 15, 2020. *In re Univ. of the Incarnate Word*, 469 S.W.3d 255, 259 (Tex. App.—San Antonio 2015, orig. proceeding) ("Because the state court resumes from the point reached prior to remand as if no interruption had occurred, the timeliness of a plea filed during the period of removal would be calculated without considering the time spent in federal court."); *Brogdon v. Ruddell*, 717 S.W.2d 675, 677–78 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.) ("The timetable was temporarily suspended on March 19, 1986, when the plaintiff removed the case to a federal district court. The timetable resumed on July 2, 1986, the date of remand by the federal court to the state court. Thus, the due date for the appeal bond would have been July 15, 1986, the twentieth elapsed day of the appellate timetable.").

When considering a Rule 91a motion to dismiss, courts look to the pleading and materials permitted under Rule 59 to determine whether the dismissal standard is satisfied. Tex. R. Civ. P. 91a.6 (in ruling on a motion to dismiss, the court "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59"). Since the Plaintiffs extensively refer to and quote from the Chubb insurance policy at issue in their Petition,[14] they have "made [the policy] a part of the pleadings" for all purposes and the Policy may be considered by this Court on this Rule 91a motion. *See* Tex. R. Civ. P. 59 (providing that documents "constituting, in whole or in part, the claim sued on, or the matter set up in defense," when quoted and referred to in the pleading, "shall be deemed a part thereof for all purposes"); *Branch v. Monumental Life Ins. Co.*, 422 S.W.3d 919, 923 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (under Rule 59, the insured "was permitted—but not required—to attach a copy of the policy, quote it, or summarize it" in its pleading).

All of Plaintiffs' claims against Chubb are groundless and should be dismissed.

### B. Insurance Policy Interpretation

Texas Courts interpret insurance policies in the same manner as other contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). A Court's primary goal is to give effect to the intentions of the parties as expressed by the policy language. *Ideal Lease Service, Inc. v. Amoco Prod. Co., Inc.,* 662 S.W.2d 951, 953 (Tex. 1983). A contract provision is unambiguous when "the term in question is susceptible of only one reasonable construction." *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied). The determination of whether ambiguity exists is a question of law. *Yancey*, 755 S.W.2d at 917. Importantly, "[w]here the terms of an insurance policy are plain, definite, and unambiguous, the

---

[14] Pet. ¶¶ 7-13 (referencing the Policy and its terms), ¶¶ 10-11, 22, 88, 94 (quoting the Policy's predicate language and limit for business interruption coverage), ¶ 97-100 (referencing the Policy's Virus Exclusion and its Ordinance or Law Exclusion).

courts cannot vary these terms." *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965). Unambiguous contracts are enforced as written. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121, 39 Tex. Sup. Ct. J. 537 (Tex. 1996). None of the relevant provisions of the Policy at issue in this case are ambiguous, so their plain meanings should be enforced by this Court.

## II. Plaintiffs' Breach of Contract Claim Has No Basis in Law and Should Be Dismissed Because Plaintiffs' Insurance Claim is Not Covered and Excluded.

Plaintiffs' cause of action for breach of contract has no basis in law, because even assuming the facts pleaded to be true, Plaintiffs do not qualify for the business interruption coverage they seek under the Policy for three independent reasons. First, the Policy provides no coverage for lost business income absent "direct physical loss of or damage" to the insured property, which Plaintiffs do not allege occurred. Second, Plaintiffs allege their losses resulted from the pandemic spread of the virus known as COVID-19, and thus their losses are flatly excluded from coverage under the Policy's Virus Exclusion. Third, Plaintiffs also allege their losses were caused by enforcement of or compliance with ordinances or laws regulating the *use of* the insured premises, and thus their losses are excluded from coverage by the Ordinance or Law Exclusion. Finally, the Policy's Civil Authority provision does not provide coverage for Plaintiffs' business income claim because Plaintiff does not allege any direct physical loss has occurred within one mile of any insured property that caused Plaintiff to lose access to its premises.

### A. There is No Coverage Under the Business Income Provision Absent "Direct Physical Loss of or Damage To" the Insured Property.

The Policy clearly defines and limits the scope of coverage for loss of business income. The Business Income (And Extra Expense) Coverage Form ("the Business Income Coverage Form") provides coverage

for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused **by direct physical loss of or damage to property** at premises which described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

Ex. A, Policy, Business Income Coverage Form ¶ A.1 at p. 28 (emphasis added). No other provision of the Policy provides coverage for loss of business income.

Under Texas law, "direct physical loss" requires physical damage, whether structural or cosmetic, to the insured property. *See, e.g., de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 723 (Tex. App.—Houston [14th Dist.] 2005, pet. filed) (holding "physical loss" means "tangible damage"); *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *7 (N.D. Tex. July 4, 2019) (citing 10 Couch on Ins. § 148:46 and holding that the term "physical loss "cannot fairly be construed to mean physical loss in the absence of physical damage"); *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at pp. 14-15 (W.D. Tex. Aug. 13, 2020) (dismissing coverage claim for COVID-19 business interruption for failing to allege any "direct physical loss" where insured failed to plead any "tangible injury" to its premises). In fact, the majority view across the country is that the words "direct" and "physical" mean that a qualifying loss must physically intrude on the property to change it or cause damage, as opposed to an economic loss from a reduction in business. *See, e.g., Rose's 1, LLC v. Erie Ins. Exchange*, Civil Case No. 2020 CA 002424 B, 2020 WL 4589206, 2020 D.C. Super LEXIS 10 (Sup. Ct. of D.C. Aug. 6, 2020) at p. 5 (the phrase "direct physical loss" requires "a direct physical intrusion on to the insured property"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (N.Y.A.D. 1st Dept. 2002) (where insured perils clause covered "direct physical loss or damage," the "only conclusion that can be drawn is that the business interruption coverage is

limited to losses involving physical damage to the insured's property"); *see also* 10 COUCH ON INSURANCE § 148:46 (3d ed. West 1998) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

Plaintiffs concede that the loss of business income, due to the suspension of the Lombardi's restaurants' dine-in operations, was not caused by physical damage to insured property.[15] Courts across the country have found that business income losses solely resulting from COVID-19 emergency orders—in the absence of physical damage or allegations that the COVID-19 virus was demonstrably present on an insured premise—are flatly not covered under commercial property policies. *See, e.g., Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, Case No. 20 Civ 3311 (VEC), Doc. No. 24-1, 2020 WL 2904834 (transcript of May 14, 2020 hearing) at 15:12-16 (S.D.N.Y. May 20, 2020) (holding that "this kind of business interruption [claim] needs some damage to the property" and COVID-19 related orders restricting in-person work at nonessential businesses "is just not what's covered under these insurance policies").

In three very recent court decisions, the court addressed this exact issue in similar disputes between a restaurant insured whose dine-in business was shut down by local COVID-19 orders and an insurer that denied coverage. In those cases, the court ruled that the insured's loss was not covered since the insured had not experienced or alleged any "direct physical loss" as required by the policy's coverage provision. *Rose's 1, LLC v. Erie Ins. Exchange*, Civil Case No. 2020 CA 002424 B, 2020 WL 4589206, 2020 D.C. Super LEXIS 10 (Sup. Ct. of D.C. Aug. 6, 2020) at p. 5 (dismissing restaurants' claim against their insurer for COVID-19 business

---

[15] Pet. ¶¶ 91-92, 95-96.

interruption, because their "loss" was not "physical" as the applicable "orders did not have any effect on the material or tangible structure of the insured properties"); *Gavrilides Management Co. v. Michigan Ins. Co.*. Case No. 20-258-CB, Doc. No. 23 (transcript of July 1, 2020 hearing) at 18:18-19:8; 20:5-18; 23:16-17 (Mich. Cir. Ct. August 4, 2020) (dismissing coverage claim for business interruption at restaurant due to COVID-19 orders prohibiting in-person dining after holding that the insured suffered no "direct physical loss of or damage to" its property as a result of the orders, as the restaurant premises experienced no tangible change or alteration to its physical integrity); *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at pp. 14-15 (W.D. Tex. Aug. 13, 2020) (dismissing barbershop's coverage claim for COVID-19 business interruption for failing to allege any "direct physical loss").

In *Gavrilides*, the court noted the policy mandated that, for business interruption coverage to apply, the restaurant's "suspension of operations" "must be caused by direct physical loss of or damage to property" and the cause of the loss must be "direct physical loss." *Id.* at 18:10-21. The court held that "direct physical loss of or damage to the property has to be something with material existence" and "that is tangible" or "alters the physical integrity of the property." *Id.* at 18:21-19:4. Since the *Gavrilides* restaurant plaintiff—just like the Lombardi Plaintiffs here—did "not allege any physical loss of or damage to the property" but rather "a loss of business due to executive orders shutting down … dining in the restaurant due to the Covid-19 threat," the court held that the lack of any alleged "direct physical loss" to the restaurant property definitively precluded coverage. *Id.* at 19:4-8; 19:14-16; 22:15-16; 23:5-15.

The Superior Court of the District of Columbia rejected an insured restaurant's claim for business interruption on the same grounds that there was no "direct physical loss" in *Rose's 1,*

*LLC v. Erie Ins. Exchange*, Civil Case No. 2020 CA 002424 B, 2020 WL 4589206, 2020 D.C. Super LEXIS 10 (Sup. Ct. of D.C. Aug. 6, 2020). The court walked through each of the words in "direct physical loss," holding first that the COVID-19 orders "did not effect [*sic*] any *direct* changes to the properties" (emphasis added), and second that the orders did not meet the "physicality" requirement of the coverage provision because they "did not have any effect on the material or tangible structure of the insured properties (nor did the restaurant plaintiff allege that "COVID-19 was actually present on their insured properties at the time they were forced to close"). *Id*. at pp. 4-5. The court then rejected the restaurant plaintiff's assertion that "loss" must include "loss of use," since—as the court noted—the "words 'direct' and ' physical' modify the word 'loss.'" *Id*. at p. 5. Given those interpretations, the court held that for the restaurant's "loss of use" to be covered, that loss of use must be caused by "a direct physical intrusion on to the insured property," and that the mayoral COVID-19 "orders were not such a direct physical intrusion." *Id*.[16]

Finally, the United States District Court for the Western District of Texas, applying Texas law, dismissed a business interruption coverage claim due to the COVID-19 shut down orders upon finding that the policy's requirement of a "direct physical loss" to the insured premises had not been pled by the plaintiff. *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at p. 14 (W.D. Tex. Aug. 13, 2020). The court held that "direct physical loss" requires "a distinct, demonstrable physical alteration of the property," and that an "intangible or incorporeal" loss was insufficient. *Id.* Moreover, the court ruled that an insured that "merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"

---

[16] The *Rose's 1* court also noted that the restaurant plaintiffs had cited no cases that supported the assertion that "a governmental edict, standing alone, constitute[d] a direct physical loss under an insurance policy." *Id.* (collecting and analyzing cases).

cannot meet the "direct physical loss" threshold.  *Id.*  Here, too, the Plaintiffs fail to allege any non-economic, demonstrable physical loss at any of their restaurants.

If the Policy was not clear enough that Business Income Coverage Form requires direct physical loss of or damage to property, the Policy includes that requirement in a second context. Specifically, the Policy provides that a claim for business income loss is covered only if it results from a "Covered Cause of Loss."  Ex. A, Policy, Business Income Coverage Form ¶ A.1 at p. 28. Determining whether a loss results from a Covered Cause of Loss requires several steps.  First, the Policy defines "Covered Cause of Loss" by referring to the "applicable Causes Of Loss form as shown in the Declarations."  *See* Ex. A, Policy, Business Income Coverage Form ¶ A.3 at p. 29.  Second, the Supplemental Declarations, in turn, set forth the Group # 2 limit for "Blanket Bus. Income by Value."  Ex. A, Policy, Commercial Property Coverage Part Supplemental Declarations (FA-24633) at p. 31.  Plaintiffs allege they are seeking coverage under the Group # 2 business income interruption limit of $18,952,419.  *See id.*; Petition ¶ 11.

Third, the Supplemental Declarations also individually list the covered restaurant locations.  The coverage relevant to Plaintiffs' "blanket business income" interruption claim are those identified as coming within the "Blkt Grp 2" limit of insurance, and the "Covered Causes of Loss" for each of those locations is designated as "SPECIAL."  Ex. A, Policy, Commercial Property Coverage Part Supplemental Declarations (FA-24633) at pp. 31-46. [17]  Fourth, the Policy's "Causes of Loss – Special Form" explains that "[w]hen Special is shown in the

---

[17]  Only the scheduled coverages with "Blkt Grp 2" in the Limit of Insurance field are relevant to Plaintiffs' Petition, their coverage claim, and this motion, as those are the business income interruption coverages for the insured premises.  *See, e.g.,* Ex. A, Policy, Commercial Property Coverage Part Supplemental Declarations (FA-24633) at p. 111 (Loc. No.: 017, Coverage: "Bus Inc Other Than Rental," Limit of Insurance: "Blkt Grp 2," Covered Causes of Loss: "SPECIAL"); *Id.* at p. 112 (Loc. No.: 008, Coverage: "Bus Inc Other Than Rental," Limit of Insurance: "Blkt Grp 2," Covered Causes of Loss: "SPECIAL"), etc.

Declarations, Covered Causes of Loss means **direct physical loss** unless the loss is excluded[18] or limited in this policy." Ex. A, Policy, Causes of Loss – Special Form (CP 10 30 10 12) ¶ A at p. 47 (emphasis added). Thus, the Policy provides in this second context that business income coverage requires direct physical loss to the insured property—which Plaintiffs concede did not occur here.

Plaintiffs allege only that governmental orders and the danger of the virus made their insured restaurant properties located in Dallas and Houston temporarily unavailable for dine-in services, so they have sought coverage under the incorrect premise that "direct physical loss" is equivalent to and encompasses partial "loss of use." *See* Petition ¶ 48 (Dallas order prohibited _use_ of restaurants for dine-in services only), ¶ 95 ("[t]he fact [that] property cannot be _used_… has resulted in a 'direct and physical loss of the property'"), ¶ 92 ("Insured Properties were directly and physically lost to Lombardi's as a result of the need to prevent the ongoing danger of the virus."). Plaintiffs' attempt to force equivalency between "direct physical loss" and "loss of use" is contradicted by the law. *See Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV, 2020 WL 5051581, at *9 (S.D. Fla. Aug 26, 2020) (rejecting restaurant plaintiff's argument that COVID-19 orders prohibiting in-person dining qualified as "direct physical loss" on the basis that the orders rendered the restaurant facilities "uninhabitable or substantially unusable," since (1) "direct physical loss" requires demonstrable, tangible, and physical alteration of the insured property, rather than just economic losses and (2) the COVID-19 orders "permitted Plaintiff to continue its takeout and delivery services," so the orders "never made the restaurant uninhabitable or substantially unusable"); *Rose's 1, LLC v. Erie Ins. Exchange*, Civil Case No. 2020 CA 002424 B, 2020 WL 4589206, 2020 D.C. Super LEXIS 10 (Sup. Ct. of D.C.

---

[18] Since the loss alleged by Plaintiffs is, as discussed *supra*, excluded by the policy's Virus Exclusion as well as the Ordinance and Law Exclusion, Plaintiffs' claim for coverage fails to meet the insuring agreement's requirement that the loss be due to a Covered Cause of Loss on this basis as well.

Aug. 6, 2020) at p. 5 (rejecting argument that "direct physical loss" encompasses "loss of use," *i.e.*, the deprivation of use of the insured restaurants for in-person dining, since "the words 'direct' and 'physical' modify the word 'loss;'" therefore the policy requires "a direct physical intrusion on to the insured property" and the local "orders were not such a direct physical intrusion"); *Roundabout Theatre Co. v. Continental Casualty Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (N.Y.A.D. 1st Dept. 2002) (specifically repudiating the insured's assertion that the phrase "loss of" must include "loss of use of" the insured premises, since the policy's covered causes of loss required any loss to be "direct" and "physical," which "narrows the scope of coverage"); *10E, LLC v. Travelers Indem. Co. of Connecticut*, Case 2:20-cv-04418-SVW-AS, 2020 WL 5095587, at *4 (C.D. Cal. Aug. 28, 2020), opinion amended and superseded, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ("An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property…. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property—not that the restrictions caused direct physical loss or damage," as "Plaintiff remained in possession of its dining room, bar, flatware, and all of [its other restaurant] accoutrements").

Even if Plaintiffs could establish they were somehow entitled under the Policy to lost business income resulting from the COVID-19 ordinances—they cannot—the Policy indemnifies against loss of business income only during the "period of restoration," which the Policy defines as the time it takes to physically repair ***physical damage*** to the insureds' premises. Ex. A, Policy, Business Income Coverage Form ¶¶ A.1 at p. 28 and F.3 at p. 30. The period of restoration is defined by the Policy to begin "72 hours after the time of direct physical loss or damage" and end on the earlier of the date when the property "should be repaired, rebuilt or

replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location." *See* Ex. A, Policy, Business Income Coverage Form ¶ F.3(a)-(b) at p. 30. As a Court examining similar policy terms recently stated, "constru[ing] 'direct physical loss or damage' to require actual harm" to the insured property "gives effect" and meaning to the policy's period of restoration provision. *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV, 2020 WL 5051581, at *9 (S.D. Fla. Aug 26, 2020). *See also Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*, 126 N.C. App. 698, 700, 486 S.E.2d 249 (N.C. App. 1997) (holding that the "period of restoration" clause means that the "business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding, or replacement"); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature," and the fact that the policy's "period of indemnity" is measured by the duration of repair work to the damaged property demonstrates that the insured's claim for business interruption *without* any physical damage to the property is nonsensical, since "the Policy would provide no logical termination of the indemnity period since there would be no lost or damaged 'covered property' to 'repair, replace, or restore.'").

In sum, business income coverage under the Policy is intended to indemnify the insured against loss where the insured property requires physical repair, not where the insured has been temporarily prohibited by a local authority from using the property in a particular manner. In fact, the "period of restoration" expressly *excludes* any time that the insured's business is not operating "due to the enforcement of or compliance with any ordinance or law that [r]egulates the… use… of any property." Ex. A, Policy, Business Income Coverage Form ¶ F.3(1) at p. 30.

Plaintiffs simply have no basis in fact or law that would entitle them to recover lost business income under the Policy.

**B. The Virus Exclusion Bars Coverage of Plaintiffs' Claim.**

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" that applies to all of the Policy's property coverage, including those provisions under which Plaintiffs seeks coverage.[19] It states that Chubb "will not pay for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." *See* Ex. A, Policy, Virus Exclusion ¶ B at p. 48. This language plainly, on its face, precludes Plaintiffs' coverage claim under any portion of the Policy, as Plaintiffs have pleaded that their business losses directly resulted from the virus.[20] The Plaintiffs' pleading also reflects that they were required to alter their restaurant operations to temporarily halt dine-in services in compliance with the local ordinances issued to contain the virus.[21] Plaintiffs plead that their loss of business income was caused by or resulted from the COVID-19 virus, and therefore their claim is excluded from coverage by the Virus Exclusion's plain terms. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Kasler Corp.*, 906 F.2d 196, 200 (5th Cir. (Tex.) 1990) ("Texas courts enforce exclusionary clauses if unambiguous in design and meaning and if the facts demonstrate that the claim falls within the scope of exclusionary language."); *Carolina*

---

[19] *See* Ex. A, Policy, Exclusion of Loss Due to Virus or Bacteria (Endorsement CP 01 40 07 06) ("Virus Exclusion") ¶ A at p. 48 (this endorsement's exclusion "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy" including specifically "forms or endorsements that cover business income, extra expense or action of civil authority").

[20] Pet. ¶ 92 ("The Insured Properties were directly and physically lost to Lombardi's as a result of the need to prevent the ongoing danger of the virus."), ¶ 91 ("The Insured Properties could not safely be open to the public or operated as a result of the risk [of viral transmission] in the areas where the Insured Properties were located."), ¶ 95 ("The fact that the property cannot be used because of the danger of exposure of the surfaces and air to the virus and the resulting danger to the public at minimum has resulted in a 'direct and physical loss of the property.'").

[21] Pet. ¶ 41 ("The various orders recognize that the pandemic presents a clear and present danger because of the propensity of the virus to be deposited on surfaces and in the air in businesses such as the Lombardi Plaintiffs' restaurants…"), ¶¶ 43, 47, 48, 52 (Dallas orders declared disaster "resulting from the COVID-19 Pandemic" and limited dine-in services at restaurants, among other actions, to slow the spread of the virus), ¶¶ 54-55 (Harris County order declared "extraordinary measures must be taken to contain COVID-19 and prevent its spread" including the closure of dine-in use of restaurants).

*Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 925 (N.D. Tex. 2009) (enforcing unambiguous policy exclusion by "giv[ing] its terms their plain meaning").

