# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

BALLAS NAILS & SPA, LLC,

      Plaintiff,

      v.

TRAVELERS CASUALTY
 INSURANCE COMPANY OF
AMERICA,

      Defendant.

Civil Action No. 4:20-cv-1155-NAB

## PLAINTIFF'S MEMORANDUM IN RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, BALLAS NAILS & SPA, LLC ("Plaintiff"), by and through its undersigned counsel, pursuant to Local Rule 4.01 and this Court's Docket Entry of October 14, 2020, submits its Response in Opposition to Defendant's, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA ("Defendant"), Motion to Dismiss the Complaint. (Doc. No. 13).

## I.    INTRODUCTION

This lawsuit arises from Defendant's denial of insurance coverage under Plaintiff's Insurance Policy No. 680-8J732539-19-42 ("Policy") that was in effect from October 22, 2019 through October 22, 2020. (Exhibit A). Plaintiff's Policy is an "all risk" policy that broadly covers fortuitous losses resulting from any kind of

"physical loss or damage" unless otherwise excluded in writing. (Doc. No. 1 ¶ 17). This presents the threshold question of whether the global Coronavirus pandemic ("COVID-19") and subsequent Executive Orders issued by Missouri state authorities constitute "physical loss or damage" within the meaning of this widely used coverage. This is precisely what Plaintiff has alleged, and therefore, must be taken as true at this stage in the case: that the referenced Executive Orders, issued due to COVID-19, forced Plaintiff to suspend its business operations, which caused direct physical loss and direct physical damage to the insured premises, triggering coverage for Business Income and Extra Expenses, Civil Authority, and Sue and Labor coverages. (Doc. No. 1).

## II.    FACTUAL BACKGROUND

Plaintiff is a limited liability company providing personal care services (nail salon) located at 731 North New Ballas Road, St. Louis, Missouri ("Premises"). (Doc. No. 1, ¶ 13). On March 21, 2020, the St. Louis County Director of Health & Hospitals/Health Commissioner issued an executive order that required individuals living in the City of St. Louis to remain at home, except to "perform tasks essential to the health and safety of individuals[.]"[1] (Doc. No. 1, ¶ 42). All businesses were "allowed to maintain the value of inventory and infrastructure, provide security,

---

[1] https://www.stlouis-mo.gov/government/departments/health/communicable-disease/covid-19/documents/upload/Health-Commission-s-Order-5-03-21-2020.pdf (accessed Oct. 21, 2020).

process payroll or employee benefits, or facilitate employees working remotely, but are required to cease all other activities." *Id.* Plaintiff's nail salon business was not among the businesses that were exempt from the restrictions imposed in the Order. As a result, Plaintiff was forced to suspend or reduce business. (Doc. No. 1, ¶ 7). On August 11, 2020, Defendant failed to provide coverage for Plaintiff's losses and has failed to pay for any of Plaintiff's losses or extra expenses. (Exhibit B).

On August 27, 2020, Plaintiff filed a three-count Complaint against Defendant, seeking Declaratory Judgment for coverage under the following: Business Income and Extra Expense Coverage, Civil Authority Coverage, and Sue and Labor Coverage. (Doc. No. 1, p. 14-17). On September 30, 2020, Defendant filed its Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's alleged failure to sate a claim upon which relief can be granted ("Motion to Dismiss"). (Doc. No. 14).

Defendant fails to adequately establish why the instant case should be dismissed and does not successfully argue that any insurance policy exclusion applies.  Defendant's argument is based almost exclusively on the single contention that COVID-19 is not a "direct physical loss" under the Policy. This argument is not persuasive and other Missouri district courts agree. See *Studio 417, Inc. v. Cincinnati Ins. Co.,* 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) (denying insurer's motion to dismiss holding that COVID-19 is a direct physical loss under the insured's Policy

language); see also *K.C. Hopps, Ltd. v. Cincinnati Ins. Co.,* Case No. 20-cv-00437-SRB (W.D. Mo., Aug. 12, 2020) (citing to *Studio 417* in denying insurer's motion to dismiss holding that COVID-19 does constitute a direct physical loss). For the foregoing reasons mentioned *infra,* Defendant's Motion to Dismiss should be denied.