In a recent ruling in a strikingly similar COVID-19 insurance dispute involving a restaurant which had its dine-in services interrupted by local orders to prevent the spread of the virus, another court ruled that a virus exclusion like the one at issue here precluded coverage for the restaurant's claim. *Gavrilides Management Co. v. Michigan Ins. Co.*. Case No. 20-258-CB, Doc. No. 23 (transcript of July 1, 2020 hearing) at 20:19-21:18; 22:10-14; 23:16-17 (Mich. Cir. Ct. August 4, 2020) (dismissing coverage claim for business interruption at restaurant due to Covid-19 orders prohibiting in-person dining after holding that the policy's virus exclusion precludes such coverage). The *Gavrilides* court held that the virus exclusion was not vague. The court held that, even if the insured had met the policy's requirement that there be "actual physical loss or damage" (he did not), the virus exclusion would preclude coverage from losses resulting from the COVID-19 shutdown orders. *Id.* at 20:19-21:18; 22:10-14.

Significantly, the United States District Court for the Western District of Texas addressed a virus exclusion in an insurance coverage dispute arising from the COVID-19 shut down orders and reached the same holding: that the local orders shutting down the plaintiff's barbershop business were issued in response to the COVID-19 virus and therefore coverage was precluded by the policy's virus exclusion. *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at pp. 15, 17-18 (W.D. Tex. Aug. 13, 2020). Courts in other jurisdictions have also rejected COVID-19 business interruption claims as excluded by virus exclusions, even where the virus itself was not alleged to have contaminated the insured premises. *Turek Enterprises, Inc. v. State Farm Mutual Automobile Ins. Co.*, Case No. 20-11655, 2020 WL 5258484, at *2 (N.D. Mich. Sept 3, 2020)

(rejecting plaintiffs' argument that virus exclusion did not apply since the orders were the proximate cause of their business interruption losses, since the orders were expressly "issued to 'suppress the spread of COVID-19 and accompanying public health risks," so the "only reasonable conclusion is that the Order—and, by extension, Plaintiff's business interruption losses—would not have occurred but for COVID-19"); *Martinez v. Allied Ins. Co. of Am.*, Case No. 2:20-cv-00401FTM66NPM, 2020 WL 5240218, at *3 (M.D. Fla. Sept. 2, 2020) (dismissing breach of contract claim as non-viable in the face of the policy's virus exclusion, "[b]ecause Martinez's damages," *i.e.*, lost business income due to governmental orders limiting the services offered by his dental practice during the pandemic, "resulted from COVID-19, which is clearly a virus"). The same rationales and conclusion apply here, as the Policy's Virus Exclusion precludes Plaintiffs' entire claim for coverage.

### C. The Ordinance or Law Exclusion Bars Coverage of Plaintiffs' Claim.

The Policy also specifically excludes from coverage any loss that is "caused directly or indirectly" by "[t]he enforcement of or compliance with any ordinance or law… regulating the … use… of any property." *See* Ex. A, Policy, Causes of Loss – Special Form (CP 10 30 10 12), ¶ B.1.a(1) at p. 47. This exclusion applies specifically where "the loss results from [a]n ordinance or law that is enforced *even if the property has not been damaged.*" *Id.* ¶ B.1.a.(1)(a) at p. 47 (emphasis added).[22] Given this exclusion in the Policy and Plaintiffs' admissions in their Petition that their claimed loss was caused by the enforcement of government orders regulating and restricting the use of their restaurants to dine-in services—even though those restaurants were not physically damaged—Plaintiffs' claims for coverage under the Policy must fail. *Id.*;

---

[22] The Dallas County and City orders affecting the use of Plaintiffs' restaurants qualify as ordinances, and therefore trigger the Ordinance and Law Exclusion. *See Wong v. Monticello Ins. Co.*, No. 04-02-00142-CV, 2003 WL 1522938, at *2 (Tex. App.–San Antonio Mar. 26, 2003, no pet.) (order by city of San Antonio to demolish building qualified under the insurance policy's "Ordinance or Law" exclusion, thereby precluding coverage for the building's destruction).

Pet. ¶¶ 47, 48, 55 (citing the ordinances regulating the _use_ of Plaintiffs' restaurants for dine-in services), ¶ 95 ("fact [that] property cannot be _used_… has resulted in a 'direct and physical loss of the property'"). *See Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 7 N.Y.S.3d 365, 367 (N.Y.A.D. 2d Dept. 2015) (affirming dismissal of business interruption claim as excluded by the ordinance and law provision, where the insured could not "use" its dentist office on the insured premises due to town's enforcement of certificate of occupancy ordinance). Texas courts regularly enforce unambiguous exclusions, like this one, that plainly preclude the coverage sought by a plaintiff. *See Employers Cas. Co. v. Patterson*, 344 S.W.2d 199, 202 (Tex. Civ. App.—Amarillo 1961), writ dismissed (Apr. 19, 1961) (enforcing exclusion that precluded coverage since "[t]he language of the exclusion clause referred to [is] plain and unambiguous, [so] the contract of insurance must be enforced as made"); *Maryland Cas. Co. v. State Bank & Tr. Co.*, 425 F.2d 979, 982 (5th Cir. (Tex.) 1970) (enforcing "clear and unambiguous" policy exclusion under Texas law in determining no coverage existed).

### D. Plaintiffs Are Not Entitled to Business Interruption Coverage Under the Civil Authority Provision.

Neither are Plaintiffs entitled to coverage under the Policy's Civil Authority provision.[23] The Civil Authority provision indemnifies the insured, when "property other than property at the described premises" suffers damage from a "Covered Cause of Loss," against lost business income and extra expenses "caused by action of civil authority that prohibits access" to the insured premises "provided that ***both of the following apply***:"

    (1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described

---

[23] It is unclear from Plaintiffs' First Amended Petition whether they seek coverage under the Civil Authority provision of the Policy, as they no longer mention it specifically in their pleading. Plaintiffs originally alleged that they were entitled to coverage under the Policy's Civil Authority provision, *see* Original Petition ¶ 34, so Chubb addresses it to explain why Plaintiffs have not established any basis in law entitling them to the Civil Authority coverage either.

premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex. A, Policy, Business Income Coverage Form ¶ A.5 at p. 29 (emphasis added).

Plaintiffs' Petition does not allege *any* of the necessary components of the Policy's Civil Authority coverage: (a) a Covered Cause of Loss (*i.e.*, a "direct physical loss," as explained *supra*); that (b) caused damage to *other* property within one mile of the insured premises (much less within one mile of *each* of the over a dozen premises for which they are seeking coverage); and (c) a civil authority's prohibits *access* to the area surrounding the off-site damaged property, including access to the insured premises, in response to the dangerous conditions or to ensure unimpeded access for the civil authority to the damaged property. *Id.*

In the absence of the allegation of each of these facts—none of which are alleged in the Petition—Plaintiffs have no claim to coverage under the Policy's Civil Authority coverage. *See Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at p. 18 (W.D. Tex. Aug. 13, 2020) (holding, in a COVID-19 insurance dispute, that the policy's Civil Authority provision was not triggered); *City of Chicago v. Factory Mut. Ins. Co.*, No. 02 C 7023, 2004 WL 549447, at *3 (N.D. Ill. Mar. 18, 2004) (finding no coverage under a similar policy provision because the damage to other premises that prompted the civil authority's access prohibition to the insured's premises "did not occur at or within 1,000 feet of the insured properties").

While the other missing allegations are equally fatal to Plaintiffs' Civil Authority coverage claim, the final missing allegation of fact—a prohibition of access to the insured

premises—deserves particular attention. Plaintiffs' claim of coverage under the Civil Authority provision relies on the conflation of a prohibition of *access* to the insured premises (which did not happen and which Plaintiffs do not allege) with a prohibition or loss of a particular *use* of their insured premises (which Plaintiffs do allege, *see* Petition ¶¶ 47-48, 55, 95).

Simply put, Plaintiffs do not allege they have been prohibited from accessing their own premises by any government order. The orders Plaintiffs detail in their Petition, in fact, *expressly permit* Plaintiffs' access to their restaurants to provide take-out and delivery services to customers. Petition ¶¶ 47 (restaurants may "provide take out, delivery, or drive-through services"), 48 (allowing "take-out services"), 55 (restaurants may operate to provide "take out, delivery, or drive-through services as allowed by law"). Plaintiffs' judicial admissions render Civil Authority coverage inapplicable, since no authority prohibited Plaintiffs' access to their premises. *See* Ex. A, Policy, Business Income Coverage Form ¶ A.5.a at p. 74.

## III. Because Chubb Properly Denied Coverage Under the Policy, Plaintiffs' Breach of the Duty of Good Faith and Fair Dealing Claim and Request for Punitive Damages Have No Basis in Law and Should Also Be Dismissed.

Without any viable claim for breach of the Policy by Chubb, Plaintiffs' claim for breach of the duty of good faith and fair dealing cannot survive. Since Chubb properly denied Plaintiffs' coverage claim in compliance with the terms of the Policy, the good faith and fair dealing claim automatically fails as it has no basis in law. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341, 38 Tex. Sup. Ct. J 1011 (Tex. 1995) ("there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered"); *Wilson v. Colonial County Mutual Insurance Company*, No. 05-14-00220-CV, 2015 WL 1886862, at *3 (Tex. App.— Dallas Apr. 27, 2015, no pet.) ("[T]he threshold for bad faith is reached only when **the breach of contract is accompanied** by an independent tort. . . . Here, because [plaintiff] failed to establish a breach of the insurance contract, any inquiry into alleged bad faith and negligence is

unnecessary."); *Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 575 (Tex. App.–Houston [1st Dist.] 2001, no pet.) (affirming summary judgment dismissal of claim for breach of good faith and fair dealing, since the insurer properly denied the insured's underlying claim for coverage under the policy).

Likewise, Plaintiffs' request for punitive damages depends on its allegations of a breach of the duty of good faith and fair dealing, so it also has no basis in law. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253–54, 53 Tex. Sup. Ct. J. 96 (Tex. 2009) (affirming appellate court's decision to vacate punitive damage award after determination that insurer properly denied uncovered claim and therefore did not breach the insurance contract or the duty of good faith and fair dealing). Plaintiffs' allegations of breach of the duty of good faith and fair dealing and punitive damages from that alleged breach should be dismissed, as neither have any basis in law without an underlying breach of the Policy by Chubb.

## IV. Because Chubb Properly Denied Coverage Under the Policy, Plaintiffs' Claim for Violation of the Texas Prompt Pay Act Has No Basis in Law and Should Be Dismissed.

Similarly, since Chubb's denial of coverage was proper, Plaintiffs' claim for a violation of the Texas Prompt Pay Act has no basis in law and should be dismissed. "To prevail under a claim for TPPCA damages under section 542.060, the insured must establish: (1) *the insurer's liability under the insurance policy*, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813, 62 Tex. Sup. Ct. J. 1424 (Tex. 2019), reh'g denied (Dec. 13, 2019) ("If the insured fails to establish either that the insurer is liable for the claim … the insured is not entitled to TPPCA damages."); *see also Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922, 48 Tex. Sup. Ct. J. 1020 (Tex. 2005) (dismissing Prompt Pay Act claim after finding that the underlying coverage claims had been properly denied by the insurer defendant,

as "[t]here can be no liability under [the Texas Prompt Pay Act] if the insurance claim is not covered by the policy); *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. (Tex.) 2003) (per curiam) (dismissing Prompt Pay Act claim after finding that the underlying coverage claims had been properly denied by the insurer defendant).

Because Chubb properly denied coverage under the Policy, Plaintiffs' claim alleging a violation of the Texas Prompt Pay Act automatically fails, as it has no basis in law, and should be dismissed.

## Conclusion and Prayer

Chubb moves for a dismissal of all claims alleged against it with prejudice, and for all other relief to which it may be justly entitled, including its reasonable attorney fees associated with this motion, as provided by Rule 91a.7 of the Texas Rules of Civil Procedure.

Dated: September 16, 2020

NORTON ROSE FULBRIGHT US LLP

*/s/ Daniel M. Lane, Jr.*

    Daniel M. Lane, Jr.
    State Bar No. 00784441
    neel.lane@nortonrosefulbright.com
Frost Tower, 111 W. Houston Street, #1800
San Antonio, TX 78205
Telephone:    (210) 224-5575
Facsimile:    (210) 270-7205

ATTORNEYS FOR DEFENDANT INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

## CERTIFICATE OF SERVICE

This pleading, Defendant Indemnity Insurance Company of North America's Motion to Dismiss Pursuant to Rule 91a, has been served upon all counsel of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on September 16, 2020

Michael W. Huddleston
Munsch Hardt Kopf & Harr, P.C.
500 North Akard Street, #3800
Dallas, Texas 75201-7584
mhuddleston@munsch.com

*/s/ Daniel M. Lane, Jr.*
Daniel M. Lane, Jr.

EXHIBIT A

CAUSE NO. DC-20-05751

| | | |
|---|---|---|
| LOMBARDI'S INC. et al. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| INDEMNITY INSURANCE COMPANY OF | § | |
| NORTH AMERICA, | § | |
| | § | |
| Defendant. | § | A-14TH JUDICIAL DISTRICT |

## AFFIDAVIT OF JULIE MARTIN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned official, on this day appeared Julie Martin, who is personally known to me, and first being duly sworn according to law upon her oath deposed and said:

1. My name is Julie Martin, and I am Counsel at Norton Rose Fulbright, which firm is counsel of record for the Defendant in the above-referenced case. I am over eighteen (18) years of age. I have never been convicted of a crime, and I am fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

2. Attached as Exhibit A to Defendant's Amended Motion to Dismiss Pursuant to Rule 91a are true and correct excerpts of the Commercial Property and General Liability Policy No. MCRD38196169 issued by the Indemnity Insurance Company of North America to Lombardi Family Concepts Inc., for the policy period June 30, 2019 to June 30, 2020.

FURTHER AFFIANT SAYETH NOT.

_____
Julie Martin

SUBSCRIBED AND SWORN to before me by Julie Martin on September 16, 2020.



_____
Notary Public in and for the State of Texas



| Policy Number |
|---|
| **MCRD38196169** |

**Renewal Of:**
**MCR   D38196169**

## COMMON POLICY DECLARATIONS
# Indemnity Insurance Company of North America
436 Walnut Street , Philadelphia, PA 19106

| Item 1. Named Insured and Mailing Address | Agent Name and Address |
|---|---|
| LOMBARDI FAMILY CONCEPTS INC<br>(See Named Insured Endt)<br>3100 MONTICELLO AVE #325<br>DALLAS TX 75205 | INNOVATIVE COVERAGE CONCEPTS LLC<br>8 WOOD HOLLOW ROAD<br>PARSIPPANY NJ 07054<br><br>Agent No.  Z03347 |

| Item 2. Policy Period | From: 06-30-2019 To: 06-30-2020 |
|---|---|

**at 12:01 A.M., Standard Time at your mailing address shown above.**

| Item 3. | Business Description: RESTAURANT |
|---|---|
| | Form of Business:  CORPORATION |

**Item 4.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Property Coverage Part | $ 120,459.00 |
| Commercial General Liability Coverage Part | $ 114,368.00 |
| Crime and Fidelity Coverage Part | NOT COVERED |
| Commercial Inland Marine Coverage Part | NOT COVERED |
| Commercial Auto (Business or Truckers) Coverage Part | NOT COVERED |
| Commercial Garage Coverage Part | NOT COVERED |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Total Policy Premium | $ 234,827.00 |

| Item 5. Forms and Endorsements | |
|---|---|
| Form(s) and Endorsement(s) made a part of this policy at time of issue:<br>**See Schedule of Forms and Endorsements** | **BILL TYPE:** Agent Billing<br>**BILL PLAN:** Annual |

Countersigned:

Date: _____  By: _____

Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

**ALL-24624 (01/08)**

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC

Agent No.  Z03347

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| ALL-21101 | 11-06 | TRADE OR ECONOMIC SANCTIONS ENDORSE |
| ALL-35600a | 09-16 | RISK CONTROL SERVICES FOR TX POL HOLDERS |
| ALL-38009 | 02-13 | NOTICE TO POLICYHOLDERS TEXAS |
| ALL-20887 | 10-06 | CHUBB PRODUCER COMP PRACTICES & POLICIES |
| ALL-4Y30F | 06-15 | INFORMATION AND COMPLAINTS (TX) |
| IL N 178 | 03-13 | TX PRD TO FILE A CLAIM/BRING LEGL NOTICE |
| IL P 001 | 01-04 | US TREASURY DEPT'S OFAC ADVISORY NOTICE |
| ALL-24624 | 01-08 | COMMON POLICY DECLARATIONS |
| CC-1K11I | 02-18 | SIGNATURES |
| ALL-24625 | 01-08 | SCHEDULE OF LOCATIONS |
| ALL-24626 | 01-08 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| ALL-24629 | 01-08 | SCHEDULE OF NAMED INSURED(S) |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 10 | 09-07 | NEVADA CHGS-CONCEALMENT, MISREP OR FRAUD |
| IL 01 15 | 01-10 | NEVADA CHANGES - DOMESTIC PARTNERSHIP |
| IL 01 68 | 03-12 | TEXAS CHANGES-DUTIES |
| IL 02 51 | 09-07 | NEVADA CHANGES-CANC & NONRENL |
| IL 02 62 | 02-15 | GEORGIA CHANGES-CANC & NONRENL |
| IL 02 75 | 11-13 | TEXAS CHANGES-CANC & NONRENL |
| IL 09 52 | 01-15 | CAP/LOSSES FROM CERTIFIED ACTS OF TERROR |
| TRIA11C | 01-15 | DISCLOSURE TERRORISM RISK INSURANCE AC |

PROPERTY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CP 00 10 | 10-12 | BUILDING & PERSONAL PROPERTY COVERAGE |
| CP 00 30 | 10-12 | BUSINESS INCOME COVERAGE (&/EX EXP) |
| CP 00 90 | 07-88 | COMMERCIAL PROPERTY CONDITIONS |
| FA-47549 | 02-16 | RESTAURANT ENHANCEMENT ENDORSEMENT |
| FA-7Y32A | 04-15 | EQUIPMENT BREAKDOWN COVERAGE |
| FA-24633 | 01-08 | COMM PROPERTY COV PART SUPP DEC |
| FA-24634. | 01-08 | COMM PROPERTY COV PART EXT OF SUPP DEC |
| CP 01 31 | 03-13 | GEORGIA CHANGES |
| CP 01 42 | 03-12 | TEXAS CHANGES |
| CP 01 40 | 07-06 | EXCL OF LOSS DUE TO VIRUS OR BACTERIA |
| CP 03 21 | 10-12 | WINDSTORM OR HAIL PERCENTAGE DED |
| CP 04 11 | 09-17 | PROTECTIVE SAFEGUARDS |
| CP 10 30 | 10-12 | CAUSES OF LOSS - SPECIAL FORM |
| CP 12 18 | 10-12 | LOSS PAYABLE PROVISIONS |
| CP 99 93 | 01-95 | TENTATIVE RATE |
| FA-8Y96A | 04-15 | EQUIPMENT BREAKDOWN COV ENDORS SCHEDULE |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| LD-24638 | 01-08 | COMM GENERAL LIABILITY COVERAGE SUPP DEC |
| LD-24640 | 01-08 | LIQUOR LIABILITY COVERAGE PART DEC |
| LD-25124 | 01-08 | COMM GENERAL LIABILITY COVERAGE SCHEDULE |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 00 33 | 04-13 | LIQUOR LIABILITY COV FORM (OCCURRENCE) |
| LD-47554 | 02-16 | RESTAURANT GENERAL LIABILITY EXTRA ENDT |
| CG 01 03 | 06-06 | TEXAS CHANGES |
| CG 01 13 | 12-04 | TX CHANGES-EXPERIENCE RATING MOD |
| CG 21 06 | 05-14 | EXCL-ACC/DISCL OF CONFI OR PERSONAL INFO |

ALL-24626 (01/08)

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

Company Copy

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

Company Copy

# CHUBB®

**Policy Number**
**MCRD38196169**

**COMMERCIAL PROPERTY COVERAGE PART**
**SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date:  06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC

Agent No.  Z03347

| Item 1. | Business Description: | **RESTAURANT** |
|---|---|---|
| Item 2. | Premises Described: | **See Schedule of Locations** |
| Item 3. | $500 Deductible unless otherwise indicated. | |
| Item 4. | Coverage Provided | |

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | BLANKET BLDG. & PERS. PROPERTY GRP # 1 | $ 28,325,000 | | 90 |

**Other Provisions**

| [X] **Agreed Value:** $ 28,325,000 **Expires:** | [ ] **Replacement Cost** |
|---|---|
| [ ] Business Income Indemnity: Monthly Limit: | Period: Maximum    [ ] Inflation Guard:    % |
| [ ] Reporting | Extended    Days    BI Media |

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible:    Earthquake Deductible:    %    Exceptions

LOCATIONS: SEE BLANKET SCHEDULE

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | BLANKET BUS. INCOME BY VALUE GRP # 2 | $ 18,952,419 | | 90 |

**Other Provisions**

| [X] **Agreed Value:** $ 18,952,419 **Expires:** | [ ] **Replacement Cost** |
|---|---|
| [ ] Business Income Indemnity: Monthly Limit: | Period: Maximum    [ ] Inflation Guard:    % |
| [ ] Reporting | Extended    Days    BI Media |