## III.   ARGUMENT

### A. Legal Standard Under Fed. R. Civ. P. 12(B)(6).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When ruling on a motion to dismiss [under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir. 2001).

"[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The factual allegations of a

complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable. *Data Mfg., Inc., v. United Parcel Serv., Inc.,* 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted).

**B. Plaintiff Has Met Its Burden To Establish Direct Physical Loss.**

The Policy states that Defendant will pay for actual loss of Business Income sustained due to the necessary "suspension" of "operations" during the "period of restoration." (Ex. A, p. 86). Further, the "suspension" must be caused by direct physical loss of *or* damage to the premises and must be caused by *or* result from a covered loss. (Ex. A at pp. 86-87) (emphasis added).

**1.  The policy language at issue is ambiguous.**

"An ambiguity exists in an insurance policy when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the policy." *Peters v. Employers Mut. Cas. Co.,* 853 S.W.2d 300, 301-02 (Mo. banc 1993). "When a policy's language is ambiguous it will be construed against the insurer." *Id.* at 302. "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.,* 54 S.W.3d 661, 667 (Mo. App. E.D. 2001).

In its Motion, Defendant readily defines the phrases "direct physical loss of or damage to property" as occurring when "the property experiences a tangible,

material, physical alteration of its condition, or when the insured is permanently and physically dispossessed of it." (Doc. No. 14, p. 6). Defendant attempts to supplement this argument by relying on cases decided at summary judgment. (Doc. No. 14, p. 6). It is impossible to define these phrases by citing to the Policy because these definitions do not exist in the Policy. In *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 787 F.2d 349, 351-52 (8th Cir. 1986), the court applied Missouri law holding that "direct physical loss" as stated in an insurance policy is ambiguous and therefore, must be construed against the insurer. Therefore, the Policy is ambiguous and cannot simply be read in its "plain and ordinary meaning" as Defendant suggests. (Doc. No. 14, p. 9).

### 2. Physical alteration is not required to constitute physical loss or physical damage.

Defendant argues that "direct physical loss of or damage to property" requires a tangible, concrete or material alteration of the Premises such as an alteration caused by fire, water or smoke. (Doc. No. 14). However, the Policy does not refer to a tangible, concrete or material alteration. The Policy's use of "or" between the terms "physical loss" and "physical damage" provides that one or the other is required and a "loss" cannot mean same thing as "damage." As a result, the Policy is ambiguous as to what these terms precisely mean. *See Mehl v. Travelers Home & Marine Ins. Co.,* 2018 LEXIS 74552, at *2 (E.D. Mo. May 2, 2018). The *Mehl* court denied the insurer's motion for summary judgment holding that since the phrase "direct

6

physical loss" was not defined within the insurance policy, it was therefore ambiguous and did not require "actual physical damage." *Id.*

Defendant chooses to completely ignore a recent Western District of Missouri decision in *K.C. Hopps,* whereby the court denied the insurer's motion to dismiss, finding that the mere *threat* of COVID-19 constituted "direct physical loss" under the insurance policy even though COVID-19 was never actually present on the premises. *K.C. Hopps,* Case No. 4:20-cv-00437-SRB. (Court order attached hereto as Exhibit C) (emphasis added). The similarities of *K.C. Hopps* to the case at bar are undeniable. The insured in *K.C. Hopps,* like Plaintiff both: (1) purchased all-risk insurance policies with ambiguous language; (2) incurred "direct physical loss" of property due to COVID-19 absent evidence of the virus ever actually being in/on the premises; and (3) incurred "direct physical loss" of property due to the Missouri executive orders which prohibited the public from accessing the insureds' covered premises, absent any physically altered property. *Id.* The *K.C. Hopps* court further held that the insured was entitled to Civil Authority coverage and Sue and Labor coverage. *Id.* Contrary to Defendant's argument that the case of *Studio 417* is inapplicable to the immediate case (Doc. No. 14, p. 7), the *K.C. Hopps* denied the insurer's motion to dismiss "[f]or substantially the same reasons as those in the *Studio 417* Order." (Ex. C, p. 2).