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible:    Earthquake Deductible:    %    Exceptions

LOCATIONS: SEE BLANKET SCHEDULE

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

| [X] **Agreed Value:** BLKT GRP 1 **Expires:** 06/30/20 | [X] **Replacement Cost** |
|---|---|
| [ ] Business Income Indemnity: Monthly Limit: | Period: Maximum    [ ] Inflation Guard:    % |
| [ ] Reporting | Extended    Days    BI Media |

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible: $  1,000    Earthquake Deductible:    %    Exceptions

| Item 5. | Forms and Endorsements |
|---|---|

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24633 (01/08)**

Company Copy

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.**  Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard: %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2  **Expires:** 06/30/20  [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard: %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible:  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | AWNINGS OR CANOPIES OTHER | $ 60,000 | SPECIAL | 90 |

**Other Provisions**

[ ] **Agreed Value:**  **Expires:**  [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard: %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 008 | 001 | TENANTS IMPR & BETT MOD.FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard: %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.**  Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 008 | 001 | BUSINESS PERS PROP MOD.FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 008 | 001 | BUS INC OTHER THAN RENTAL MOD.FIRE-RESISTIVE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2  **Expires:** 06/30/20  [ ]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible:  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 001 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 002 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

### COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured    LOMBARDI FAMILY CONCEPTS INC

Effective Date:  06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.**    Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 002 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:          Period: Maximum      [ ] Inflation Guard:    %
[ ] Reporting                                        Extended      Days    BI Media
Extension of Recovery Period:       Months          Wind/Hail Deductible:
Deductible: $  1,000    Earthquake Deductible:    %      Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 002 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20   [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:          Period: Maximum      [ ] Inflation Guard:    %
[ ] Reporting                                        Extended      Days    BI Media
Extension of Recovery Period:       Months          Wind/Hail Deductible:
Deductible:       Earthquake Deductible:    %      Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 002 | 001 | AWNINGS OR CANOPIES OTHER | $  15,000 | SPECIAL | 90 |

**Other Provisions**

[ ] **Agreed Value:**      **Expires:**        [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:          Period: Maximum      [ ] Inflation Guard:    %
[ ] Reporting                                        Extended      Days    BI Media
Extension of Recovery Period:       Months          Wind/Hail Deductible:
Deductible: $  1,000    Earthquake Deductible:    %      Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 003 | 001 | TENANTS IMPR & BETT NON-COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:          Period: Maximum      [ ] Inflation Guard:    %
[ ] Reporting                                        Extended      Days    BI Media
Extension of Recovery Period:       Months          Wind/Hail Deductible:
Deductible: $  1,000    Earthquake Deductible:    %      Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

### COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.** Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 003 | 001 | BUSINESS PERS PROP NON-COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media

Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 003 | 001 | BUS INC OTHER THAN RENTAL NON-COMBUSTIBLE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2  **Expires:** 06/30/20  [ ]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media

Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible:  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 004 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media

Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 004 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media

Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

**Policy Number**
**MCRD38196169**

### COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

# Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.** Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 004 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2  **Expires:** 06/30/20  [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible:  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 004 | 001 | AWNINGS OR CANOPIES OTHER | $ 65,000 | SPECIAL | 90 |

**Other Provisions**

[ ] Agreed Value:  Expires:  [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 005 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 005 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:  Period: Maximum  [ ] Inflation Guard:  %
[ ] Reporting  Extended  Days  BI Media
Extension of Recovery Period:  Months  Wind/Hail Deductible:
Deductible: $ 1,000  Earthquake Deductible:  %  Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured    LOMBARDI FAMILY CONCEPTS INC

Effective Date:    06-30-19
12:01 A.M., Standard Time

Agent Name    INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.    Z03347

**Item 4.**    Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 005 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20    [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible:    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 005 | 001 | AWNINGS OR CANOPIES OTHER | $    65,000 | SPECIAL | 90 |

**Other Provisions**

[ ] **Agreed Value:**    **Expires:**    [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $    1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 006 | 001 | TENANTS IMPR & BETT FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20    [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $    1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 006 | 001 | BUSINESS PERS PROP FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20    [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $    1,000    Earthquake Deductible:    %    Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured   LOMBARDI FAMILY CONCEPTS INC     Effective Date: 06-30-19

12:01 A.M., Standard Time

Agent Name   INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.**    Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 006 | 001 | BUS INC OTHER THAN RENTAL FIRE-RESISTIVE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20   [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting        Extended    Days   BI Media
Extension of Recovery Period:    Months     Wind/Hail Deductible:
Deductible:    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 007 | 001 | TENANTS IMPR & BETT FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20   [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting        Extended    Days   BI Media
Extension of Recovery Period:    Months     Wind/Hail Deductible:
Deductible: $ 1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 007 | 001 | BUSINESS PERS PROP FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20   [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting        Extended    Days   BI Media
Extension of Recovery Period:    Months     Wind/Hail Deductible:
Deductible: $ 1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 007 | 001 | BUS INC OTHER THAN RENTAL FIRE-RESISTIVE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20   [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting        Extended    Days   BI Media
Extension of Recovery Period:    Months     Wind/Hail Deductible:
Deductible:    Earthquake Deductible:    %    Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

**Policy Number**
**MCRD38196169**

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

# Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.**   Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 007 | 001 | AWNINGS OR CANOPIES OTHER | $ 65,000 | SPECIAL | 90 |

**Other Provisions**

| ☐ | Agreed Value: | Expires: | ☐ | Replacement Cost |

☐ Business Income Indemnity: Monthly Limit:     Period: Maximum   ☐ Inflation Guard:   %
☐ Reporting                                        Extended   Days   BI Media

Extension of Recovery Period:   Months          Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 010 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

| X | Agreed Value: BLKT GRP 1 | Expires: 06/30/20 | X | Replacement Cost |

☐ Business Income Indemnity: Monthly Limit:     Period: Maximum   ☐ Inflation Guard:   %
☐ Reporting                                        Extended   Days   BI Media

Extension of Recovery Period:   Months          Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 010 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

| X | Agreed Value: BLKT GRP 1 | Expires: 06/30/20 | X | Replacement Cost |

☐ Business Income Indemnity: Monthly Limit:     Period: Maximum   ☐ Inflation Guard:   %
☐ Reporting                                        Extended   Days   BI Media

Extension of Recovery Period:   Months          Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 010 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

| X | Agreed Value: BLKT GRP 2 | Expires: 06/30/20 | ☐ | Replacement Cost |

☐ Business Income Indemnity: Monthly Limit:     Period: Maximum   ☐ Inflation Guard:   %
☐ Reporting                                        Extended   Days   BI Media

Extension of Recovery Period:   Months          Wind/Hail Deductible:
Deductible:   Earthquake Deductible:   %   Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

**Policy Number**
**MCRD38196169**

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured    LOMBARDI FAMILY CONCEPTS INC

Effective Date:  06-30-19
12:01 A.M., Standard Time

Agent Name   INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.    Z03347

**Item 4.**    Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 011 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

| Other Provisions |
|---|

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:        Period: Maximum       [ ] Inflation Guard:      %
[ ] Reporting                                    Extended      Days    BI Media

Extension of Recovery Period:        Months          Wind/Hail Deductible:
Deductible: $   1,000      Earthquake Deductible:       %       Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 011 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

| Other Provisions |
|---|

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:        Period: Maximum       [ ] Inflation Guard:      %
[ ] Reporting                                    Extended      Days    BI Media

Extension of Recovery Period:        Months          Wind/Hail Deductible:
Deductible: $   1,000      Earthquake Deductible:       %       Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 011 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

| Other Provisions |
|---|

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20   [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:        Period: Maximum       [ ] Inflation Guard:      %
[ ] Reporting                                    Extended      Days    BI Media

Extension of Recovery Period:        Months          Wind/Hail Deductible:
Deductible:          Earthquake Deductible:       %       Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 011 | 001 | AWNINGS OR CANOPIES OTHER | $     75,000 | SPECIAL | 90 |

| Other Provisions |
|---|

[ ] **Agreed Value:**        **Expires:**          [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:        Period: Maximum       [ ] Inflation Guard:      %
[ ] Reporting                                    Extended      Days    BI Media

Extension of Recovery Period:        Months          Wind/Hail Deductible:
Deductible: $   1,000      Earthquake Deductible:       %       Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.**  Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 012 | 001 | TENANTS IMPR & BETT MOD.FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1     **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum  [ ] Inflation Guard:     %
[ ] Reporting                                     Extended     Days     BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible: $   1,000     Earthquake Deductible:     %     Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 012 | 001 | BUSINESS PERS PROP MOD.FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1     **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum  [ ] Inflation Guard:     %
[ ] Reporting                                     Extended     Days     BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible: $   1,000     Earthquake Deductible:     %     Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 012 | 001 | BUS INC OTHER THAN RENTAL MOD.FIRE-RESISTIVE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2     **Expires:** 06/30/20  [ ]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum  [ ] Inflation Guard:     %
[ ] Reporting                                     Extended     Days     BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible:     Earthquake Deductible:     %     Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 012 | 001 | AWNINGS OR CANOPIES OTHER | $   60,000 | SPECIAL | 90 |

**Other Provisions**

[ ] **Agreed Value:**     **Expires:**  [ ]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum  [ ] Inflation Guard:     %
[ ] Reporting                                     Extended     Days     BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible: $   1,000     Earthquake Deductible:     %     Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured    LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name    INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.    Z03347

**Item 4.**    Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 013 | 001 | TENANTS IMPR & BETT NON-COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20    [X]    **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $  1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 013 | 001 | BUSINESS PERS PROP NON-COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20    [X]    **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $  1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 013 | 001 | BUS INC OTHER THAN RENTAL NON-COMBUSTIBLE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20    [ ]    **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible:    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 014 | 001 | TENANTS IMPR & BETT NON-COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20    [X]    **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $  1,000    Earthquake Deductible:    %    Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

# CHUBB®

### COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.**  Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 014 | 001 | BUSINESS PERS PROP NON-COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 014 | 001 | BUS INC OTHER THAN RENTAL NON-COMBUSTIBLE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2   **Expires:** 06/30/20   [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible:   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 015 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 015 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20   [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

**CHUBB®**

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

# Indemnity Insurance Company of North America

Named Insured   LOMBARDI FAMILY CONCEPTS INC

Effective Date:   06-30-19
12:01 A.M., Standard Time

Agent Name   INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.** Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 015 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] Agreed Value: BLKT GRP 2   Expires: 06/30/20   [ ] Replacement Cost
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible:   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 015 | 001 | AWNINGS OR CANOPIES OTHER | $    60,000 | SPECIAL | 90 |

**Other Provisions**

[ ] Agreed Value:   Expires:   [ ] Replacement Cost
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $   1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 016 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] Agreed Value: BLKT GRP 1   Expires: 06/30/20   [X] Replacement Cost
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $   1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 016 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] Agreed Value: BLKT GRP 1   Expires: 06/30/20   [X] Replacement Cost
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $   1,000   Earthquake Deductible:   %   Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

FA-24634 (01/08)

Company Copy

**CHUBB**®

**Policy Number**
**MCRD38196169**

**COMMERCIAL PROPERTY COVERAGE PART**
**EXTENSION OF SUPPLEMENTAL DECLARATIONS**

# Indemnity Insurance Company of North America

Named Insured   LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name   INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.**   Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 016 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2   **Expires:** 06/30/20   [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible:   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 016 | 001 | AWNINGS OR CANOPIES OTHER | $ 65,000 | SPECIAL | 90 |

**Other Provisions**

[ ] **Agreed Value:**   **Expires:**   [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 018 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20   [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 018 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20   [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting   Extended   Days   BI Media

Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible:   %   Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CHUBB®

### COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.**  Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 018 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] Agreed Value: BLKT GRP 2    Expires: 06/30/20    [ ] Replacement Cost

[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %

[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible:    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 018 | 001 | AWNINGS OR CANOPIES OTHER | $    200,000 | SPECIAL | 90 |

**Other Provisions**

[ ] Agreed Value:    Expires:    [ ] Replacement Cost

[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %

[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible: $    1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

**Other Provisions**

[ ] Agreed Value:    Expires:    [ ] Replacement Cost

[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %

[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible:    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

**Other Provisions**

[ ] Agreed Value:    Expires:    [ ] Replacement Cost

[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %

[ ] Reporting    Extended    Days    BI Media

Extension of Recovery Period:    Months    Wind/Hail Deductible:

Deductible:    Earthquake Deductible:    %    Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

Company Copy

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   (1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

Company Copy

Defendant's Amended Rule 91a Motion to Dismiss                                        Page 47

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2006
Company Copy

Defendant's Amended Rule 91a Motion to Dismiss          Page 48

FILED
10/8/2020 6:09 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kevin Molden DEPUTY

DC-20-05751

| | | |
|---|---|---|
| LOMBARDI'S INC.; LOMBARDI'S FAMILY CONCEPTS, INC.; PENNE SNIDER, LLC; PENNE PRESTON, LLC; ALBERTO LOMBARDI INTERESTS, LLC; TAVERNA DOMAIN AUSTIN, LP; CAFÉ TOULOUSE RIVER OAKS DISTRICT, LP; CAFÉ MONACO HPV, LLC; PENNE LAKEWOOD, LLC; TAVERNA BUCKHEAD, LP; TAVERNA AUSTIN, L.L.C.; TAVERNA FT. WORTH, LLC; TOULOUSE KNOX BISTRO, LLC; TAVERNA ARMSTRONG, L.L.C.; TOULOUSE DOMAIN AUSTIN, LP; BISTRO 31 LEGACY, LP; TAVERNA LEGACY, LP; AND LOMBARDI'S OF DESERT PASSAGE, INC. | § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| **PLAINTIFFS,** | § § | |
| V. | § § | **DALLAS COUNTY, TEXAS** |
| **INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,** | § § § | |
| **DEFENDANT.** | § § | **14th JUDICIAL DISTRICT** |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED RULE 91A MOTION TO DISMISS

Michael W. Huddleston
Nolan C. Knight
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201

Defendant Indemnity Insurance Company of North America ("Chubb"): (1) has not demonstrated it has proffered the only (or even most) reasonable construction of its policy of insurance; (2) invokes "exclusions" that are not part of its contractual bargain with the Lombardi Plaintiffs;[1] (3) in any event misconstrues the exclusions; and (4) otherwise attempts to exploit a series of internally inconsistent, ambiguous, and quite likely poorly drafted policy terms to facilitate *post hoc* advantage for itself. None of these tactics are proper. Chubb's *Amended Motion to Dismiss Pursuant to Rule 91A* (the "Rule 91A Motion") should be denied.

## I.    SUMMARY OF RESPONSE

Texas Rule of Civil Procedure 91A, coupled with controlling insurance law principles, obligate Chubb to demonstrate its policy of insurance is susceptible to *only* an interpretation conclusively supporting its rationales for denying coverage. Yet Chubb's approach has been to proffer dubious constructions of the policy, without addressing competing (and more sound) constructions that favor the Lombardi Plaintiffs.

Chubb in fact ignores words, phrases, and entire structural conventions used in its policy, as if they should not be regarded to convey meaning. None of this is remotely defensible under the Rule 91A principles or Texas insurance law.

For instance, Chubb relies almost exclusively on cases from *other* jurisdictions that construed policies covering *only* physical loss or damage "to" property, whereas Chubb drafted its

---

[1] Lombardi's Inc., Lombardi's Family Concepts, Inc., Penne Snider, LLC, Penne Preston, LLC, Alberto Lombardi Interests, LLC, Taverna Domain Austin, LP, Café Toulouse River Oaks District, Café Monaco HPV, LLC, Penne Lakewood, LLC, Taverna Buckhead, LP, Taverna Austin, L.L.C., Taverna Ft. Worth, LLC, Toulouse Knox Bistro, LLC, Taverna Armstrong, L.L.C., Toulouse Domain Austin, LP, Bistro 31 Legacy, LP, Taverna Legacy, LP, Taverna Buckhead LP, and Lombardi's of Desert Passage, Inc.

policy to *disjunctively* afford coverage: (1) for physical "damage *to*" covered properties, <u>or</u> (2) when there is a "loss *of*" the insureds' ability to physically utilize the properties.

At minimum, the Lombardi Plaintiffs have averred physical loss "of" their properties, by alleging disruptions to their ability to *physically* access and utilize portions of the properties were necessary to *prevent* the spread of "COVID-19."[2] But Chubb's response has been to flout axioms of the English language, insisting the preposition "of" has no utility to convey meaning distinct from "to," and that "loss" conveys no meaning different from "damage." But if Chubb actually believed that (it surely did not), it proffers no explanation why it drafted its policy to use *both* sets of phrases, *disjunctively*.

Chubb also ignores its proposed construction necessitates illogical tensions between provisions in *its* specific policy—which apparently were *not* at issue in the other cases Chubb cites. For instance, a "Bodily injury" provision in Chubb's policy disclaims coverage if "sickness or disease" is reasonably foreseeable, i.e., "expected," from the Lombardi Plaintiffs' perspective. A similar mitigation mandate required the Lombardi Plaintiffs to "[t]ake reasonable steps to protect the Covered Property from further damage . . . ." The practical import of these conditions is the Lombardi Plaintiffs were *obligated* to take steps to prevent foreseeable sickness or disease and property damage—lest they jeopardize entitlement to complementary coverages.

Yet now that the Lombardi Plaintiffs have lost use of their properties as necessary to preempt *precisely* such risks—Chubb responds by contending the consequences of the preventive measures fall outside of coverage. Chubb therefore proposes a paradoxical construction of its policy, whereby steps to ensure *certain* coverages, actually foreclose *pertinent* coverages. This

---

[2] Although *not* essential to coverage, there also are fact questions whether there was actual "damage to" the Lombardi Plaintiffs' property, *see* pp. 4 – 5, 16 – 17 *infra*, which cannot be adjudicated through Rule 91A practice.

reasoning is indicative of a policy either not written to support Chubb's internally discordant characterizations—or so poorly written that Chubb cannot exploit the confusion to its advantage.

Chubb proffers a final line of attack, contending an "Ordinance Or Law" exclusion and a "Virus" exclusion purportedly foreclose coverage. The most prominent error with Chubb's reasoning is the terms of the policy *disclaim* application of the exclusions to the coverage invoked by the Lombardi Plaintiffs. There consequently is no contractual basis for their application, but in no event were the exclusions drafted to accomplish what Chubb *now* wants them to accomplish.

All of the foregoing prevents Chubb from carrying its burden to establish it has proffered the *only* reasonable construction of the policy. It consequently is not entitled to Rule 91A dismissal.

## II.     PERTINENT FACTUAL AVERMENTS & POLICY PROVISIONS

### A.     The Averred Risk of COVID-19 Infection and Plaintiffs' Preventive Measures

In their First Amended Petition ("Pet."), the Lombardi Plaintiffs averred Chubb's policy of insurance number MCRD38196169 (the "Policy"), covered their properties from June 30, 2019 to June 30, 2020. *See* (Pet., p. 4, ¶¶ 8, 9).[3] They further averred on or about December 31, 2019, the World Health Organization ("WHO") reported a pneumonia-causing virus of unknown origin, now referred to as "COVID-19". *See* (*Id*. at p. 5, ¶ 14).

The progression of the virus, as well as understanding of its risks, have precipitated social and economic disruption of an extraordinary scale. By way of example:

---

[3] An excerpted and highlighted version of the Policy is attached as **Exhibit 1**, with "Appx." designations per page.

- On January 25, 2020, the WHO announced COVID-19 is a "global threat to human health . . . ." *See* (Pet., p. 5, ¶ 16).

- On March 11, 2020, the WHO formally characterized COVID-19 as the cause of a "pandemic" and lamented "alarming levels of spread and severity . . . ." (*Id.* at ¶ 18).

- The United States Centers for Disease Control followed suit, warning: "there is little to no pre-existing immunity against the new virus . . . ." (*Id.* at ¶ 21). *See also* (*id.* at p. 6, ¶ 28).

- Indeed, at least 6,546,143 Americans had been infected, *see* (*id.* at ¶ 23), and approximately 200,000 had died when the Amended Petition was filed, (*id.* at ¶ 24).

- Research moreover has substantiated the high probability of "asymptomatic" spread through transmission vectors such as "droplets from the nose or mouth" that "can land on objects and surfaces around the person such as tables, doorknobs and handrails." (*Id.* at pp. 6, 7, 8, ¶¶ 25, 29, 31, 33, 34).

- Once deposited on certain surfaces, the virus has been documented to persist for up to 17 days. (*Id.* at p. 7, ¶ 30).

- The scientific literature moreover has confirmed unique risks associated with "dining at a restaurant" where "[d]irection, ventilation, and intensity of airflow might affect virus transmission. . ."—irrespective of social distancing measures. (*Id.* at p. 9, ¶ 35).

The Lombardi Plaintiffs averred the federal government, *see* (*id.* at pp. 9 – 10, ¶¶ 36 – 38), followed by states and localities, early on recognized "the pandemic presents a clear and present danger because of the propensity of the virus to be deposited on surfaces and in the air in businesses such as the Lombardi Plaintiffs' restaurants . . .[,]" and "this situation . . . was causing *property*

*damage* and was presenting the danger of the virus continuing to be present in facilities such as restaurants and thus a danger to the *public health* through spread of the virus from those locations." (Pet., p. 12, ¶¶ 41, 42) (emphasis added).