7

The facts contained in *Studio 417* are also objectively similar to the immediate case for multiple reasons. *Studio 417,* 2020 WL 4692385. Plaintiff, like the insureds in *Studio 417,* purchased all-risk commercial insurance policies but were refused coverage based on the insurer's contention that there was no proof of "actual, tangible, permanent, or physical alteration" to the premises in order to show "direct physical loss" or "direct physical damage" *Id.* In its response to the insurer's motion to dismiss, the insureds in *Studio 417* cite to various case law holding that physical loss or physical damage can in fact occur in situations where there has been a loss of use of the premises, when the property becomes unusable or uninhabitable, or when there is danger of direct physical loss. See *Hampton*, 787 F.2d at 352;  see also *e.g., Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.,* 311 F.3d 226 (3d Cir. 2002). Further, while true that the insureds in *Studio 417* did in fact show evidence of COVID-19 within the premises, the insureds also made the persuasive argument that COVID-19's presence, presumed presence, or *imminently threatened* presence rendered the properties unusable or unsafe for their intended purposes. (2020 WL 4692385) (emphasis added). The Eastern District of Missouri rejected the insurer's argument holding that, when an insurance contract does not unequivocally define the terms "direct physical damage" and/or "direct physical loss," then a physical alteration is not required. *Studio 417,* 2020 WL 4692385. Similarly here, while Plaintiff does not have evidence that COVID-19 was ever present within the

Premises, the sole imminent threat of its presence caused Plaintiff to suspend business operations and sustained direct physical loss and direct physical damage to the Premises as a result.

Further, in *Optical Serv. USA/JC1 v. Franklin Mut. Ins. Co.,* No. BER-L-3681 (N.J. Super. Ct. Aug. 13, 2020), the court denied the insurer's motion to dismiss where the insured argued that its direct physical loss was a result of executive closure orders issued in response to COVID-19 as opposed to COVID-19 itself. The insured cited to *Wakefern Food Corp., v. Liberty Mut. Fire Ins. Co.,* 406 N.J. Super. 524 (App. Div. 2019) whereby the court held "[s]ince the term 'physical' can mean more than material alteration or damage, it is incumbent on the insurer to clearly and specifically rule out coverage in the circumstances where it was not to be provided." *Id.* at 542. Consequently, the *Optical* court held that the parties had yet to have the opportunity to present a sufficient record before the court for a legal determination. *Id.* Likewise, at the present stage of the instant matter, the parties also need the opportunity to present a sufficient record and continue into the discovery phase of litigation.

Several courts have held that "direct physical loss of or damage to property" and similar policy language constitutes and provides coverage not only for actual physical damage but also for lost operations or inability to use insured properties. See *Travco Ins. Co. v. Ward,* No. 715 F. Supp. 2d 699, 708 (E.D. Va. 2010); *Motorist*

*Mut. Ins. Co. v. Hardinger,* 131 Fed. App'x. 823, 827 (3rd Cir. 2005); *Manpower Inc. v. Ins. Co. of the State of Penn.,* No. 08C0085, 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009) (holding that an insured suffered a "direct physical loss" covered by all-risk insurance policy when it was forced to evacuate insured premises for safety concerns, even though the premises were not physically damaged). Further, "[i]n determining damage covered by insurance, court[s] must consider the nature and intended use of property, and the purpose of the insurance contract." *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts,* No. CV-01-1362-ST, 2002 WL 31495830 at *28 (D. Or. June 18, 2002). The intended purpose of a nail salon is to provide a safe environment for its customers to use and enjoy salon services without risk of danger. COVID-19 is inherently dangerous, and its presumed presence or imminently threatened presence rendered Plaintiff's Premises unusable or unsafe for its intended purpose. *Id.* at *29. Further, it has previously been held that there does not have to be actual contamination of property, as long as a physical cause imminently threatens a property's function or habitability. *Hampton*, 787 F.2d at 352 (holding that an insured could claim business income coverage where risk of collapses required abandonment of grocery store).