The common theme of these averred findings has been in the absence of population immunity, limitations on physical activity and movement have been the only practical means to suppress COVID-19 spread. The Lombardi Plaintiffs therefore implemented restrictions regarding physical use and access to their properties "to *prevent* the ongoing danger of the virus." *See* (*Id*. at 22, ¶ 92) (emphasis added).

And although these preventative measures align with various governmental directives, they *independently* were necessary and implemented by the Lombardi Plaintiffs to mitigate the well-documented risk of "property damage" and "danger to the public health." Yet despite these averments, Chubb consistently has attempted to recast the Lombardi Plaintiffs' claims as if they have alleged "governmental edict[s], *standing alone*, constitute[d] a direct physical loss . . . ." to the Lombardi Plaintiffs' properties. *Cf.* (Rule 91A Motion, p. 11, n.16 & p. 9) (emphasis added).

The characterization is inaccurate (indeed disingenuous), given Chubb *concedes* the Lombardi Plaintiffs "identify *no* orders or restrictions in [certain] jurisdictions that restrict restaurant operations. *Nor* do [they] reference provisions that would affect *operation* of their restaurants in [still other jurisdictions]." (*Id*. at p. 4) (emphasis added). It consequently cannot be the case the Lombardi Plaintiffs have conditioned their claims on allegations governmental directives *standing alone* constituted the physical loss—when in many respects Chubb concedes the Lombardi Plaintiffs pled *no such* governmental directives.

Chubb's characterization of the Lombardi Plaintiffs' averments moreover is illogical, because the tactic makes superfluous the Lombardi Plaintiffs' comprehensive averments regarding

the documented risks of COVID-19 from sources *in addition to* governmental directives. Those averments would be denied required affect if the premise of the Lombardi Plaintiffs' claims had been governmental directives "standing alone" were dispositive.

Chubb even mischaracterizes the fundamental character of the directives, by referring to them as "ordinances" or "laws". *Cf.* (Rule 91A Motion, pp. 2, 7, 14, 18 – 19). Yet the Lombardi Plaintiffs have not averred the states or localities where their restaurants are located responded to COVID-19 risks by convening their legislatures or city councils to pass legislative directives of the kind. And within the averred jurisdictions, *only* the state legislatures are authorized to pass regulatory laws, and *only* the city councils may pass ordinances. *Cf.* TEX. CONST., Art. III, § 29; Dallas Code of Ordinances, Charter Chpt. XVIII, §§ 1, 3; Houston Code of Ordinances, Charter Art. II, § 2(a); Fort Worth Code of Ordinances, Charter Chpt. XXV, § 4; Austin Code of Ordinances, Charter Art. II, § 14; Plano Code of Ordinances, Pt. 1, Art. 3, § 3.10; GA. CONST., Art. III, § VI, ¶ I; Atlanta Code of Ordinances, Pt. 1(A), Art. 1, § 1-103(a), (b); NEV. CONST., Art. 4, § 23; Las Vegas Municipal Code, Charter Art. II, § 2.090(1).[4]

By contrast, the exigent risks presented by COVID-19 were the subject of executive (not legislative) directives, *see* (Pet., pp. 12 – 20, ¶¶ 43 – 77), which do not qualify as laws or ordinances. The Lombardi Plaintiffs averred, by way of example, the directives issued in Texas derived from authority in Texas Government Code Section 418.108, *see e.g.*, (*id.* at p. 12, ¶ 43), which delegates to "the *presiding officer* of the governing body of a political subdivision" authority to "declare a local state of disaster." TEX. GOV. CODE § 418.108(a) (emphasis added). Chubb has not cited any authority whereby those "presiding officers" are empowered to pass "laws" or

---

[4] Highlighted excerpts of the respective municipal code provisions are attached hereto as **Exhibit 2 – Exhibit 8**.

"ordinances"; and more critically, Chubb's Policy does not *define* the term "law" or "ordinance" to be inclusive of the types of executive mandates averred by the Lombardi Plaintiffs.

**B.      Pertinent Policy Provisions**

1.      <u>The Business Income Coverage</u>

The losses the Lombardi Plaintiffs have alleged fall within the Policy section titled "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM," sometimes herein, the "Business Income Coverage". *See* (Appx. 003). Pursuant to the principal coverage in the provision, Chubb contracted to:

> pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss *of* <u>or</u> damage *to* property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss <u>or</u> damage must be caused by or result from a Covered Cause of Loss.

(Business Income Coverage, § A(1); Appx. 003) (emphasis added).

Pursuant to the plain language of this provision, there are four considerations pertinent to coverage: 1) whether there was "physical loss of" property; (2) whether there *alternatively* was physical "damage to" property; (3) whether there was an operational "suspension" at properties described in the "Declarations" with a "Limit of Insurance"; and 4) whether a "Covered Cause of Loss" provision operated to restrict coverage.

The concept "physical loss of" (consideration # 1) is *not* defined in the Policy, nor is the concept of "damage to" the properties (consideration # 2). Accordingly, the ordinary meanings of the phrases are pertinent to the coverage analysis, and as discussed herein, Chubb proposes a

construction that plainly is at odds with ordinary meaning—indeed basic logic. *See* pp. 21 – 23 *infra*.

With respect to operational suspensions at properties described in the "Declarations" (consideration # 3), a "SCHEDULE OF LOCATIONS" in the Policy lists all such properties. *See* (Appx. 001 – 002). All of the locations in turn are subject to coverage pursuant to sections of the Policy titled "COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL DECLARATIONS," (hereafter, the "Supplemental Declarations"), which include, *inter alia*, a section that applies to "BLANKET BUS. INCOME BY VALUE," with an $18,952,419 "Limit of Insurance." *See* (Appx. 006). By its plain language, the *first* sub-section in the Supplemental Declarations includes the covenant: "LOCATIONS: SEE BLANKET SCHEDULE", which is a reference *back* to the "SCHEDULE OF LOCATIONS" identifying all properties that are the focus of this litigation. (*Id*.).

That sub-section also is important, because it reflects there are *no* applicable "Covered Cause of Loss" restrictions regarding the recovery the Lombardi Plaintiffs seek (consideration # 4). The "Covered Cause of Loss" construct indeed is one of the more hopelessly confused artifices in Chubb's Policy, because the term does not (as a literal reading might suggest) convey discrete causality risks distinct from the "loss of *or* damage to" coverage term in the actual Business Income Coverage section.

To appreciate why, a reader must endure a series of "steps," *cf*. (Rule 91A Motion, p. 12)— each of which burdens the reader with confusing conventions Chubb utilized in the Policy. The reader must begin with section A(3) in the Business Income Coverage form, which is titled "COVERED CAUSES OF LOSS, EXCLUSIONS AND LIMITATIONS." *See* (Appx. 004). That

section provides: "See Applicable Cause of Loss form *as shown in the Declarations*." (Appx. 004) (emphasis added).

The referenced "Declarations" are the aforementioned Supplemental Declarations, which include a series of columns titled "Covered Causes of Loss." *See, e.g.*, (Appx. 006 – 009). None of those columns themselves, or through cross reference, identify conventional causality risks; for instance, wind, water, flooding, theft, or even more generic references such as accident or occurrence. The columns consequently do not in any conventional way identify "a Covered *Cause* of Loss." Chubb instead used the columns to cross-reference yet another section of the Policy that apparently was intended to specify whether any loss restrictions *circumscribed* the scope of coverage contractually covenanted in the Business Income Coverage section.

This is so, because "Applicable Cause of Loss form" is a reference to a separate Policy section titled "CAUSES OF LOSS – SPECIAL FORM," which contains, *inter alia*, exclusions that in certain specific instances limit coverages. *See* (Appx. 011). Chubb consequently assumed the duty through these Policy conventions to conspicuously designate in the "Covered Causes of Loss" columns whether or not an "Applicable Cause of Loss form" applied to specific coverages.

Accordingly, the *absence* of a designation in a "Covered Causes of Loss" column must be construed to convey the *absence* of restrictions that otherwise could have been conveyed by Chubb. And for purposes of the pertinent Business Income Coverage, there is *no* such designation, because the "Covered Causes of Loss" column that applies to the "BLANKET BUS. INCOME BY VALUE" sub-section of the Supplemental Declarations was left *blank*. (Appx. 006).

Chubb nonetheless has proffered an exceptionally convoluted, conflicting rationale for why it omitted a restricting designation from the "Covered Causes of Loss" column that applies to the "BLANKET BUS. INCOME BY VALUE" sub-section. It invites the Court to focus on a

different convention Chubb used in the Policy, whereby it identified certain specific physical *features* of properties (as opposed to the properties collectively, or even a single property in its entirety) and qualified coverage with respect to *only* those specific features. *Cf.* (Rule 91A Motion, p. 12). For instance, for the respective properties, Chubb identified physical features such as "JOISTED MASONRY," "AWNINGS OR CANOPIES," certain "FIRE-RESISTIVE" construction, or "NON-COMBUSTIBLE" construction. *See, e.g.*, (Appx. 006 – 009). And for *those* specific features, the "Covered Causes of Loss" designations read: "SPECIAL." (*Id.*).

That "SPECIAL" designation in turn directs the reader to the aforementioned "CAUSES OF LOSS – SPECIAL FORM, which by its terms applies only: "*When* Special is shown in the Declarations . . . ." (§ A; Appx. 011) (emphasis added). But *none* of the physical features for which Chubb made a "SPECIAL" designation in the Supplemental Declarations have been averred to relate to the "physical loss of"—or even "damage to"—property at issue in *this* litigation.

Chubb nevertheless insists this multi-step, internally inconsistent, and frankly confusing Policy structure, somehow *eliminates* confusion regarding why it made the peculiar choices to: 1) make unqualified reference to the "BLANKET BUS. INCOME BY VALUE" coverage for *all* of the Lombardi Plaintiffs' properties collectively, 2) make separate references to specific physical *features* of specific properties, but 3) *now* insist it intended no difference between the two sets of references. In so doing, Chubb proffers no explanation regarding what possibly could have been the logic of differentiating between all properties collectively, compared to specific features of separate properties, if Chubb intended uniform treatment of coverage restrictions. And more critically, Chubb has made no attempt to explain how these byzantine policy conventions *eliminate* confusion.

2. <u>Operation of the Civil Authority Coverage</u>

Within the Business Income Coverage, Chubb contracted to provide an "Additional Coverage" regarding business losses caused by "Civil Authority." *See* (Business Income Coverage, § A(5)(a); Appx. 004). Notably, "Civil Authority" is *not* defined by the Policy to equate with "laws" or "ordinances." Whereas laws and ordinances are formal legislative enactments in the pertinent jurisdictions—the Policy uses Civil Authority as a distinct concept, inclusive of emergency directives to eliminate imminent risks of "dangerous" conditions.

For instance, the Civil Authority coverage addresses a scenario in which governmental intervention is necessary to address exigent dangers caused by *surrounding* property damage (as opposed to damage at the Lombardi Plaintiffs' properties):

> When a *Covered Cause of Loss* causes <u>damage</u> to property <u>other than</u> property at the described premises, we will pay for *the actual loss of Business Income* you sustain . . . caused by action of civil authority that *prohibits access to* the described premises, provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is *prohibited by civil authority* as a result of the damage, and the described premises *are within that area* but are not more than one mile from the damaged property; and (2) The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage . . . .

(Appx. 004) (emphasis added).[5]

---

[5] Here as well, the coverage is conditioned on a "Covered Cause of Loss," although that concept yet again is incoherent relative to Policy structure. The "CAUSES OF LOSS – SPECIAL FORM" explains "Covered Causes of Loss *means direct physical loss* . . . ." *See* (§ A, Appx. 011) (emphasis added). It would be illogical to read this language to modify the language in the Civil Authority provision, because: 1) the Civil Authority provision uses the term "damage," whereas the SPECIAL FORM uses the term "loss"; and 2) the Civil Authority provision refers to *offsite* property damage that indirectly leads to business losses, whereas the SPECIAL FORM refers to "direct physical loss". Chubb nevertheless contends the two provisions can be reconciled if "direct physical loss" means "damage" wherever the phrases are used throughout the Policy, *cf.* (Rule 91A Motion, pp. 8 – 10, 12); but if that were so, it is not at all clear why Chubb used *different* language, in *separate* sections, to redundantly convey what it insists is the *same* concept.

---

The import of the governmental directives averred by the Lombardi Plaintiffs are that they are jurisdiction-wide declarations that COVID-19 "was causing *property damage* and was presenting the danger of the virus continuing to be present in facilities such as restaurants and thus a danger to the *public health* . . . ." (Pet., p. 12, ¶ 42) (emphasis added). But those risks were not isolated to *only* the Lombardi Plaintiffs' properties—which is why there was no cause for the Lombardi Plaintiffs to condition their claims on "orders or restrictions . . . that restrict restaurant *operations*." *Cf.* (Rule 91A Motion, p. 4) (emphasis added).

The *entirety* of each "area" was the focal point of the "damages," and the Lombardi Plaintiffs' properties are *within* each such area. Emergency access restrictions such as stay at home directives, crowd limits, and restrictions on restaurant patronage in turn caused the Lombardi Plaintiffs' business losses—which is precisely what is covered by the Civil Authority provision.

3.    Chubb's Editorial Recasting of the "Period of Restoration"

Chubb proposes to look beyond the Policy's affirmative statements regarding the scope of *coverage*, to back into what it contends the coverage provisions purportedly mean based on the Policy's definition of the *temporal* concept, "Period of Restoration." *Cf.* (Rule 91 A Motion, pp. 14 – 15). This is a particularly dubious tactic, because as written, the definition of "Period of restoration" specifies a timing mandate that: "Begins . . . after the time of direct physical loss *or* damage . . . caused by or resulting from any Covered Cause of Loss at the described premises . . ." and potentially ends on the "date when the property at the described premises should be repaired, rebuilt *or* replaced . . . ." (emphasis added). Nowhere does this provision disclaim or narrow the Business Income Coverage covenant regarding "loss of *or* damage to" property. The definition indeed reaffirms that scope of coverage by referencing "the time of direct physical loss *or* damage." (emphasis added).

Yet Chubb editorializes the words as they appear, by proffering the following characterization of what it *wishes* the words meant, by describing the Period of restoration, "as the time it takes to physically repair ***physical damage*** to the insureds' premises." (Rule 91A Motion, p. 14). But that is not what the Policy definition says, because the plain language refers to "loss or damage," not "physical repair of physical damage." This consequently is a quintessential attempt by Chubb to gloss over contractual ambiguity by asking the Court to rewrite its Policy after-the-fact.

Indeed, Chubb attempts to extrapolate from the isolated phrase "repaired, rebuilt or replaced," that the Policy's consistent differentiation between loss of, versus damage to property, conveys no actual distinction. According to Chubb, "repaired, rebuilt or replaced" only make sense with respect to a remedy for a tangible manifestation of physical harm. *Cf.* (Rule 91A Motion, pp. 14 – 15). This contention is illogical for several reasons.

First, the phrase "repaired, rebuilt or replaced" itself would be the anomalous outlier if it was given import (as a purported reference to only physical damage) in the manner Chubb suggests, because that import is inconsistent with the Policy's repeated differentiation between "loss of" versus "damage to" properties. Second, in *other* Policy sections, Chubb demonstrated it knew how to define the concept of property damage in relation to only "Physical *injury* to *tangible* property . . . [,]" because it did so in a COMMERCIAL GENERAL LIABILITY COVERAGE FORM (which is not an averred basis for coverage in this litigation). *See* (§ V(17); Appx. 015) (emphasis added). Yet under the Business Income Coverage, Chubb elected *not* to similarly define property "loss" *or* even "damage" in this narrow manner.

And finally, the phrase "repaired, rebuilt *or* replaced" simply cannot carry the import Chubb proffers, because Chubb is proposing that the terms "repaired," "rebuilt," *and* "replaced"

redundantly serve as references to correction of tangible property damage. But if that were so, Chubb first should have defined the terms to actually express that sentiment (it did not), and it otherwise had no cause to use three different terms, to superfluously convey the exact same sentiment. The outlier import Chubb seeks to attribute to the phrase "repaired, rebuilt or replaced" consequently cannot displace (or even match) the more reasonable Policy construction proffered by the Lombardi Plaintiffs, whereby their preventive measures led to losses that should be covered.

        4.    <u>The Contractually Disclaimed Exclusions</u>

Chubb purports to invoke two contractual exclusions to avoid its coverage obligations: an "Ordinance Or Law" exclusion, and an "endorsement" exclusion titled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," hereafter, the "Virus Exclusion." *Compare* (Rule 91A Motion, pp. 7; 13, n.18; 16; 18), *with* (Appx. 010, 011). The "Ordinance Or Law" exclusion reads in pertinent part: "We will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of or compliance with any *ordinance* or *law* . . . . [r]egulating the . . . use . . . of any property . . . ." (CAUSES OF LOSS – SPECIAL FORM, § B(1)(a); Appx. 011) (emphasis added). And the "Virus Exclusion" provides: "[Chubb] will not pay for loss or damage *caused* by or *resulting* from any <u>virus</u>, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Virus Exclusion § B; Appx. 010) (emphasis added).

Neither exclusion can foreclose coverage under the facts averred by the Lombardi Plaintiffs. With respect to the Ordinance Or Law exclusion, the Lombardi Plaintiffs quite simply have not averred any "ordinance" or "law," *see* pp. 6 – 7 *supra*, and it is unclear why Chubb cites to a case referencing a loss "sustained when [a] City enforced section 6-175 of [a] *City Code*." *Cf.* (Rule 91A Motion, p. 18, n.22) (referencing *Wong v. Monticello Ins. Co.*, No. 04-02-00142-CV, 2003 Tex. App. LEXIS 2481, *3 (March 26, 2003) (emphasis added)). None of the directives the

Lombardi Plaintiffs have averred are found in "City Codes"—precisely because they do *not* qualify as ordinances in the pertinent jurisdictions.

But even assuming *arguendo* the Lombardi Plaintiffs had averred an ordinance or law, the Ordinance Or Law exclusion is found in *only* the portion of the Policy titled "CAUSES OF LOSS – SPECIAL FORM." *See* (Appx. 011). And as discussed above, the "BLANKET BUS. INCOME BY VALUE" coverage invoked by the Lombardi Plaintiffs does *not* have a "SPECIAL" designation incorporating that Form. *See* pp. 8 – 10 *supra*. The Ordinance Or Law exclusion consequently has no bearing on the Business Income Coverage or additional Civil Authority coverage the Lombardi Plaintiffs have averred.[6]

Similar defects characterize Chubb's misreading of the Virus Exclusion. At best, there is a drafting ambiguity whether the exclusion even applies to the Business Income Coverage, because in one respect, the text of the exclusion self-limits itself to a purported "COMMERCIAL PROPERTY COVERAGE PART STANDARD PROPERTY POLICY," *see* (Appx. 010), which is *not* a discretely defined or an independently discernible section of the Policy. Arguably, the coverage the Lombardi Plaintiffs have invoked *colloquially* might be referred to as a type of commercial property coverage—but the actual title for the coverage is "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM." (Appx. 003).

It is not at all clear how, or why, that specific coverage FORM should be presumed to be a sub-set of Chubb's ill-defined "STANDARD PROPERTY POLICY" reference. Instead of

---

[6] Without apparent irony, Chub cites a provision in the Ordinance Or Law exclusion that states it applies "even if the property has *not* been *damaged.*" *See* (Rule 91A Motion, p. 18) (emphasis added). But there would *never* be a scenario in which a claim could be made *without* property damage if Chubb's Policy construction were accepted—which illumines Chubb's construction is illogical. *Cf. Nautilus Group, Inc. v. Allianz Global Risks US*, C11-5281BHS, 2012 U.S. Dist. LEXIS 30857, *19 (W.D. Wash. March 8, 2012) ("the Policy contains an exclusion for an employee's theft . . . . If theft was not a covered risk, then this provision would be unnecessary.").

discretely and conspicuously identifying the Policy sections to which Chubb intended the Virus Exclusion to apply, Chubb utilized a generic explanation in section "A" of the Virus Exclusion, stating it applies to "forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority." (Virus Exclusion, § A; Appx. 010). Yet it is left to the reader to infer whether these references encompass *specific* Policy sections or terms, because the quoted language does not reference titles to the specific sections, nor were specific titles listed under the introductory banner of the Virus Exclusion purporting to exhaustively identify coverages the "endorsement modifies . . . ." (*Id.*).[7]

But there is an additional (fatal) flaw with Chubb's purported reliance on the Virus Exclusion. As stated, the Lombardi Plaintiffs have averred claims under the Business Income Coverage, as well as the subsidiary Civil Authority provision. Their claims under the Civil Authority provision are the *only* claims dependent on a temporal sequence whereby the virus actually "caused" damage to surrounding properties, which in turn led to the Lombardi Plaintiffs' business losses. In the event the ambiguous application of the Virus Exclusion somehow can be resolved in Chubb's favor, there may be fact issues whether the surrounding properties indeed were damaged (as stated in various executive orders), implicating the Virus Exclusion's potential application to the Civil Authority coverage.