As such, the fact that Plaintiff cannot provide evidence that COVID-19 was ever present in the Premises (Doc. No. 1, ¶ 28), the mere threat of COVID-19 contaminating the Premises constitutes a direct physical loss or damage. The March

21, 2020 Executive Order allowed businesses "to maintain the value of inventory and infrastructure, provide security, process payroll or employee benefits, or facilitate employees working remotely, but required the cessation of all other activities. (Doc. No. 1, ¶ 42). Thus, Plaintiff was not able to use the Premises for its *intended* use and thereby sustained a direct physical loss or damage.

## C. Plaintiff Has Sufficiently Alleged That The "Act or Decisions" And "Ordinance or Law" Exclusions Are Inapplicable.

Defendant alleges that Plaintiff is excluded from coverage pursuant to the "Acts or Decisions" and "Ordinance or Law" Exclusions, (Doc. No. 14, p. 16). Similar to its other arguments, Defendant relies primarily on caselaw decided at the summary judgment stage and is inapplicable to the case at bar.

Defendant argues that Plaintiff did not prove the Civil Authority coverage is applicable because the Civil Orders did not prohibit access to the Premises. However, as explained in Plaintiff's Complaint, Executive Order issued by St. Louis County Director of Health & Hospitals/Health Commission required St. Louis residents to remain at home except to "perform tasks essential to the health and safety of individuals[.]" (Doc. No. 1, ¶ 42). On April 3, 2020, Missouri's Director of the Department of Health and Senior Services issued a "Stay at Home Order," which stated that individuals residing in Missouri shall avoid leaving their homes. [2]

---

2 https://governor.mo.gov/priorities/stay-home-order (accessed Oct. 21, 2020).

11

(Doc. No. 1, ¶ 43). Plaintiff clearly alleges that the Orders required personal care services (nail salons), which were not categorized as an "essential business," to cease all activities other than to maintain inventory, provide security, process payroll or employee benefits, or facilitate employees working remotely. (Doc. No. 1, ¶ 42). Thus, while Plaintiff's employees may have been able to access the Premises under limited circumstances, the Executive Orders prohibited Plaintiff's customers from accessing the Premises.

Plaintiff's position is supported by *TMC Stores, Inc. v. Federated Mut. Ins. Co.,* 2005 WL 1331700 (Minn. Ct. App. June 7, 2005). *TMC* involved the disruption to the business of a garden and pet store as a result of nearby construction. *Id.* at *1. The construction consequently limited the previously available parking spaces for customers of the garden and pet store which remained open during construction. *Id.* The court held that the definition of "prohibits access" was not defined in the policy, rendering the term ambiguous and in turn required "a factual determination of whether its customers' access to the store was prohibited by th[e] construction. *Id.* at *4. The court ultimately held for the insurer however, this was because the stores' customers were able to enter the store even though the ease of access was diminished. *Id.* However, the court noted, that if "the record demonstrated a virtual economic shutdown of the business, this would be a more difficult case." *Id.* In the

12

instant case, the Executive Orders did cause a virtual economic shutdown and Plaintiff's customers were expressly prohibited from accessing the Premises.

Moreover, the specific language in the Civil Authority exclusion provides for coverage for "actual loss of Business Income" sustained and "Extra Expense" incurred "caused by action of civil authority that prohibits access to the described premises." (Ex. A, p. 110). In its Motion, Defendant states, "[t]ogether, the words 'prohibit access' mean exactly that – an order of civil authority that completely forbids and prevents people from approaching, reaching, and entering the insured premises. (Doc. No. 14, p. 19). However, the ambiguity here lies within the definition of "people" which is not defined in the Policy. "Under Missouri law, insurance policy exclusions are to be strictly construed against the insurer, and it is the insurer's burden to prove than an exclusion applies." *Spirtas Co., v. Fed. Ins. Co.,* 481 F. Supp. 2d 993, 997 (Mar. 7, 2007). The exclusion does not provide for who exactly needs to be prohibited from the Premises in order to trigger the Civil Authority exclusion. As argued *supra,* the language of the Policy is again, ambiguous and open to more than one interpretation. Missouri law also recognizes that "the duty to defend is broader than the duty to indemnify." *Id.* at 789.