By contrast, with respect to the Lombardi Plaintiffs' claims under the broader Business Income Coverage, they have *not* (and need not) averred a temporal sequence contingent upon whether the <u>actual</u> virus was present *at* their properties. Instead, the documented risk of "property

---

[7] Chubb apparently thinks a reader should look to the "top right corner" of Policy pages to discern what Chubb did *not* convey in the covenant that purported to specify what specifically the "endorsement modifies."

damage" and "danger to the public health," (Pet., p. 12, ¶ 42), created an imminent *risk* to the health and safety of patrons and the public, as well as an imminent *risk* of property damage. Operational suspension was necessary "to *prevent* the ongoing danger of the virus." *See* (*Id*. at p. 22, ¶ 92) (emphasis added).

But Chubb did not draft its Policy to negate coverage for *preventive* measures of the kind and has proffered no explanation for the anachronistic notion that steps to *prevent* "loss or damage caused by or resulting from any virus," somehow can be characterized <u>as</u> the "loss or damage *caused* by or resulting *from* [the] virus." *Cf*. pp. 24 – 25 *infra*. Chubb indeed drafted parallel conditions in its "Bodily Injury" coverage, as well as the Business Income Coverage, to require precisely the preventive measures taken by the Lombardi Plaintiffs.

5.    The Bodily Injury & Property Damage Prevention Mandates

The Policy includes a "Bodily injury" coverage provision in the parallel CGL Coverage. *See* (Appx. 012). But the Virus Exclusion, by its terms, applies to only the ill-defined "COMMERCIAL PROPERTY COVERAGE PART," *see* (Appx. 10)—*not* the CGL Coverage.

This is critical, because in the CGL Coverage, Chubb contracted to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . .[,]" with "Bodily injury" defined to include "bodily injury, sickness or disease sustained by a person, including [] death resulting from any of these at any time." *See* (CGL Coverage §§ I(A)(1)(a) & V(3); Appx. 012, 014, 016). And because the Virus Exclusion is inapplicable, the covered "injury," "sickness," or "disease" would *include* COVID-19 related illness.

Yet the CGL Coverage imposes a critical condition, which is the "bodily injury, sickness or disease" cannot be "*expected* or intended from the standpoint of the insured." *See* (§ I(A)(2)(a); Appx. 013) (emphasis added). Accordingly, an insured cannot ignore public health

pronouncements about the foreseeable risk of a virus for which "there is little to no pre-existing immunity . . . ." *cf.* (Pet., p. 5, ¶ 21); do nothing to prevent exposure to the class of persons foreseeably at risk; yet later claim CGL Coverage when the persons invariably suffer bodily injury.

Similarly, a condition in, *inter alia*, the Business Income Coverage imposes a mitigation mandate regarding the risk of property damage. Business Income Coverage § C addresses specified "Loss Conditions," and imposes "Duties in the Event Of Loss," including the duty to "[t]ake all reasonable steps to protect the Covered Property from further damage . . . ." (Business Income Coverage, § C & C(2)(a)(4); Appx. 005). The Lombardi Plaintiffs consequently did not have the luxury to ignore warnings like publicly disseminated declarations "the virus is physically causing *property damage* due to its proclivity to attach to surfaces for prolonged periods of time . . . ." (Pet. p. 15, ¶ 53) (emphasis added).

Chubb nevertheless proffers an illogical construction of its Policy as a whole. It first disregards the averred facts clearly fall within the scope of the Business Income Coverage—then presses a Hobson's choice whether an insured should yield to the need for preventive measures (actually mandated by the Policy), or forgo the preventive measures given Chubb's refusal to cover corresponding losses. This proposition is textually unsupported and illogical (indeed contrary to sound public policy).

## III. APPLICABLE LAW

### A. Rule 91A Principles

A "court may *not* consider evidence in ruling on [a Rule 91A] motion and must decide the motion based *solely* on the pleading of the cause of action, together with any pleading exhibits permitted by" Texas Rule of Civil Procedure 59. *See* TEX. R. CIV. P. 91a.6 (emphasis added). In so doing, a court must "construe the pleadings *liberally* in favor of the plaintiff, look to the

pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact." *In re RNDC Tex., LLC*, No. 05-18-00555-CV, 2018 Tex. App. LEXIS 4186, *2 (Tex. App.—Dallas June 11, 2018, no pet.) (emphasis added).

**B.    Applicable Principles of Insurance Contract Construction**

A contract of insurance is "controlled by rules of interpretation and construction which are applicable to contracts generally." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). Accordingly, a court should strive "to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). A court should also "consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." 597 S.W.3d at 497.

When an insurance policy does not define its terms, a court should give those terms "their ordinary and generally-accepted meanings . . . ." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). And if after applying the rules of construction, "a contract is subject to two or more reasonable interpretations, it is ambiguous[,]" with the consequences of the ambiguity charged against the insurer. *See* 972 S.W.2d at 741.

Pursuant to these principles, it is not enough for an insurer to ignore confusion caused by the manner in which it drafted its policy or adopt the hubristic stance its construction purportedly is the more erudite of *competing* constructions. The insurer instead must prove there is *no* other rational construction of the policy. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) ("if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors *the*

*insured.*") (emphasis added); 972 S.W.2d at 741, n.1 ("uncertain contractual language is construed against the party selecting that language.").   Chubb has not come close to carrying this burden.

## IV.   RESPONSE ARGUMENTS

### A.   Chubb Promotes Confusion by Directing this Court to Non-Binding, Substantively Immaterial Cases

No court in Texas (or its appears elsewhere) has construed the language in the Chubb Policy *specifically* at issue in this litigation, relative to the grounds for coverage *specifically* averred by the Lombardi Plaintiffs.   It consequently could not be the case "this exact issue" has been resolved anywhere; by any court.   *Cf.* (Rule 91A Motion, p. 9).   Chubb's superlatives regarding the "majority view across the country" and regarding what purportedly has been done by "[c]ourts across the country" therefore is specious.   (*Id.* at 8, 9).

First, the insurances policies, underlying pleadings, and requests for coverage in the other cases are extraneous materials that do not qualify as *pleadings* or *attachments* that may be considered by the Court in this Rule 91A dispute.   *See* 2018 Tex. App. LEXIS 4186 at *2.   Chubb consequently cannot demonstrate whether the other policies share in common *all* of the material provisions of Chubb's Policy the Lombardi Plaintiffs have discussed herein.   Nor can Chubb demonstrate the insureds in the other cases *factually* averred grounds for coverage that parallel what the Lombardi Plaintiffs have averred.[8]

The limited insight that can be discerned from reviewing the cases indeed suggests the opposite.   For instance, the following cases cited by Chubb regarding the meaning of "loss"

___

[8] Chubb previously characterized these observations as "bizarrely unfounded" suggestions the Court is not allowed to consider cases from other courts.   Chubb's commentary solely is a reflection of its misapprehension of Rule 91A evidentiary proscriptions.   The fact that some court, somewhere, engaged in construction of some insurance policy, under the substantive law of those jurisdictions; means nothing.   Coverage in *this* matter will depend upon the language in Chubb's Policy relative to bases for coverage asserted by the Lombardi Plaintiffs—based on Texas law.   As discussed herein, the other cases do nothing to benefit Chubb in any of those respects.

construed policies that covered *only* physical loss <u>to</u> or damage <u>to</u> property, through principal

coverage or incorporated restrictive provisions: *de Laurentis v. United Servs. Auto. Ass'n,* 162

S.W.3d 714, 721 (Tex. App.-Houston [14th Dist.] 2005, pet. filed); *Ross v. Harford Lloyd Ins. Co.*,

No. 4:18-CV-00541-O, 2019 U.S. Dist. LEXIS 112175, *2 (N.D. Tex. July 4, 2019); *Diesel*

*Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 U.S. Dist. LEXIS 147276,

*6 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020

D.C. Super. LEXIS 10, * 1 (Sup. Ct. of D.C. Aug. 6, 2020); *Roundabout Theatre Co. v. Cont'l*

*Cas. Co.*, 751 N.Y.S.2d 4, 5, 8 (N.Y.A.D. 1st Dept. 2002).[9]   Chubb, by contrast, covenanted to

cover "loss *of* <u>or</u> damage *to*" property.

Indeed, in *Turek Enterprises, Inc. v. State Farm Mutual Automobile Ins. Co.*, which Chubb

cites without regard to its actual significance, *cf*. (Rule 91A Motion, p. 17), that court recognized

precisely the distinction the Lombardi Plaintiffs make regarding the legal difference between the

phrase "loss of" versus "damage to":  "Plaintiff suggests that 'physical loss *to* Covered Property'

includes the *inability to use* Covered Property. . . .  This interpretation seems *consistent* with one

definition of 'loss' but ultimately renders the word 'to' meaningless. . . .  Plaintiff's interpretation

*would* be plausible if, instead, the term at issue were 'accidental direct physical loss *of* Covered

Property.'"  Case No. 20-11655, 2020 U.S. Dist. LEXIS 161198, **16 – 17  (N.D. Mich. Sept 3,

2020) (emphasis added).  *See also Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834,

838 (8th Cir. 2006) ("Source Food's argument might be stronger if the policy's language included

the word 'of' rather than 'to,' as in 'direct physical loss *of* property' or even 'direct loss *of*

property.'").

---

[9] The "transcripts" Chubb references (to skirt Rule 91A proscriptions on extraneous materials) also refer to policies
that insured only "loss *to*" or possibly "damage *to*" property.  *Cf*. (Rule 91A Motion, pp. 9, 10).

Moreover, other courts around the country—which Chubb has elected not to acknowledge—likewise have construed "loss" (particularly "loss of") to include loss of the ability to use.[10]  This is conclusive Chubb has not proffered the *only* reasonable construction of its Policy language, because reasonable minds clearly have disagreed with Chubb's position.

Indeed, it appears only two cases Chubb has cited actually purported to construe coverage provisions containing the phrase "loss of," yet the plaintiffs in those cases alleged business disruptions *solely* to comply with governmental directives—*not* to preempt COVID-19 risks (as is *mandated* under language in Chubb's Policy).  *See Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV, 2020 U.S. Dist. LEXIS 156027, **9 – 10 (S.D. Fla. Aug. 26, 2020); *10E, LLC v. Travelers Indem. Co.*, 2:20-cv-04418-SVW-AS, 2020 U.S. Dist. LEXIS 156827, **2 – 3 (Aud. 28, 2020).  Whether or not the other courts' construction of *those* coverage averments was correct consequently is immaterial to the coverage averments asserted in *this* lawsuit, wherein the Lombardi Plaintiffs have averred imminent risk of person-to-person spread and property damage from COVID-19 necessitated their operational disruptions.

These considerations consequently are disqualifying of Chubb's feigned air of certainty, whereby it invites this Court to be the *first* indefinable court in the state (and perhaps the country) to rule *Chubb's* Policy has unambiguous import conclusively favoring Chubb.  Chubb has not provided this Court any basis to conclude dismissal is warranted based on the current state of the law[11]—or facts averred by the Lombardi Plaintiffs.

---

[10] *See, e.g., Blue Springs Dental Care v. Owners Ins.* No. 20-CV-00383-SRB, 2020 U.S. Dist. LEXIS 172639, ** 3, 19 – 20 (W.D. Miss. Sept. 21, 2020); *Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.*, No.: CV 17-04908 AB, 2018 U.S. Dist. LEXIS 216917, **8 – 9 (D.C. Ca. July 11, 2018); *Manpower Inc. v. Ins. Co. of Pa.*, No. 08C0085, 2009 U.S. Dist. LEXIS 108626, ** 18 – 19 (E.D. Wis., Nov. 3, 2009).

[11] *Cf. Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, BER-L-3681-20, 2020 N.J. Super. Unpub. LEXIS 1782, **24 – 25 ("The defendant argues that there is a plain meaning of 'direct physical loss' and the closure of the plaintiffs'

## B.    Chubb Disregards the Plain Language of the Policy

The common meaning of "loss of," as used in the business Income Coverage, is not limited to physical damage—as recognized by authority even Chubb cites. *See* p. 21 *supra*. *See also* D. Malecki, Commercial Property Coverage Guide, Sixth Edition (2015) ("Physical loss is not synonymous with damage or physical damage. Too often, when reference is made to an insuring agreement, physical loss is not mentioned, as if it does not exist. It does exist, and it is different from physical damage.") (Appx. 025);[12] *Second Injury Fund v. Conrad,* 947 S.W.2d 278, 284 (Tex. App.— Fort Worth 1997, no pet.) ("Loss is a generic and relative term. . . . It is not a word of limited, hard and fast meaning."). Accordingly, Chubb's use of the phrase at best creates uncertainty, which must be resolved in favor of the Lombardi Plaintiffs. *See* 811 S.W.2d at 555.

Similar failings characterize the Ordinance Or Law exclusion and Virus Exclusion, which are subject to the even more unforgiving principle of Texas law that applies to exclusionary provisions, whereby a court "must adopt the construction . . . urged by the *insured* as long as that construction is not unreasonable, *even if* the construction urged by the *insurer* appears to be *more* reasonable or a more accurate reflection of the parties' intent." 972 S.W.2d at 741 (quoting *National Union Fire Ins. Co.*) (emphasis added). Chubb, for instance, did not define "ordinance" or "law" in a manner that unambiguously embraces the executive directives alleged by the Lombardi Plaintiffs. *See* pp. 6 – 7 *supra*. It also failed to clearly and unambiguously subject the pertinent Business Income Coverage to "SPECIAL" restrictions as a threshold for incorporation of the Ordinance Or Law exclusion. *See* pp. 8 – 10 *supra*.

---

business does not qualify . . . . This is a blanket statement unsupported by any common law in the State of New Jersey or by a blanket review of the policy language.").

[12] *See* **Exhibit 9** attached hereto.

Similarly, if Chubb intended the Virus Exclusion to at all apply to a Policy section titled, "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM", Chubb was obligated to use non-obtuse language to clearly and unambiguously do so. *See* pp. 15 – 16 *supra*. *Cf. Urogynecology Specialist of Fa. LLC v. Sentinel Ins. Co., Ltd.*, Case No. 6:20-cv-01174-ACC-EJK, U.S. Dist. Ct. M.D. Fa., Dkt. 21, Page 6 of 8 ("the 'Limited Fungi, Bacteria or Virus Coverage' section of the Policy . . . starts by stating that it modifies certain coverage forms. Those forms are not provided in the Policy itself . . . .").[13] And if Chubb intended the language of the exclusion to foreclose something more than the causal effects of the *actual* virus—it was incumbent upon Chubb to utilize common industry language to do precisely that. For instance, in *Diesel Barbershop, LLC v. State Farm Lloyds*—as but one example in the cases Chubb cites—the court considered a comprehensive pandemic exclusion, excluding all conceivable virus implications irrespective of sequence:

> We do not insure under *any* coverage for *any* loss which would not have occurred in the absence of [the virus]. We do not insure for such loss *regardless* of: (a) the *cause* of the excluded event; or (b) *other causes* of the loss; or ( c) whether other causes acted concurrently or in *any sequence* with the excluded event to produce the loss . . .

2020 U.S. Dist. LEXIS 147276, \*7 (emphasis added). Chubb elected *not* to utilize a comprehensive exclusion of the kind and cannot have the Court rewrite its Policy after the fact.

Chubb moreover has ignored the over-breadth it attributes the Virus Exclusion is irreconcilable with the structure of its Policy as a whole, whereby it *mandated* precisely the preventative and mitigation steps taken by the Lombardi Plaintiffs. *See* pp. 17 – 18 *supra*. For

---

[13] The holding in *Urogynecology Specialist* also is significant because the insurer in the case apparently *conceded* operational disruptions attributable to COVID-19 qualified for coverage.

instance, in *Real Asset Management v. Lloyd's of London*, the United States Court of Appeals for the Fifth Circuit held: "The duty to mitigate is such a recognized defense in the recovery of damages that some courts have awarded insureds the expenses of mitigating when an insured has taken *protective* measures." 61 F.3d 1223, 1229, n.11 (5th Cir. 1995) (emphasis added). In so doing, the court cited with approval *Slay Warehousing Co. v. Reliance Ins. Co.*, wherein the Eighth Circuit held: "the obligation to pay the expenses of *protecting* the exposed property may arise from either the insurance agreement *itself*, . . . or an *implied duty* under the policy based upon general principles of law and equity . . . ." 471 F.2d 1364, 1367 – 68 (8th Cir. 1973) (emphasis added).

Chubb's Policy implicates *both* protection triggers. It consequently cannot now balk when the plain language of its coverage provisions, coupled with its prevention edicts, support coverage. The Rule 91A Motion consequently should be denied, and the Lombardi Plaintiffs should be awarded their response cost and attorneys' fees pursuant to Texas Rule of Civil Procedure 91a.7.

Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, PC.**

*/s/* Nolan C. Knight
Michael W. Huddleston
Texas State Bar No. 10148415
Nolan C. Knight
Texas State Bar No. 24027125
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201
Telephone:  214.855.7500
Facsimile: 214.855.7584
mhuddleston@munsch.com
nknight@munsch.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via E-Service on this 8th day of October 2020, to the following counsel of record:

Daniel M. "Neel" Lane, Jr.
Norton Rose Fulbright
111 W. Houston St., Suite 1800
San Antonio, TX 78205
ATTORNEYS FOR DEFENDANT

/s/ Nolan  C. Knight
Nolan  C. Knight

# EXHIBIT 1

# CHUBB®

## SCHEDULE OF LOCATIONS

## Indemnity Insurance Company of North America

| Named Insured | LOMBARDI FAMILY CONCEPTS INC | Effective Date: | 06-30-19 |
|---|---|---|---|
| | | 12:01 A.M., Standard Time | |

Agent Name INNOVATIVE COVERAGE CONCEPTS LLC

Agent No. Z03347

| Loc. No. | Bldg. No. | Designated Locations (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | 001 | 3100 Monticello Ave #325, Dallas, TX 75205 | Office |
| 002 | 001 | 6815 Snider Plaza Blvd, DBA Penne Pomodoro Snider, Plaza (Penne 1), Dallas, TX 75205 | Restaurant |
| 003 | 001 | 11661 Preston Rd #143, DBA Penne Pomodoro, Preston/Forest (Penne 2), Dallas, TX 75230 | Restaurant |
| 004 | 001 | 3312 Knox St, DBA Taverna Dallas, Dallas, TX 75205 | Restaurant |
| 005 | 001 | 3314 Knox St, DBA Toulouse Cafe and Bar, Dallas, TX 75205 | Restaurant |
| 006 | 001 | 450 Throckmorton St, DBA Taverna Pizzeria and, Risotteria, Fort Worth, TX 76102 | Restaurant |
| 007 | 001 | 258 W Second St, DBA Taverna Austin, Austin, TX 78701 | Restaurant |
| 008 | 001 | 3663 Las Vegas Blvd S, #H087, DBA Lombardi Romagna Mia, Las Vegas, NV 89109 | Restaurant |
| 009 | 001 | 3315 Noble Ave, Dallas, TX 75204 | Parking Lot |
| 010 | 001 | 1924 Abrams Parkway, DBA Penne Pomodoro, Lakewood (Penne 3), Dallas, TX 75214 | Restaurant |
| 011 | 001 | 87 Highland Park Village, DBA Lounge 31 & Bistro 31, Dallas, TX 75205 | Restaurant |
| 012 | 001 | 4444 Westheimer, Suite E-100, DBA Toulouse Houston, Houston, TX 77027 | Restaurant |
| 013 | 001 | 3120 Palm Way, Suite 160, DBA Taverna Domain, Austin, TX 78758 | Restaurant |
| 014 | 001 | 3120 Palm Way, Suite 150, DBA Toulouse Domain, Austin, TX 78758 | Restaurant |
| 015 | 001 | 7400 Windrose Ave, Suite B130, DBA Taverna Legacy West, Plano, TX 75024 | Restaurant |



## SCHEDULE OF LOCATIONS

# Indemnity Insurance Company of North America

Named Insured    LOMBARDI FAMILY CONCEPTS INC     Effective Date:    06-30-19

12:01 A.M., Standard Time

Agent Name   INNOVATIVE COVERAGE CONCEPTS LLC

Agent No.   Z03347

| Loc. No. | Bldg. No. | Designated Locations (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 016 | 001 | 7301 Windrose Ave, Suite C150, DBA Toulouse Legacy, Plano, TX 75024 | Restaurant |
| 017 | 001 | 280 Buckhead Ave NE, Parcel C, DBA Taverna Atlanta, Atlanta, GA 30305 | Restaurant |
| 018 | 001 | 7301 Windrose Ave, Suite C200, DBA KAI, Plano, TX 75024 | Restaurant |

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

Defendant's Rule 91a Motion to Dismiss      Page 73      Appx. 003
Company Copy

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

# CHUBB®

**COMMERCIAL PROPERTY COVERAGE PART**
**SUPPLEMENTAL DECLARATIONS**

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date:  06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC

Agent No.  Z03347

| | |
|---|---|
| **Item 1.** | Business Description:  **RESTAURANT** |
| **Item 2.** | Premises Described:  See Schedule of Locations |
| **Item 3.** | $500 Deductible unless otherwise indicated. |
| **Item 4.** | Coverage Provided |

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | **BLANKET BLDG. & PERS. PROPERTY GRP # 1** | **$ 28,325,000** | | 90 |

**Other Provisions**

| X | **Agreed Value:** $ 28,325,000  **Expires:** | | Replacement Cost | |
|---|---|---|---|---|
| | Business Income Indemnity: Monthly Limit: | Period: Maximum | Inflation Guard: % | |
| | Reporting | | Extended  Days  BI Media | |

Extension of Recovery Period:  Months          Wind/Hail Deductible:
Deductible:          Earthquake Deductible:  %          Exceptions

LOCATIONS: SEE BLANKET SCHEDULE

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | **BLANKET BUS. INCOME BY VALUE GRP # 2** | **$ 18,952,419** | | 90 |

**Other Provisions**

| X | **Agreed Value:** $ 18,952,419  **Expires:** | | Replacement Cost | |
|---|---|---|---|---|
| | Business Income Indemnity: Monthly Limit: | Period: Maximum | Inflation Guard: % | |
| | Reporting | | Extended  Days  BI Media | |

Extension of Recovery Period:  Months          Wind/Hail Deductible:
Deductible:          Earthquake Deductible:  %          Exceptions

LOCATIONS: SEE BLANKET SCHEDULE

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | **TENANTS IMPR & BETT JOISTED MASONRY** | **BLKT GRP 1** | SPECIAL | 90 |

**Other Provisions**

| X | **Agreed Value:** BLKT GRP 1  **Expires:** 06/30/20 | X | **Replacement Cost** | |
|---|---|---|---|---|
| | Business Income Indemnity: Monthly Limit: | Period: Maximum | Inflation Guard: % | |
| | Reporting | | Extended  Days  BI Media | |

Extension of Recovery Period:  Months          Wind/Hail Deductible:
Deductible: $  1,000     Earthquake Deductible:  %          Exceptions

| | |
|---|---|
| **Item 5.** | Forms and Endorsements |
| | Form(s) and Endorsement(s) made a part of this policy at time of issue: **See Schedule of Forms and Endorsements** |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24633 (01/08)**

# CHUBB®

**Policy Number**
**MCRD38196169**

## COMMERCIAL PROPERTY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured   LOMBARDI FAMILY CONCEPTS INC
Effective Date:  06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.   Z03347

**Item 4.**   Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

### Other Provisions

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20  [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting                                      Extended   Days   BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible: $  1,000   Earthquake Deductible:   %     Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | BUS INC OTHER THAN RENTAL JOISTED MASONRY | BLKT GRP 2 | SPECIAL | 90 |

### Other Provisions

[X] **Agreed Value:** BLKT GRP 2   **Expires:** 06/30/20  [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting                                      Extended   Days   BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible:     Earthquake Deductible:   %     Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 017 | 001 | AWNINGS OR CANOPIES OTHER | $  60,000 | SPECIAL | 90 |

### Other Provisions

[ ] **Agreed Value:**     **Expires:**   [ ]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting                                      Extended   Days   BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible: $  1,000   Earthquake Deductible:   %     Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 008 | 001 | TENANTS IMPR & BETT MOD.FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

### Other Provisions

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20  [X]   **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:     Period: Maximum   [ ] Inflation Guard:   %
[ ] Reporting                                      Extended   Days   BI Media
Extension of Recovery Period:     Months          Wind/Hail Deductible:
Deductible: $  1,000   Earthquake Deductible:   %     Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

# CHUBB®

**Policy Number**
**MCRD38196169**

## COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.**    Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 008 | 001 | BUSINESS PERS PROP MOD.FIRE-RESISTIVE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $ 1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 008 | 001 | BUS INC OTHER THAN RENTAL MOD.FIRE-RESISTIVE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2    **Expires:** 06/30/20  [ ]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible:    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 001 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $ 1,000    Earthquake Deductible:    %    Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 002 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1    **Expires:** 06/30/20  [X]  **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:    Period: Maximum    [ ] Inflation Guard:    %
[ ] Reporting    Extended    Days    BI Media
Extension of Recovery Period:    Months    Wind/Hail Deductible:
Deductible: $ 1,000    Earthquake Deductible:    %    Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

# CHUBB®

**Policy Number**
**MCRD38196169**

## COMMERCIAL PROPERTY COVERAGE PART
### EXTENSION OF SUPPLEMENTAL DECLARATIONS

## Indemnity Insurance Company of North America

Named Insured  LOMBARDI FAMILY CONCEPTS INC

Effective Date: 06-30-19
12:01 A.M., Standard Time

Agent Name  INNOVATIVE COVERAGE CONCEPTS LLC
Agent No.  Z03347

**Item 4.**  Coverage Provided (applies only when a limit is shown below)

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 003 | 001 | BUSINESS PERS PROP NON–COMBUSTIBLE | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard: %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible: %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 003 | 001 | BUS INC OTHER THAN RENTAL NON–COMBUSTIBLE | BLKT GRP 2 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 2   **Expires:** 06/30/20  [ ] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard: %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible:   Earthquake Deductible: %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 004 | 001 | TENANTS IMPR & BETT JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard: %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible: %   Exceptions

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 004 | 001 | BUSINESS PERS PROP JOISTED MASONRY | BLKT GRP 1 | SPECIAL | 90 |

**Other Provisions**

[X] **Agreed Value:** BLKT GRP 1   **Expires:** 06/30/20  [X] **Replacement Cost**
[ ] Business Income Indemnity: Monthly Limit:   Period: Maximum   [ ] Inflation Guard: %
[ ] Reporting   Extended   Days   BI Media
Extension of Recovery Period:   Months   Wind/Hail Deductible:
Deductible: $ 1,000   Earthquake Deductible: %   Exceptions

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FA-24634 (01/08)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   (1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2011
Defendant's Rule 91a Motion to Dismiss    Page 137    Appx. 011
Company Copy

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Defendant's Rule 91a Motion to Dismiss      Page 183      Appx. 014
Company Copy

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

Regardless of whether other insurance is available to an additional insured on a primary basis, this insurance will be primary and noncontributory if a written contract between you and the additional insured specifically requires that this insurance be primary.

**10. EXTENDED DEFINITION OF "BODILY INJURY"**

The definition of "bodily injury" in **SECTION V – DEFINITIONS** paragraph **3.** is replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

**11. EXTENDED DEFINITION OF "PERSONAL AND ADVERTISING INJURY"**

The definition of "personal and advertising injury" in **SECTION V – DEFINITIONS** paragraph **14.** is amended to include the additional offense of abuse of process.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

Defendants' Rule 919 Motion to Dismiss   Page 94   App. 6

Company Copy

**EXHIBIT 2**



The Dallas City Code

# CHAPTER XVIII.  ORDINANCES AND RESOLUTIONS.

(Renumbered by Amend. of 6-12-73, Prop. No. 43)

### SEC. 1.  COUNCIL ACTION.

The city council shall evidence its official actions by written ordinances, resolutions or oral motion. The use of one method or the other shall not affect the validity of the action, except in those instances where one or the other is required by state law or this Charter.

### SEC. 2.  STYLE OF ORDINANCES AND RESOLUTIONS.

The style of all ordinances shall be: "BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DALLAS", and the style of all resolutions shall be: "BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS." In each case words of like import may be used, but such caption may be omitted when said ordinances are published in book form, or are revised and digested under the order of the council.

### SEC. 3.  PASSAGE.

All ordinances and resolutions of the city council, unless otherwise provided by state law, this charter, or the ordinance itself, shall be final on the passage or adoption by the required majority pursuant to one motion duly made, seconded and passed. Where the state law or this charter provides for a different procedure before the action of the council may become final, then in that event, the council shall follow the procedure required.

### SEC. 4.  VOTING.

The vote upon the passage of any ordinance, resolution or motion shall be taken by voice vote unless otherwise requested by a member of the city council, in which case a roll call vote shall be taken. The results of all voting shall be entered upon the minutes of the proceedings of the council. Every ordinance, resolution, or motion shall require on final passage the affirmative vote of a majority of the members present unless more is required by state law, this Charter, or ordinance. (Amend. of 6-12-73, Prop. No. 33; Amend. of 8-12-89, Prop. No. 13)

### SEC. 5.  EFFECTIVE DATE.

All ordinances and resolutions passed by the city council shall become effective immediately from and after final publication, except in the following instances:

(1)   where the state law or other provisions of this Charter provide otherwise, in which case the effective date shall be the earliest time therein prescribed;

(2)   where the ordinance or resolution prescribes a different effective date;

Appx. 017

**EXHIBIT 3**

Section 2. - General powers.

   (a)   The City Council shall have power to enact and to enforce all ordinances necessary to protect life, health and property; to prevent and summarily abate and remove nuisances; to preserve and promote good government, order, security, amusement, peace, quiet, education, prosperity and the general welfare of said City and its inhabitants; to exercise all the municipal powers necessary to the complete and efficient management and control of the municipal property and affairs of said city to effect the efficient administration of the municipal government of said city; to exercise such powers as conduce to the public welfare, happiness and prosperity of said city and its inhabitants; and to enact and enforce any and all ordinances upon any subject; provided, that no ordinance shall be enacted inconsistent with the provisions of this charter; and, provided further, that the specification of particular powers shall never be construed as a limitation upon the general powers herein granted; it being intended by this charter to grant to and bestow upon the inhabitants of the City of Houston and the City of Houston full power of local self government, and it shall have and exercise all powers of municipal government not prohibited to it by its charter, or by the provisions of the Constitution of the State of Texas.

   (b)   The City shall have all powers that are or hereafter may be granted to municipalities by the Constitution or laws of Texas; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the Council.

In addition to all the powers enumerated in this charter, implied thereby or appropriate to the exercise thereof, the City shall have and may exercise in the manner hereinbefore provided, all other powers which, under the Constitution and laws of this State, it would have been competent for this charter specifically to enumerate. (Act of 1905; amended October 15, 1913)

**EXHIBIT 4**

## § 4  ORDINANCES-APPROVAL OF MAYOR NOT NECESSARY.

The final passage of an ordinance by the council and the publication of the same when so required shall be all that is necessary to make such ordinances valid and effective. The approval or signature of the mayor shall not be necessary.

**EXHIBIT 5**

§ 14. - PROCEDURE TO ENACT LEGISLATION.

The council shall legislate by ordinance only, and the enacting clause of every ordinance shall be, "BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF AUSTIN." Before any ordinance shall be adopted, the city attorney shall approve such ordinance in writing or shall file with the city clerk his or her written legal objections thereto. Every ordinance enacted by the council shall be signed by the mayor, mayor pro tem, or by two council members, and shall be filed with and recorded by the city clerk before the same shall become effective. Unless otherwise provided by law or this Charter, no ordinance shall become effective until the expiration of 10 days following the date of its final passage, except where an ordinance relating to the immediate preservation of the public peace, health or safety, is adopted as an emergency measure by the favorable votes of at least two-thirds of the council members and contains a statement of the nature of the emergency.

*Amendment note:* *Section 14 appears as amended at the election of November 6, 2012, and later renumbered by Ord. 20121213-004. As former § 12, the section had previously been amended at the election of April 1, 1967.*

Source: Ord. No. 20180809-113 , Pt. 7, 8-20-18/election of 11-6-18.

**EXHIBIT 6**

Sec. 3.10. - Rules of procedure.

The city council shall determine its own rules of procedure and may compel the attendance of its members. A majority of the qualified voting members of the city council shall constitute a quorum to do business and the affirmative vote of a majority of those present shall be necessary to adopt any ordinance or resolution. Minutes of the proceedings of all meetings of the city council shall be kept, to which any citizen may have access at all reasonable times and which shall constitute one (1) of the archives of the city. The vote upon the passage of all ordinances and resolutions shall be taken by the "ayes" and "nays" and entered upon the minutes, and every ordinance or resolution, upon its final passage, shall be recorded in a book kept for that purpose under full caption, and shall be authenticated by the signature of the presiding officer and the person performing the duties of the city secretary.

(Res. No. 88-1-10(R), § 3, 1-18-88; ratified 1-16-88)

**EXHIBIT 7**

Section 1-103. - Legislative powers.

(a) All legislative powers of the city are hereby vested in the council (hereinafter at times referred to as the "governing body"), except those powers specifically reserved in this Charter to the electors of the city. The power to levy, assess, and provide for the collection of all taxes and fees authorized to be levied, assessed, and collected by the city by general law and this Charter shall be vested in the council.

(b) The council shall adopt and provide for the execution of such ordinances, resolutions and rules, not inconsistent with this Charter as shall be necessary or proper for the purpose of carrying into effect the powers and duties conferred by this Charter and may enforce all ordinances by imposing penalties and fines for the violation thereof not to exceed a $1000 fine or six months' imprisonment, or both.

(1996 Ga. L. (Act No. 1019), p. 4469)

**EXHIBIT 8**

Sec. 2.090 - Powers of City Council: Ordinances; resolutions and orders.

1.  The City Council may make and adopt all ordinances, resolutions and orders, not repugnant to the Constitution of the United States or the Constitution of the State of Nevada or the provisions of NRS or of this Charter, which are necessary for the municipal government, the management of the affairs of the City and the execution of all of the powers which are vested in the City.

2.  The City Council may enforce those ordinances by providing penalties which do not exceed those which are established by the Legislature for misdemeanors.

3.  The City Council may not adopt any ordinance which provides for an increase or a decrease in the salary of any of its members to take effect during the term for which that member is elected or appointed, but the City Council may by ordinance increase or decrease the salary for the office of Mayor or City Councilman at any time before the day preceding the last day for filing a declaration of candidacy for that office for the next succeeding term to take effect on the first day of the next succeeding term.

(Amended by the Nevada Legislature, 1989)

**EXHIBIT 9**

6th Edition

# Commercial Property Coverage Guide

Commercial Lines Series

George E. Krauss, D.Ed., CPCU, CLU, ChFC, ARM
Donald S. Malecki, CPCU
Susan L. Massmann, CPCU

The National Underwriter Company

Appx. 024

thunderstorm blow shingles off a roof—that damage is directly caused. Contrast that to the same storm knocking out power to the building, allowing refrigerated chemicals to spoil. That damage—to the chemicals— is consequential. The cause of the loss was not the wind but the heating of the chemicals. If loss or damage is not direct, then it is consequential; it is the distinction between the two that dictates whether damage to property is covered. (There are endorsements and coverages for some consequential losses—see Chapter 13, Commercial Property Endorsements.)

While the meaning of *direct physical loss or damage* in a vacuum may be helpful, when coverage is not disputed and in making one's argument for or against coverage, much, as mentioned, will hinge on the facts. In that vein, this insuring agreement can be very troublesome.

Physical loss is not synonymous with damage or physical damage. Too often, when reference is made to this insuring agreement, physical loss is not mentioned as if it does not exist. It does exist, and it is different from physical damage. A case that appears to clarify this matter is *Manpower, Inc. v. Insurance Co. of the State of Pennsylvania*, No. 08C0085, 2009 WL 3738099 (E.D. Wisc. Nov. 3, 2009), which involved a dispute over a partial collapse of an office building in Paris, France. The question in dispute was whether the named insured suffered a loss within the meaning of the policy, which covered "all risk of direct physical loss of or damage to covered property." The named insured argued that the collapse rendered its property physically inaccessible and therefore resulted in a direct physical loss. The insurer contended that the named insured did not sustain a covered loss because the collapse did not physically damage, move, or alter the property in any way.

The court rejected the insurer's argument that a peril must physically damage property in order to cause a covered loss. The policy covered physical losses in addition to physical damage, explained the court, and if a physical loss could not occur without physical damage, then the policy would contain surplus language. The court said that a contract must, where possible, be interpreted so as to give reasonable meaning to each provision without rendering any portion superfluous. Thus, the court added that *direct physical loss* must mean something other than *direct physical damage*. Indeed, the court said that if "direct physical loss required physical damage, the policy would not cover theft, since one can steal property without physically damaging it; and ISOP did not contend that the policy did not cover theft."

Interestingly, *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548 (Cal. Ct. App. 2003) involved loss of stored computer data not accompanied by loss or destruction of the storage medium—a loss not covered by the policy. The court gratuitously explored

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nolan Knight on behalf of Mike Huddleston
Bar No. 10148415
NKnight@munsch.com
Envelope ID: 47033346
Status as of 10/9/2020 11:43 AM CST

Associated Case Party: LOMBARDI'S OF DESERT PASSAGE, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Susan Cardenas | | susan.cardenas@nortonrosefulbright.com | 10/8/2020 6:09:55 PM | SENT |

Associated Case Party: INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jodye Kasher | | jodye.kasher@nortonrosefulbright.com | 10/8/2020 6:09:55 PM | SENT |
| Daniel McNeel Lane | 784441 | neel.lane@nortonrosefulbright.com | 10/8/2020 6:09:55 PM | SENT |
| Julie Martin | 24115272 | julie.martin@nortonrosefulbright.com | 10/8/2020 6:09:55 PM | SENT |
| Katie Oldham | | katie.oldham@nortonrosefulbright.com | 10/8/2020 6:09:55 PM | SENT |
| Julie Martin | | julie.martin@nortonrosefulbright.com | 10/8/2020 6:09:55 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mike Huddleston | | mhuddleston@munsch.com | 10/8/2020 6:09:55 PM | SENT |
| Elizabeth Duenas | | eduenas@munsch.com | 10/8/2020 6:09:55 PM | SENT |

Associated Case Party: LOMBARDI'S, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nolan Knight | | NKnight@munsch.com | 10/8/2020 6:09:55 PM | SENT |

FILED
10/12/2020 2:02 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Treva Parker-Ayodele DEPUTY

CAUSE NO. DC-20-05751

| | | |
|---|---|---|
| LOMBARDI'S INC.; LOMBARDI'S FAMILY CONCEPTS, INC.; PENNE SNIDER, LLC; PENNE PRESTON, LLC; ALBERTO LOMBARDI INTERESTS, LLC; TAVERNA DOMAIN AUSTIN, LP; CAFÉ TOULOUSE RIVER OAKS DISTRICT; CAFÉ MONACO HPV, LLC; PENNE LAKEWOOD, LLC; TAVERNA BUCKHEAD, LP; TAVERNA AUSTIN, L.L.C.; TAVERNA FT. WORTH, LLC; TOULOUSE KNOX BISTRO, LLC; TAVERNA ARMSTRONG, L.L.C.; TOULOUSE DOMAIN AUSTIN, LP; BISTRO 31 LEGACY, LP; TAVERNA LEGACY, LP; TAVERNA BUCKHEAD, LP; AND LOMBARDI'S OF DESERT PASSAGE, INC.<br><br>     Plaintiffs,<br><br>v.<br><br>INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,<br><br>     Defendant. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>DALLAS COUNTY, TEXAS<br><br><br><br>A-14TH JUDICIAL DISTRICT |

## DEFENDANT INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S REPLY IN SUPPORT OF ITS AMENDED MOTION TO DISMISS PURSUANT TO RULE 91A

Defendant Indemnity Insurance Company of North America ("**Chubb**")[1] files this reply

("**Reply**") brief in support of its Amended Motion to Dismiss Pursuant to Rule 91a of the Texas

Rules of Civil Procedure ("**Amended Motion**" or "**Am. Motion**"), and would show:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning assigned to them in Chubb's Amended Motion.

*Preliminary Statement*

Plaintiffs' Response[2] provides no credible legal basis for avoiding dismissal of all claims Plaintiffs assert in their Amended Petition ("**Petition**"). A Rule 91a motion narrowly examines the facts alleged in a petition to determine whether the Plaintiffs' cause of action has any basis in law, and none of the arguments asserted in Plaintiffs' Response can cure their failure to plead a viable claim for coverage under the Policy.

Instead, Plaintiffs implausibly assert that two separate case-determinative exclusions should not apply even though they plainly do, unsuccessfully attempt to fabricate ambiguity in the Policy where none exists, and rest the entirety of their claims on allegations that are bare legal conclusions. Plaintiffs' causes of action have no basis in law and must be dismissed.

## ARGUMENT

### I. Plaintiffs' Breach of Contract Claim Has No Basis in Law And Must Be Dismissed.

Even accepting the factual allegations in Plaintiffs' Petition as true, they have not met their burden of alleging credible facts that would entitle them to coverage under the Policy. Since Plaintiffs' breach of contract cause of action has no basis in law, it must be dismissed.

#### A. Plaintiffs Have Not Plead "Direct Physical Loss of or Damage To" the Insured Property as Required for Coverage to Exist.

For Plaintiffs to succeed on their claim for business interruption coverage, their pleading must show—via actual factual allegations, not conclusory legal assertions—that their suspension of operations was "caused by direct physical loss of or damage to property" at their insured premises. Am. Motion Ex. A at p. 28 (¶ A.1). Plaintiffs' pleading is insufficient, as a matter of law, to meet the coverage threshold in the Policy for two reasons. <u>First</u>, Plaintiffs' pleading of

---

[2] As used herein, "Response" shall mean the Plaintiffs' Response in Opposition to Defendants' Amended Rule 91A Motion to Dismiss, as filed on October 8, 2020.