## D. Plaintiff Has Met Its Burden Of Showing That The Virus Exclusion Does Not Apply.

Plaintiff has sufficiently alleged that the Policy's virus exclusion is not applicable to the facts of this case. As discussed *supra,* Plaintiff suffered a direct

physical loss as a result of the Executive Orders issued by civil authority regarding the mere threat of COVID-19's proliferation, not as a result of the virus itself. Plaintiff clearly alleges in its Complaint that there is no evidence that the virus has even been on the Premises. (Doc. No. 1, ¶ 28). Defendant contends that Plaintiff's attempt to drive the Executive Orders from COVID-19 "defies common sense" and is inconsistent with the "unambiguous language" of the virus exclusion. (Doc. No. 14, p. 15). Further, Defendant admits that the virus exclusion applies to situations where the virus is alleged to be physically present but is not limited to physical presence. (Doc. No. 14, p. 14). Yet again, Defendant is unable to direct this Court to the specific alleged "unambiguous language" within the Policy itself and is left to cite to unpersuasive caselaw. (Doc. No 14., p. 15). If Defendant had intended this exclusion to be as cut and dry as it alleges, the Policy should have, but did not specify an exclusion for virus proliferation.

## E. Sue And Labor Coverage Is Plausibly Alleged.

Finally, Defendant contends that Plaintiff is not entitled to coverage for prevention of loss, commonly referred to as "Sue and Labor Coverage." (Doc. No. 14, p. 22). Instead, Defendant argues that the Policy simply imposes a duty on Plaintiff to prevent further damage in the event of loss or damage to the covered property. Defendant nonetheless admits that Plaintiff would be entitled to recover expenses in such circumstances but denies that there is a covered loss triggering such

14

recovery. (Doc. No. 14, p. 23). Plaintiff's allegations show that the "Duties in the Event of Loss or damage" clause in the Policy should be regarded as a separate form of coverage. The clause is designated to protect the insurer's interest by reducing and mitigating the risk of damage from a covered loss and the Eighth Circuit supports this allegation. In *Assicurazinoi Generali S.P.A. v. Black & Veatch Corp.,* 362 F.3d 1108 (8th Cir. 2004), the insured brought a claim alleging consequential damages and expenses incurred to avoid delay on a project. The court expressed, "we are hard pressed to see how the [insurer] reasonably can claim that [the insured] had no duty to minimize losses under the policy that it procured, and instead should have the [insurer] with even greater losses to pay." *Id.* at 1116. As explained herein, Plaintiff has sufficiently plead claims for coverage under numerous clauses within the Policy. Further, Plaintiff properly alleges that it undertook reasonable measures by suspending its business operations pursuant to the Executive Orders to prevent the risk of contracting, spreading and prolonging COVID-19 within the Premises. Therefore, the Court should deny Defendant's Motion to Dismiss Plaintiff's claim for Sue and Labor coverage.

## IV.   CONCLUSION

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss Plaintiff's Complaint in its entirety.

15

Respectfully submitted,
AGRUSS LAW FIRM, LLC

By: /s/ Taylor L. Kosla
     Taylor L. Kosla
     ARDC No. 6327180
     AGRUSS LAW FIRM, LLC
     4809 N. Ravenswood Avenue
     Suite 419
     Chicago, IL 60640
     312-224-4695 – office
     312-253-4451 – facsimile
     taylor@agrusslawfirm.com
     Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on October 21, 2020, that the foregoing document was electronically filed with the Court's CM/ECF system to be sent via the electronic notification system to all attorneys of record.

By:/s/ Taylor L. Kosla_____
Taylor L. Kosla