"direct physical loss of or damage" to their premises rests wholly on conclusory legal allegations—
**not** credible, specific factual allegations that would be entitled to be taken as true on a Rule 91a
motion.  <u>Second</u>, the Plaintiffs' theory that their partial loss of use of their restaurants (for dine-in
services only, since take away and delivery were always allowed) constitutes "direct physical loss
of or damage to" their premises *flatly ignores* the two modifying terms "direct" and "physical."
The case law interpreting the import of these two modifying terms obliterates the Plaintiffs'
equivalency argument between "direct physical loss" and "partial loss of use."

### 1. Conclusory Legal Allegations Are Insufficient.

Plaintiffs' allegations concerning the purported "direct physical loss of" their insured
premises consist solely of conclusory legal assertions—not factual allegations that must be taken
as true on a Rule 91a motion.  These are Plaintiffs' only allegations of direct physical loss:

- The COVID-19 pandemic has caused a "direct physical *loss of*" the Lombardi
  Plaintiffs' Insured Locations and has caused a suspension of operations. (Pet. ¶ 22.)

- The Insured Properties were directly and physically lost to Lombardi's as a result of
  the need to prevent the ongoing danger of the virus.  (Pet. ¶ 92.)

- The fact the property cannot be used[3] because of the danger of exposure of the surfaces
  and air to the virus and the resulting danger to the public at minimum has resulted in a
  "direct and physical loss of the property."  (Pet. ¶ 95.)

That's it.  In 123 paragraphs, the Amended Petition makes no other allegations of any direct
physical loss of or damage to the Lombardi restaurants.

All of the above statements are conclusions of law, not specific factual allegations of

---

[3] Plaintiffs disingenuously plead that their insured properties "cannot be used" due to the danger from Covid-19 and
the shutdown orders (Pet. ¶ 95), but that allegation is contradicted by their own Petition and therefore has no basis in
fact under Rule 91a.  The Petition elsewhere acknowledges that the only prohibited use of the insured premises was
for dine-in services, but that the restaurants were always allowed to "provide take out, delivery, or drive-through
services."  Pet. ¶¶ 47-48, 55.  Rule 91a states that "[a] cause of action has no basis in fact if no reasonable person
could believe the facts pleaded." Tex. R. Civ. P. 91a.1.  Plaintiffs' allegation that their restaurants could not "be used"
is contrary to fact, contradicted by their own pleading, and could not be believed by any reasonable person.  Therefore,
the Court should not accept that allegation as true on this Rule 91a motion.

damage or loss to the insured restaurants. *PPI Tech. Services, L.P. v. Liberty Mut. Ins. Co.*, 515 Fed. App'x. 310, 312 (5th Cir. (Tex.) 2013) (upholding district court's decision that the allegations of "property damage" and "physical injury to tangible property, including all resulting loss of use of the property" made in suit seeking insurance coverage were *legal* allegations, not "factual allegations of actual damage or loss to tangible property" that could trigger coverage).

"While Rule 91a requires courts to take all factual allegations in the pleadings as true, legal conclusions need not be taken as true." *Auzenne v. Great Lakes Reinsurance, PLC*, 497 S.W.3d 35, 39 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (affirming grant of Rule 91a motion to dismiss on standing grounds since plaintiff's "assertion that he has third-party beneficiary status is a legal conclusion the court is not required to take as true when evaluating his pleading"); *see also Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 451 (Tex. App.—San Antonio 2016, pet. denied) ("although we take all of [plaintiff's] *factual* allegations as true, we need not afford the same deference to plaintiff's *legal* conclusions or *conclusory statements*") (emphasis in original); *Merrick v. Helter*, 500 S.W.3d 671, 673 (Tex. App.—Austin 2016, pet. denied) ("Our focus is the *facts* alleged by the claimant, not any legal conclusions the claimant asserts.") (emphasis in original). Because Plaintiffs do not allege *any* facts at all concerning physical loss or damage to their insured restaurants, their claim for coverage under the policy is groundless, their pleading has zero basis in law, and their cause of action against Chubb for breach of the policy should be dismissed. Tex. R. Civ. P. 91a.1; *Vandelay Hospitality Group LP d/b/a Hudson House v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *1 (N.D. Tex. Oct. 7, 2020) (granting motion to dismiss Covid-19 business interruption coverage breach of contract claim that failed to allege "direct physical loss or damage," since the allegations in the petition

were "factually conclusory and/or legal conclusions and are therefore inadequate to plead a plausible claim for breach of contract").

## 2. Plaintiffs Misconstrue "Direct Physical Loss."

Plaintiffs' theory that a partial loss of use of their restaurants constitutes "direct physical loss of or damage to" their premises *flatly ignores* the two modifying terms "direct" and "physical," according to a flood of recent case law. It matters not whether closures were compelled by compliance with governmental ordinances, as Plaintiffs alleged in their Original Petition, or instead were prompted by a civic-minded impulse to avoid the dangers of the coronavirus, as Plaintiffs' Amended Petition would now have it.[4] Plaintiffs simply do not allege the closures resulted from direct physical loss.

Texas courts have repeatedly held that "physical loss" means tangible or physical damage. *See de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 723 (Tex. App.—Houston [14th Dist.] 2005, pet. filed) (holding "physical loss" means "tangible damage"); *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *7 (N.D. Tex. July 4, 2019) (citing 10 Couch on Ins. § 148:46 and holding that the term "physical loss" "cannot fairly be construed to mean physical loss in the absence of physical damage").[5] In their Response, Plaintiffs cite zero

---

[4] The new narrative in Plaintiffs' Amended Petition that Plaintiffs **voluntarily** shut down in-person dining at their restaurants does not support Plaintiffs' entitlement to coverage under the Policy. The predicate for business interruption coverage is clear, and Plaintiffs have failed to plead allegations that meet the standard.

[5] Plaintiffs argue that some of the cases Chubb cites, such as the *de Laurentis* and *Ross* cases, are inapposite because the policy language in those cases included a different prepositional endpoint in the coverage provision, *i.e.,* "physical loss to" property rather than "physical loss of" property. If the prepositional distinction makes a difference, Plaintiffs do not coherently explain what it could be. Moreover, those courts' opinions interpret the phrase "physical loss" without apparent reliance or emphasis on the trailing preposition, and therefore these court decisions are duly persuasive. Plaintiffs make the same argument regarding *Rose's 1* (discussed *infra*), but that court opinion interpreted the sole phrase "direct physical loss" without any trailing preposition at all. In any event, Chubb also cites numerous cases interpreting "direct physical loss of" property that reach the identical conclusion that "direct physical loss" requires a tangible, harmful alteration to the insured property. *See 10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *4-5 (C.D. Cal. Sept. 2, 2020) (interpreting "direct physical loss of or damage to property" to mean "distinct, demonstrable physical alteration" and to exclude "losses from inability to use property"); *Mama Jo's Inc. v. Sparta Ins. Co.*, No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) (holding that "direct physical loss of or damage to" property requires tangible, physical loss or actual change in the

Texas court opinions suggesting or finding any other meaning for the words "physical loss," instead asking this court to break new legal ground on the strength of a sentence in a single secondary source Plaintiffs append to their Response.

Many other courts—including a Texas decision concerning a Covid-19 business interruption claim—have interpreted "direct physical loss" to require a physical intrusion onto the property that changes and causes damage to the property itself, as opposed to an economic loss from a reduction in business. *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at pp. 14-15 (W.D. Tex. Aug. 13, 2020) (dismissing coverage claim for Covid-19 business interruption for failing to allege any "direct physical loss" where insured failed to plead any "tangible injury" to its premises); *Gavrilides Management Co. v. Michigan Ins. Co.*. Case No. 20-258-CB, Doc. No. 23 (transcript of July 1, 2020 hearing) at 18:18-19:8; 20:5-18; 23:16-17 (Mich. Cir. Ct. August 4, 2020) (insured suffered no "direct physical loss of or damage to" its property as a result of the Covid-19 orders prohibiting in-person dining, as the plaintiff plead no tangible change or alteration to the physical integrity of its restaurant's premises).

Still other courts have squarely rejected Plaintiffs' central argument for coverage that "direct physical loss" should encompass "loss of use."  For example, in *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV, 2020 WL 5051581, at *9 (S.D. Fla. Aug 26, 2020),

---

property, as opposed to an economic loss such as a need for cleaning); *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV, 2020 WL 5051581, at *4 (S.D. Fla. Aug 26, 2020) (policy covering business interruption "caused by direct physical loss of or damage to property" did not cover the "pure economic losses" resulting from the Covid-19 shutdown orders in the absence of a demonstrable, tangible, and physical alteration of the insured property); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, Civ. No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020) (interpreting "direct physical loss of or damage to" to require either complete destruction or repairable damage of insured premises); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co. of Conn.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020) ("losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase," which requires a "distinct, demonstrable, physical alteration" to the property, not just "detrimental economic impact").

the court rejected plaintiff's argument that Covid-19 orders prohibiting in-person dining qualified as "direct physical loss" because the orders rendered the restaurant facilities "uninhabitable or substantially unusable." The court held that "direct physical loss" requires demonstrable, tangible, and physical alteration of the insured property, rather than just economic losses. The court also held that the Covid-19 orders "permitted Plaintiff to continue its takeout and delivery services," so the orders "never made the restaurant uninhabitable or substantially unusable." *See also Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indemnity Co. of Conn.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020) ("losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase," which requires a "distinct, demonstrable, physical alteration" to the property, not just "detrimental economic impact"); *Rose's 1, LLC v. Erie Ins. Exchange*, Civil Case No. 2020 CA 002424 B, 2020 WL 4589206 (Sup. Ct. of D.C. Aug. 6, 2020) at p. 5 (rejecting argument that "direct physical loss" encompasses "loss of use," *i.e.*, the deprivation of use of the insured restaurants for in-person dining, because "the words 'direct' and 'physical' modify the word 'loss'"; therefore, the policy requires "a direct physical intrusion on to the insured property" and the local Covid-19 "orders were not such a direct physical intrusion" because they "did not have any effect on the material or tangible structure of the insured properties"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (N.Y.A.D. 1st Dept. 2002) (specifically repudiating the insured's assertion that the phrase "loss of" must include "loss of use of" the insured premises, since the policy's covered causes of loss required any loss to be "direct" and "physical," which "narrows the scope of coverage" to "losses involving physical damage to the insured's property"); *10E, LLC v. Travelers Indem. Co. of Connecticut*, Case 2:20-cv-04418-SVW-AS, 2020 WL 5095587, at *4 (C.D. Cal. Aug. 28, 2020), opinion amended and superseded,

No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ("An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property…. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property—not that the restrictions caused direct physical loss or damage," as "Plaintiff remained in possession of its dining room, bar, flatware, and all of [its other restaurant] accoutrements").

Plaintiffs would distinguish the many cases cited above by suggesting that the businesses at issue shut down only due to governmental orders. Plaintiffs' Amended Petition alleges that their restaurant closures did not *solely* result from the orders mandating the temporary suspension of in-person dining only, but also purportedly out of a corporate motivation to avoid the "the danger of exposure… to the virus." Pet. ¶ 95. This feeble distinction simply does not change the analysis, because it does not alter the well-established legal meaning of "direct physical loss." *See Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) ("Direct physical loss… unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage," and "closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure" are not covered losses; "Plaintiff has not pled any facts showing physical alteration or structural degradation of the property" and "[n]othing about the property has been altered since March 2020. Plaintiff need not make any repairs or change any part of the building to continue its business.").

Moreover, Plaintiffs' Response cites no Texas case law interpreting "direct physical loss of or damage to" in any contrary way. Indeed, the cases[6] cited actually undermine Plaintiffs'

---

[6] The other two cases cited—but not explained—by Plaintiffs in n.10 of their Response are inapposite, as they involved different fact patterns and were not issued under Texas law. *See Manpower Inc. v. Ins. Co. of Pennsylvania*, No. 08-C-0085, 2010 WL 3809695, at *1 (E.D. Wis. Sept. 24, 2010) (business's personal property was covered as "lost" under Wisconsin law after it became inaccessible due to the physical collapse of the business's building); *Blue Springs*

argument that "loss *of*" has no meaning unless it includes "temporary loss of one kind of use." Plaintiffs cite *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSX), 2018 WL 3829767, at *4 (C.D. Cal. July 11, 2018) for this point, but that case supports Chubb's position. In *Total Intermodal*, which was decided under California law, a shipment of the insured's goods was accidentally directed to China, where the customs authorities took possession and refused to release the goods. The insured's policy—as here—covered "direct physical loss of or damage to" insured property. *Id.* There was no evidence that the goods being held by the Chinese customs authorities had sustained any damage, so coverage was not implicated on those grounds. *Id.* Therefore, the only dispute in that case—as here—was whether the insured had alleged the "direct physical **loss of**" their property to implicate its insurance coverage. *Id.* The Court reasoned that the "ordinary" meaning of the phrase "'loss of' property contemplates that the property is **misplaced and unrecoverable**," distinguishing that portion of the coverage provision from the latter half covering "damage to" the insured property, thus giving both phrases meaning. *Id.* (holding that the insured had established that its undamaged goods were "lost" within the meaning of the policy's coverage, since "the phrase 'loss of' includes the **permanent dispossession** of something") (emphasis added). This case helpfully illustrates how the coverage in Plaintiffs' Policy for "loss of" is distinct from "damage to"[7]—but Plaintiffs have alleged neither

---

*Dental Care, LLC v. Owners Ins. Co.*, No. 20-CV-00383-SRB, 2020 WL 5637963, at *4 (W.D. Mo. Sept. 21, 2020) (finding plaintiff alleged "loss" under Missouri law where complaint pled that Covid-19 was physically present "on an around the insured property" and that plaintiff had to end or reduce operations "because of actual contamination by COVID-19" on their property). The Lombardi Plaintiffs make no such factual allegations in their Petition, and they cite no cases holding that the allegations they do make constitute "direct physical loss of" their property under Texas or any other state's law.

[7] Another court interpreting the phrase "direct physical loss of or damage to" under Georgia law rejected the insured's argument that "loss of" could mean the "loss of use" of their restaurant and instead found that the insurer's position that both prongs would necessitate damage to the insured property was not incongruous, since "loss is the 'disappearance of value' or 'the act of losing possession' by complete destruction, while damage is any other injury requiring repair. As an illustrative example, a tornado that destroys the entirety of the restaurant results in a 'loss of' the restaurant, while a tree falling on part of the kitchen would represent 'damage to' the restaurant." *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, Civ. No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020).

prong and at least one is required for coverage to exist. Plaintiffs have not alleged, for example, that their restaurant's awning, oven, light fixtures, or serving dishes have been misplaced or are unrecoverable. They certainly have not alleged that they have permanently lost possession of the entirety of their sixteen restaurants. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) (temporary closure of store due to Covid-19 was not a "direct physical loss of" the property since it was not a "permanent dispossession." "When the Stay at Home orders are lifted, Mudpie can regain possession of its storefront. Mudpie's physical storefront has not been 'misplaced' or become 'unrecoverable,' and neither has its inventory."). Plaintiffs simply have not alleged a "direct physical loss of" their insured property under the law of Texas or any other state. Therefore, their claim for business interruption[8] coverage has no basis in law and must be dismissed.

---

[8] Plaintiffs argue that the Policy's "period of restoration" provision is ambiguous and also that it should be read out of the policy since it conflicts with Plaintiffs' invented interpretation of "direct physical loss." Response at pp. 13-14. The Policy provides that the "period of restoration" ends once the damaged insured property "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality," thus indicating that business interruption coverage applies only when the insured property is physically damaged or permanently lost, and therefore in need of repair, construction, or replacement. See Am. Motion Ex. A at p. 28 (¶ A.1) and p. 30 (¶ F.3). However, Plaintiffs fail to provide two conflicting reasonable interpretations for the term "period of restoration," so their ambiguity argument cannot be credited. *See Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 720 (Tex. App.—San Antonio 1994, writ denied). And courts never construe contracts by tossing out a provision as Plaintiffs urge here; rather, all provisions should be read together. Many other courts have found that the period of restoration provision comports with and supports their finding that "direct physical loss" requires some injury to the property. *See Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV, 2020 WL 5051581, at *9 (S.D. Fla. Aug 26, 2020) ("constru[ing] 'direct physical loss or damage' to require actual harm" to the insured property "gives effect" and meaning to the policy's period of restoration provision); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, Civ. No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020) (noting that "period of restoration" provision "aligns with an understanding that 'loss of' means total destruction while 'damage to' means some amount of harm or injury"); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("period of restoration" provision indicates inapplicability of business income coverage, since "[t]he words 'rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature" but "here, there is nothing to fix, replace, or even disinfect for Mudpie to regain occupancy of its property").

**B. The "Causes of Loss – Special Form" Applies to Plaintiffs' Coverage Claim and Requires Plaintiffs' Loss or Damage to Result From "Direct Physical Loss."**

Plaintiffs' argument that there are no applicable causes of loss for the Policy's business income interruption coverage provision is demonstrably false.  *See* Response p. 8.  As explained in Chubb's Amended Motion (at pp. 12-13), the Policy's business income form requires that the claimed "loss or damage must be caused by or result from a Covered Cause of Loss" (Am. Motion Ex. A at p. 28 (¶ A.1)) and refers to the Declarations, where the "applicable Causes of Loss form" is specified (*id.* at p. 29 (¶ A.3)).  The Supplemental Declarations (*id.* at pp. 31-46) set forth the "Covered Causes of Loss" for each coverage of the Commercial Property portion of the policy, including the "BLANKET GRP #2" schedule of locations, which are those included in the coverage for "BUS. INCOME BY VALUE" with a cumulative limit of insurance of $18,952,419.[9] *Id.* at p. 31.  Each of the Plaintiffs' sixteen insured restaurant locations in "BLKT GRP 2" with coverage for "BUS INC OTHER THAN RENTAL" are separately listed in the "blanket schedule" of the Supplemental Declarations, and *each of these coverages individually designates* "SPECIAL" as the "Covered Causes of Loss."  *See* Am. Motion, Ex. A at pp. 31-46 (highlighted Supplemental Declarations indicating each location included in the Blanket Group 2, Business Income coverage).  The Policy provides that "[w]hen Special is shown in the Declarations, Covered Causes of Loss means **direct physical loss**...."  Am. Motion Ex. A at p. 47 (¶ A) (emphasis added).  As the Supplemental Declarations make clear, the Plaintiffs are not entitled to coverage unless they plead that their "loss or damage" was "caused by or result[ed] from" a "**direct physical loss**."  Am. Motion Ex. A at pp. 28-29, 31-46, 47.  Plaintiffs' failure to plead any direct physical loss means their breach of contract claim has no basis in law and must be dismissed.

---

[9] Plaintiffs plead (Pet. ¶ 11)—and confirm in in their Response (p. 8)—that this is the relevant limit for the business interruption coverage they claim.

To distract the Court from this plain reading of the Policy's designation of "SPECIAL" for each and every location in the Supplemental Declarations that is subject to the Business Income coverage in Blanket Group 2,[10] Plaintiffs feign confusion over how to read the Policy, ultimately urging the Court to conclude that there are no covered losses at all.[11] Plaintiffs *ignore* each of the sixteen specific entries in the Supplemental Declarations for business income coverage for their sixteen restaurants (all of which have "Special" listed in their "covered causes of loss" column) (*id.* at pp. 31-46) and instead pretend they can only read the rows associated with "specific features" of the restaurants, which pertain to the coverages for business personal property, awnings, and canopies. Response at p. 10. Wearing these blinders, Plaintiffs then assert that the "Special" covered causes of loss designation only applies to those rows relating to non-business income coverages, when in reality the "Special" designation applies to every *specific* location listed in the Supplemental Declarations for *all* coverages, including business income. Am. Motion Ex. A at pp. 31-46.

### C. The Ordinance or Law Exclusion Applies and Bars Coverage Given the Affirmative Factual Allegations in Plaintiffs' Petition.

As demonstrated in Chubb's Amended Motion (pp. 12-13) and in Part I.B of its Reply, *supra*, the "Causes of Loss – Special Form" applies to Plaintiffs' business income interruption claim, and Plaintiffs' argument to the contrary (Response at pp. 7-10) is both unsupported and

---

[10] Plaintiffs even acknowledge in their Amended Petition that the business income coverage they seek only applies to the premises "for which a Business Income Limit Of Insurance is Shown in the Declarations." Pet. ¶ 10; Am. Motion Ex. A p. 28 (¶ A.1). Consistent with this coverage provision, the Supplemental Declarations list each of the sixteen restaurant locations that are subject to the "business income" limit of insurance for "Blanket Group 2."

[11] Plaintiffs' argument, which asserts there are *no* specified covered causes of loss in the Supplemental Declarations (which is flatly untrue, as the highlighting in Ex. A conclusively demonstrates) would actually upend the entire policy and make the business income coverage illusory, as there would be no covered causes of loss at all. *See* Response p. 8.

incorrect. Therefore, the Ordinance or Law exclusion, which appears on this same form, also applies. Am. Motion Ex. A at p. 47 (¶ B.1.a).

Under Rule 91a, "[a] cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1. A pleading can be found to have no basis in law on two grounds— either by *failing* to allege sufficient facts to establish the necessary elements of a cause of action or by *affirmatively* alleging "additional facts that, if true, bar recovery." *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). In the context of the Ordinance or Law exclusion, it is the latter; Plaintiffs affirmatively plead facts that establish the exclusion undoubtedly applies and foreclose any possibility of coverage.

The Ordinance or Law exclusion states that Chubb "will not pay for loss or damage caused directly or indirectly by" the "enforcement of or compliance with any ordinance or law regulating the … use… of any property," even if the loss "results from [a]n ordinance or law that is enforced even if the property has not been damaged," "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Am. Motion Ex. A at p. 47 (¶ B.1.a(1)(a)). Plaintiffs have affirmatively plead that their business interruption loss was caused by their compliance with government orders restricting their ability to operate their restaurants for dine-in services, even though their restaurants were not physically damaged.[12] Given Plaintiffs' affirmative allegations that squarely fit the parameters of the Ordinance or Law exclusion in the Policy, their coverage claim is excluded and their breach of contract claim has no basis in law.

---

[12] Pet. ¶¶ 47-48 and 55 (detailing the municipal orders regulating the use of the Lombardi's restaurants and prohibiting dine-in services). Though the Plaintiffs now claim they pre-emptively decided to close their restaurants' dine-in services "to prevent the ongoing danger of the virus," they concede that these "preventative measures align[ed] with various governmental directives" requiring them to take those actions. The Ordinance or Law exclusion of the Policy therefore applies to any resulting damages—regardless of Plaintiffs' mixed motives for the partial closures—since it states that such losses are "excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Am. Motion Ex. A p. 47 (¶ B.1).

Other than attempting to entirely disclaim the plain applicability of this form, Plaintiffs seek to avoid this exclusion by asserting that the governmental orders which temporarily shut down the Plaintiffs' in-restaurant dining in March 2020 were not an "ordinance or law," supposedly because they were neither enacted by a state legislature nor did they appear in a city code.[13] Plaintiffs' argument that the exclusion is inapplicable fails for two separate reasons.

First, Plaintiffs' cherry-picked definitions of "law" and "ordinance" are unduly narrow[14] and out of step with those words' regular meanings. Black's Law Dictionary defines "law" as, among other things, "the aggregate of legislation, judicial precedents, and accepted legal principles" and "the body of authoritative grounds of judicial and administrative action." LAW, Black's Law Dictionary (11th Ed. 2019). And "ordinance" is defined, among other things, as "an authoritative law or decree, esp., a municipal regulation." ORDINANCE, Black's Law Dictionary (11th Ed. 2019). The broad, unqualified use of the terms "law" and "ordinance" in the Policy, as demonstrated by these definitions, necessarily encompasses the state, county, and city orders and directives alleged in the Petition.[15]

---

[13] Plaintiffs assert, without legal support, that "*only* the state legislatures are authorized to pass regulatory laws, and *only* the city councils may pass ordinances." *See* Response at pp. 6-7, 23. *None* of the long list of citations Plaintiffs append to this assertion support any part of their statement. *See, e.g.,* Tex. Const., Art. III, § 29 (requiring statutes enacted by the state legislature to contain the "enacting clause" of "Be it enacted by the Legislature of the State of Texas."). Similarly, the long list of Codes of Ordinances cited by Plaintiffs and attached as exhibits to their Response establish only that certain city councils are empowered to issue resolutions and ordinances, among other powers. None of the codes cited by Plaintiffs defines ordinance or states that the word "ordinance" can *only* mean a ruling passed by a city council.

[14] As just one illustrative example, Plaintiff's definition of "law" as used in the Policy to mean only statutes enacted by state legislatures would negate the authority of agency regulations, which "have the force and effect of law." *See Canyon Reg'l Water Auth. v. Guadalupe Blanco River Auth.*, 286 S.W.3d 397, 404 (Tex. App.—Corpus Christi 2008, no pet.).

[15] To the extent Plaintiffs' objection to the orders' qualification as a "law or ordinance" is premised on the idea that the County Judges issuing certain of the orders (*see* Pet. ¶¶ 47, 55) do not have legislative authority, that premise is legally incorrect. *See Galveston County, Tex. v. Quiroga*, 14-18-00648-CV, 2020 WL 62504, at *7 (Tex. App.—Houston [14th Dist.] Jan. 7, 2020, no pet.) ("The County Judge is the presiding officer of the Commissioners Court. The Commissioners Court has both a legislative, executive, and judicial function.") (internal citations omitted). *See* Response p. 11 (Plaintiffs assert, without citation to supporting law, that "laws and ordinances are formal legislative enactments.").

Second, the Ordinance or Law exclusion applies to the "***enforcement*** of or ***compliance*** with any ordinance or law…" Am. Motion Ex. A p. 47 (¶ B.1(a)) (emphasis added). Plaintiffs concede that "the directives issued in Texas [were] derived from authority in Texas Government Code Section 418.018(a)…" (Response p. 6). Thus, Plaintiffs' compliance with the Covid-19 orders and directives requiring their dine-in services to temporarily cease operation is *necessarily* compliance with the empowering state statute, which Plaintiffs concede to be law.[16] *See, e.g., United States v. Ferguson*, 1:07-CR-70, 2007 WL 4146319, at *5 (E.D. Tex. Nov. 16, 2007) (curfew imposed by county judge was proper, since "Judge Frank was empowered by law (Tex. Gov. Code § 418) to declare a curfew and restrict the movement of individuals in Jasper County, Texas."). Therefore, even if Plaintiffs' self-serving definition of "law" is accepted solely for purposes of argument, the Policy's exclusion of any damages caused by the insured's "compliance with any ordinance or law" is still implicated and still bars Plaintiffs' coverage claim.

### D. Plaintiffs Have Not Plead Any of the Facts Necessary to Support a Coverage Claim Under the Civil Authority Provision.

To demonstrate Plaintiffs' supposed entitlement to coverage under the Policy's Civil Authority provision, Plaintiffs' Response purports to rely wholly on generic—*and legally inapposite*—statements made in an April 2020 governmental declaration that the Covid-19 virus was "physically causing property damage" in the region. Response p. 12. This is insufficient to avoid dismissal of its breach of contract claim for having no basis in law, as Rule 91a measures the viability of Plaintiffs' claim according to the factual allegations in its Petition and whether those allegations establish Plaintiffs' cause of action. Instead of acknowledging their own failure

---

[16] On its own, Texas Government Code Section 418 would accomplish nothing. The purpose of the statute is to empower local officials to enact and enforce measures of law that are deemed necessary in an emergency situation. *See Ferguson*, 2007 WL 4146319, at *5. This statutory authority was precisely what was invoked when the various Texas Covid-19 orders were issued.

to plead even a single fact—much less *all* of the necessary facts—to establish a right to the Civil Authority coverage in the Policy, Plaintiffs instead attempt to distract the court with a generic and legally conclusory[17] statement made by a public official, which is not actually a fact at all.

As explained in the Amended Motion (*see* Part II.D), Plaintiffs' claim for Civil Authority coverage has no basis in law and must be dismissed because Plaintiffs have failed to allege *any* of the predicate facts for that coverage. Plaintiffs have not alleged that a "direct physical loss" caused damage to other property within one mile of any of the insured restaurant premises, and they have not plead that any civil authority prohibited access[18] to their restaurant premises in response to the dangerous conditions posed by the nearby damage. Am. Motion Ex. A at p. 29 (¶ A.5). Incredibly, since Plaintiffs realize they have not and cannot plead damage within a mile of the insured premises, they instead contend that the "*entirety*" of each jurisdiction that issued Covid-19 orders "was the focal point of the 'damages.'" Response p. 12. This argument misses the coverage requirements of the Policy's Civil Authority provision by way more than a mile. Since Plaintiffs have plead *none* of the requisite facts necessary to entitle them to the Civil Authority coverage, their claim has no basis in law. *See Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, Civ. No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *6 (N.D. Ga. Oct. 6, 2020) (rejecting insured's

---

[17] Only factual allegations—not legal conclusions or conclusory statements—should be taken as true for purposes of a Rule 91a motion to dismiss. *See City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 826 (Tex. App.—Austin 2014, no pet.) ("[A] legal conclusion need not be taken as true in evaluating the sufficiency of the pleadings.").

[18] As explained in the Amended Motion (Part II.D at pp. 19-21), Plaintiffs concede that the relevant orders permitted Plaintiffs access to their insured premises at all times to provide take-out and delivery food services. Pet. ¶¶ 47-48, 55. While Plaintiffs assert that one of the Dallas orders "prohibit[ed] access and use of any premises operated as dine-in restaurants" (Pet. ¶ 48), that allegation of impaired access is contradicted by their own Petition and therefore has no basis in fact under Rule 91a. In fact, Plaintiffs acknowledge that the orders "allow[ed] operation" (and therefore access to and use of) the restaurants to provide "take-out services." *Id.* While Plaintiffs conspicuously fail to quote the city order that they claim "prohibit[ed] access," the order they do quote in the preceding paragraph specifically permits restaurants to "provide take out, delivery, or drive-through services." Pet. ¶ 48; *see also* Pet. ¶ 55. Rule 91a states that "[a] cause of action has no basis in fact if no reasonable person could believe the facts pleaded." Tex. R. Civ. P. 91a.1. Plaintiffs' allegation that they lost "access" to their premises is contrary to fact, contradicted by their own pleading, and could not be believed by any reasonable person. The Court should not accept the allegation as true on this Rule 91a motion.

claim for Civil Authority coverage predicated on the assertion that the Covid-19 virus was generally causing damage in the community, since the civil authority provision "contains several clear conditions precedent for coverage" and the insured had pleaded none of them); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020) (rejecting claim for civil authority coverage where none of the predicate requirements were alleged, and particularly noting that "[t]he government orders alleged in the complaint prohibit the *operation* of Plaintiff's business; they do not prohibit *access* to Plaintiffs' place of business"); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) (plaintiff not entitled to civil authority coverage where it was permitted to operate its business for limited purposes, so it failed to allege that it was prohibited from accessing its own premises).

Relatedly, Plaintiffs ask the court to give them a pass on pleading the requisite facts that would entitle Plaintiffs to the relief they seek, even though the sole basis on which a Rule 91a motion to dismiss may be judged is whether the Plaintiffs have pleaded allegations that demonstrate a cause of action with a basis in law. Plaintiffs suggest "there may be fact issues [as to] whether the surrounding properties indeed were damaged," though they have pleaded no such facts. Response p. 16. But Rule 91a measures the viability of Plaintiffs' claims by whether the *pleaded allegations* entitle Plaintiffs to the relief they seek. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (dismissing petition on Rule 91a motion, since "[w]hether the dismissal standard is satisfied depends solely on the pleading of the cause of action"). Plaintiffs' suggestion that more facts may one day develop which could entitle them to relief—or that facts may already exist that they nonetheless neglected to plead—has no bearing here.

### E.  The Virus Exclusion Bars Coverage of Plaintiffs' Claim.

To avoid the fatal impact of the Policy's Virus Exclusion, Plaintiffs argue that it is impossible to tell what part of the policy the Virus Exclusion applies to.  This claim has no merit and sorely strains Plaintiffs' credibility.

The Virus Exclusion states, off the top, that it "modifies insurance provided under" the Policy's "COMMERCIAL PROPERTY COVERAGE PART."  Am. Motion Ex. A at p. 48.  Even a cursory examination of the Business Income (and Extra Expense) Coverage Form upon which Plaintiffs seek coverage shows that it is identified, in its top right corner, as part of the "COMMERCIAL PROPERTY" coverage of the Policy.[19]  Am. Motion Ex. A at p. 28.

Furthermore, the Virus Exclusion also provides that it "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover **business income, extra expense or action of civil authority**."  Am. Motion Ex. A at p. 48 (¶ A) (emphasis added).  Plaintiffs acknowledge all of this language (*see* Response at pp. 15-16), but then feign an inability to deduce whether the Virus Exclusion applies to the "Business Income (and Extra Expense)" coverage form.  That position is simply not credible.

Plaintiffs next argue that the Virus Exclusion cannot apply because Plaintiffs do not allege the virus was ever present at their insured premises.  Therefore, Plaintiffs assert, the virus itself could not have caused their business interruption loss.  Response at pp. 16-17.  This 'temporal

---

[19] The Policy only contains two coverage parts: Commercial Property and Commercial General Liability.  *See* Am. Motion Ex. A at p. 26 (Common Policy Declarations, setting forth the premiums for the only two applicable coverage parts of the Policy).  The Policy's Schedule of Forms and Endorsements groups each component of the Policy according to whether it is common to both parts (Property *and* General Liability) or is specific to either Property *or* General Liability.  Am. Motion Ex. A at p. 27.  Both the Virus Exclusion and the Business Income coverage forms are listed under the Commercial Property coverage part of the Policy on this schedule (*id.*).  In addition, each of those forms are also identified as belonging to the "COMMERCIAL PROPERTY" coverage part in their headings (*id.* at pp. 28 and 48).

sequence,' chicken-or-the-egg argument does not improve Plaintiffs' coverage position, as the interruption of the Plaintiffs' business (whether motivated by their own pre-emptive decision or mandated by governmental orders) was still "caused by or result[ed] from" the Covid-19 outbreak.

By its terms, the Virus Exclusion states that Chubb "will not pay for loss or damage caused by or resulting from any virus… that induces or is capable of inducing physical distress, illness or disease." Am. Motion Ex. A at p. 48 (¶ B). According to Plaintiffs' allegations, the ordinances temporarily limiting Plaintiffs' restaurant operations were issued in response to the virus, to mitigate risks to the public (Pet. ¶¶ 43-77, 96) by, in part, prohibiting dine-in use of restaurants (*id.* ¶¶ 47-48, 55). Plaintiffs also allege that they pre-emptively closed their restaurants to avoid the danger of the virus. Pet. ¶ 95.[20]

Plaintiffs' allegations demonstrate the applicability of the Virus Exclusion, even though they do not allege the virus was ever present at their restaurants, because Plaintiffs allege their business interruption was "caused by or result[ed] from" the virus. *Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indemnity Co. of Conn.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020) (holding coverage claim for Covid-19 business interruption coverage was precluded by virus exclusion that "clearly and unequivocally exempts 'loss or damage caused by or resulting from any virus'" where complaint alleged (1) a business interruption following governmental orders concerning the risks of exposure to the virus and risks of physical damage to property from the virus, and (2) that the restaurant pre-emptively shut down due to concerns about the dangers of the virus); *Diesel Barbershop, LLC et al. v. State Farm*

---

[20] *See also* Response p. 5 ("The Lombardi Plaintiffs therefore implemented restrictions regarding physical use and access to their properties to prevent the ongoing danger of the virus. And although these preventative measures align with various governmental directives, they independently were necessary and implemented by the Lombardi Plaintiffs to mitigated the well-documented risk of property damage and danger to the public health.") (internal quotations and emphasis omitted).

*Lloyds*, No. 5:20-CV-461-DAE, Doc. No. 29 (Order Granting Defendant's Motion to Dismiss) at pp. 15, 17-18 (W.D. Tex. Aug. 13, 2020) (rejecting plaintiff's argument that virus exclusion could only apply if Covid-19 was alleged to be present at the insured property); *Turek Enterprises, Inc. v. State Farm Mutual Automobile Ins. Co.*, Case No. 20-11655, 2020 WL 5258484, at *2 (E.D. Mich. Sept 3, 2020) (rejecting plaintiffs' argument that the governmental orders—not the virus itself—caused their losses and therefore the virus exclusion did not apply, since the orders were expressly "issued to 'suppress the spread of COVID-19 and accompanying public health risks," so the "only reasonable conclusion is that the Order—and, by extension, Plaintiff's business interruption losses—would not have occurred but for COVID-19"); *Martinez v. Allied Ins. Co. of Am.*, Case No. 2:20-cv-00401FTM66NPM, 2020 WL 5240218, at *3 (M.D. Fla. Sept. 2, 2020) (dismissing breach of contract claim as non-viable in the face of the policy's virus exclusion, "[b]ecause Martinez's damages," *i.e.*, lost business income due to governmental orders limiting the services offered by his dental practice during the pandemic, "resulted from COVID-19, which is clearly a virus"); *Gavrilides Management Co. v. Michigan Ins. Co.*. Case No. 20-258-CB, Doc. No. 23 (transcript of July 1, 2020 hearing) at 20:19-21:18; 22:10-14; 23:16-17 (Mich. Cir. Ct. August 4, 2020) (rejecting plaintiff's argument that the virus exclusion did not apply to foreclose coverage, where their operational restrictions were undertaken in response to the virus).

## II.    Plaintiffs Concede That, if Their Breach of Contract Claim is Dismissed, Then Their Ancillary Remaining Claims Have No Basis in Law and Should Also Be Dismissed.

Plaintiffs concede, by failing to make any arguments contrary to those presented in Sections III and IV of Chubb's Amended Motion, that their claim for breach of the duty of good faith and fair dealing, their request for punitive damages, and their claim under the Texas Prompt Pay Act are all dependent upon their breach of contract claim—*i.e.,* that the remaining claims have no viability if there is no coverage under the Policy.  Therefore, Plaintiffs admit that if their breach

of contract claim is dismissed for having no basis in law, then their remaining claims all necessarily have no basis in law and must be dismissed as well. S*ee, e.g., Charboneau v. Box*, No. 4:13-CV-678, 2017 WL 1159765, at *13 (E.D. Tex. Mar. 29, 2017) ("[A] plaintiff's failure to brief an argument in the plaintiff's response to a motion to dismiss generally results in waiver of such argument."); *Mayo v. Halliburton Co.*, No. CIV.A. H-10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (same); *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("case law interpreting Rule 12(b)(6) [is] instructive" on Rule 91a motions to dismiss); *Vandelay Hospitality Group LP d/b/a Hudson House v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *2 (N.D. Tex. Oct. 7, 2020) (dismissing all claims, because plaintiff "has not plausibly pleaded that it is entitled to policy benefits," and therefore "it has also failed to plausibly allege a claim for violations of the Texas Insurance Code" and "a breach of the duty of good faith and fair dealing").

### Conclusion and Prayer

Chubb moves for a dismissal of all claims alleged against it with prejudice, and for all other relief to which it may be justly entitled, including its reasonable attorney fees associated with this Amended Motion, as provided by Rule 91a.7 of the Texas Rules of Civil Procedure.

Dated:  October 12, 2020

NORTON ROSE FULBRIGHT US LLP

*/s/ Daniel M. Lane, Jr.*

Daniel M. Lane, Jr.
State Bar No.  00784441
neel.lane@nortonrosefulbright.com
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, TX  78205
Telephone:      (210) 224-5575
Facsimile:      (210) 270-7205

ATTORNEYS FOR DEFENDANT INDEMNITY
INSURANCE COMPANY OF NORTH AMERICA

## CERTIFICATE OF SERVICE

This pleading, Defendant Indemnity Insurance Company of North America's Reply in Support of its Amended Motion to Dismiss Pursuant to Rule 91a, has been served upon all counsel of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on October 12, 2020

Michael W. Huddleston
Nolan C. Knight
Munsch Hardt Kopf & Harr, P.C.
500 North Akard Street, Suite 3800
Dallas, Texas 75201-7584
mhuddleston@munsch.com
NKnight@munsch.com

*/s/ Daniel McNeel Lane, Jr.*

Daniel McNeel Lane, Jr.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Cardenas on behalf of Daniel Lane, Jr.
Bar No. 784441
susan.cardenas@nortonrosefulbright.com
Envelope ID: 47103737
Status as of 10/13/2020 9:34 AM CST

Associated Case Party: LOMBARDI'S OF DESERT PASSAGE, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Susan Cardenas | | susan.cardenas@nortonrosefulbright.com | 10/12/2020 2:02:52 PM | SENT |

Associated Case Party: INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jodye Kasher | | jodye.kasher@nortonrosefulbright.com | 10/12/2020 2:02:52 PM | SENT |
| Daniel McNeel Lane | 784441 | neel.lane@nortonrosefulbright.com | 10/12/2020 2:02:52 PM | SENT |
| Julie Martin | 24115272 | julie.martin@nortonrosefulbright.com | 10/12/2020 2:02:52 PM | SENT |
| Katie Oldham | | katie.oldham@nortonrosefulbright.com | 10/12/2020 2:02:52 PM | SENT |
| Julie Martin | | julie.martin@nortonrosefulbright.com | 10/12/2020 2:02:52 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mike Huddleston | | mhuddleston@munsch.com | 10/12/2020 2:02:52 PM | SENT |
| Elizabeth Duenas | | eduenas@munsch.com | 10/12/2020 2:02:52 PM | SENT |

Associated Case Party: LOMBARDI'S, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nolan Knight | | NKnight@munsch.com | 10/12/2020 2:02:52 PM | SENT |