# Exhibit C

FILED

2020 Jul-21  PM 02:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| WAGNER SHOES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 7:20-cv-00465-LSC |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO DISMISS FOURTH AMENDED COMPLAINT
## AND MEMORANDUM IN SUPPORT

Defendants Auto-Owners Insurance Company ("Auto-Owners") and Owners Insurance Company ("Owners") (collectively "Defendants") move the Court for dismissal of the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support state as follows:

Plaintiff Wagner Shoes LLC ("Wagner") operates a Tuscaloosa shoe store. It closed its doors for several weeks in response to retail shutdown orders from its Mayor and Governor. Now it is suing both Auto-Owners and Owners seeking payment for its lost profits "caused by the COVID-19 agent and the business interruption caused by the closure orders." (Doc. 17 at 16, ¶ 32). However, Plaintiff's policy was issued by Owners, who is the only entity with any contractual relationship with Plaintiff. (See Ex. A at 8; Doc. 17 at 3, n.3). The policy it issued requires "direct

physical loss of or damage to property" to trigger coverage. But there is no allegation of a physical injury to Plaintiff's property, or even the presence of any virus. Wagner's Fourth Amended Complaint thus fails to state a claim for which relief can be granted.

## FACTUAL BACKGROUND

### A.    Plaintiff's Allegations Rely on the Policy

Wagner's most recent complaint is devoid of factual details describing Wagner's business. (See Doc. 17). In previous versions Wagner stated that it owns and operates the retail store "Wagner's Shoes for Kids" in Tuscaloosa, Alabama. (Doc. 15 at 13, ¶ 21). Wagner closed its doors, as did other retail stores, in compliance with Tuscaloosa Mayor Walt Maddox's order dated March 26, 2020, and subsequently the State of Alabama's public health order dated March 27, 2020. (Id. at ¶¶ 20–21). Such Orders mandated the closure of all "non-essential businesses and services" including "clothing, shoe, and clothing-accessory stores."[1]

Wagner states that it seeks reimbursement for losses "directly caused by the COVID-19 agent and the business interruption caused by the closure orders." (Doc.

---

[1] The March 26, 2020 order issued by Tuscaloosa Mayor Walter Maddox and March 27, 2020 statewide order issued by Alabama State Health Officer, Scott Harris are available at: https://www.tuscaloosa.com/covid19 (last viewed May 31, 2020) and https://www.alabamapublichealth.gov/legal/orders.html (last viewed May 31, 2020), respectively. The current version of the complaint also includes a listing of five closure orders (including the above) affecting Tuscaloosa businesses. (Doc. 17 at 14, n. 14)

17 at 16-17, ¶ 32). Wagner makes several general allegations about COVID-19 and how it is thought to be transmitted, but it makes no allegations that the virus was ever detected in the store or that it physically contaminated any of Wagner's property or inventory. (*Id.* at 4-16).

At the time of the shutdown Wagner owned a commercial insurance policy issued by Owners, Policy # 49-585-800-01, which contained a Businessowner's Special Property Coverage Form (BP 00 02 0187). (*Id.* at 14, ¶¶ 24, 25). The named insured in that policy is Wagner's Shoe[s] LLC, which operates three retail shoe businesses, but the only property listed in the Declarations is "1825 McFarland Blvd," the location of Wagner's Shoes for Kids. (*See* Ex. A at 1, 10).

Wagner cites Coverage A in that policy form, which promises payment for "*direct physical loss of or damage to Covered Property* at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. 17 at 14, ¶ 25) (emphasis added). Wagner, which is a lessor of the premises, rightly states that "Covered Property" would include its "permanently installed fixtures" and its "personal property used to maintain or service the building." (*Id.* at 15, ¶ 26). However, Wagner's Fourth Amended Complaint is silent as to any specific "direct physical loss." It alleges only "business interruption caused by the closure orders" as the cause of its loss. (*Id.* at 16, ¶ 32). The Complaint also includes general

conclusory allegations that Plaintiff sustained losses due to COVID-19. (*Id.* at 16, ¶¶ 29, 32).

Wagner alleges that it "extended a claim for contractual property damage, business interruption, and ongoing property damage caused by the COVID-19 agent" to its insurance agent March 27, 2020. (*Id.* at 16, ¶ 29). Wagner states it was promptly notified by the agent and Auto-Owners that its claim did not fall within coverage on April 6, 2020. (*Id.*) It filed this lawsuit the next day, April 7, 2020. (Doc. 1). It then filed: a First Amended Complaint on April 14, 2020 (Doc. 9); Second Amended Complaint on June 8, 2020 (Doc. 12); Third Amended Complaint on June 22, 2020 (Doc. 15); and Fourth Amended Complaint on July 7, 2020. (Doc. 17). Wagner asserts claims for Declaratory Judgment (Count 1); Breach of Contract (Count 2); Bad Faith (Count 3); Institutional Bad Faith (Count 4); and Negligence/Wantonness (Count 5). (*Id.* at 16–20). All of these claims are due to be dismissed.

## B.     The Applicable Businessowners Policy Provisions

Wagner's lawsuit cites the insurance policy (No. 49-585-800-01) as the basis for relief, and thus the policy is incorporated therein by reference for the Court to consider in evaluating whether the Fourth Amended Complaint states a sufficient claim for relief. *See SFM Holdings, Ltd. v. Banc of Am. Sec. LLC*, 600 F.3d 1334, 1337 (11th Cir. 2002) (A court may consider a document incorporated by reference

where "it is (1) central of the plaintiff's claim, and (2) its authenticity is not challenged."); *see also Lawson v. Federal Ins. Co.*, No. 4:17-cv-01387-SGC, 2018 WL 6171430, *2 (N.D. Ala. Nov. 26, 2018) (considering insurance policy and plaintiff's claim for benefits attached to a Motion to Dismiss, where the documents were "incorporated by reference"). A full copy of the Owners policy identified as Policy No. 49-585-800-01 is attached hereto as **Exhibit A**.

Wagner's policy contains a property insurance form under which coverage is triggered only by a "direct physical loss of or damage to Covered Property…." (Ex. A at 42). Such policies generally afford benefits to restore a policyholder to its pre-loss condition by repairing the damaged property or paying for its replacement if irreparable. It also pays for related business losses and clean-up expenses provided there was a predicate covered loss (physical damage). However, losses that consist of only economic injuries, such as lost income, typically do not fall within coverage (as they do not here).

The basic insuring agreement in Wagner's policy states as follows:

> A. COVERAGE
>
> We will pay for *direct physical loss of or damage to Covered Property* at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

*Id.* (emphasis added). "Covered Property" means property of the insured "at the premises described in the Declarations," specifically Wagner's store at 1825

McFarland Boulevard. (*Id.* at 10). "Covered Cause of Loss" is defined in pertinent part as "*RISKS OF DIRECT PHYSICAL LOSS* unless the loss is: a. Excluded in Section B., Exclusions...." (*Id.* at 43).

The general grant of coverage for direct physical loss, as quoted above, is also expressly extended to certain consequential expenses entitled "Business Income" and "Extra Expense" coverage, as modified by Endorsement (54227 (8-00)), which states:

> **f.    Business Income**
>
> Subject to the Limit of Insurance provisions of this endorsement, we will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". *The suspension must be caused by direct physical loss of or damage to property at the described premises*, including personal property in the open (or in a vehicle) within the distance shown in the Declarations under BUSINESS PERSONAL PROPERTY – EXPANDED COVERAGE, caused by or resulting from a Covered Cause of Loss.
>
> ....
>
> **g.    Extra Expenses**
>
> Subject to the Limit of Insurance provisions of this endorsement, we will pay necessary Extra Expenses you incur during the "period of restoration" that you would not have incurred *if there had been no direct physical loss or damage to property at the described premises*, including personal property in the open  (or in a vehicle) within the distance shown in the Declarations under BUSINESS PERSONAL PROPERTY – EXPANDED COVERAGE, caused by or resulting from a Covered Cause of Loss.
>
> ....

(*Id.* at 79) (emphasis added).

This particular Policy, unlike some other property policies, does not contain an applicable Civil Authority Coverage Form.[2]

## LEGAL STANDARD FOR MOTION TO DISMISS

The rules of court require that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 571 (2007); *see* FED. R. CIV. P. 8(a)(2). That is, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant and court fair notice of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555. In order to survive a Rule

---

[2] The Policy does have an "Ordinance or Law" Endorsement that affords coverage for losses to an *undamaged* portion of a building caused by the enforcement of any ordinance or law that: (a) [r]equires the demolition of parts of the same property not damaged by a Covered Cause of Loss; (b) [r]egulates the construction or repair of buildings, or establishes zoning or land; and (c) is in force at the time of the loss. (*See id.* at 75). The "Ordinance or Law" Endorsement is not applicable to the facts alleged in the Fourth Amended Complaint, which do not involve demolition or regulation of construction and repair of buildings.

The Policy also contains an Electronic Equipment Endorsement. (Doc. 13-1 at 82). That endorsement provides business interruption and extra expense coverage, for "direct physical loss of or damage to" Scheduled Electronic equipment (e.g. air conditioning units, laptops) and Unscheduled Electronic Equipment. The Endorsement includes Business Income and Extra Expense coverage, for business interruption caused by the physical loss or damage to Electronic Equipment, including losses related to prohibition of access to the equipment by order of civil authority. (Doc. 13-1 at 84). Wagner has never claimed and the Complaint does not allege loss of income due to damage to Electronic Equipment.

12(b)(6) motion to dismiss, the plaintiff's complaint must contain enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The process of determining whether a complaint meets this standard "is a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A pleading does not satisfy the requirements of Rule 8 when it merely "leaves open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). And where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## **LEGAL ARGUMENT**

### **I.    Wagner has failed to plead "direct physical loss of or damage to covered property."**

The main flaw in Wagner's complaint is that it does not allege the presence of any virus on the insured property or any other source of direct physical loss of tangible property. Instead, it alleges only business interruption caused by COVID-

19 closure orders. The policy provides coverage only for "direct physical loss of or damage" to covered property. It does not provide any coverage for civil authority orders resulting in loss of business income—the only alleged factual basis for Plaintiff's claim.

Taking the facts in the Fourth Amended Complaint as true, Wagner has not shown an entitlement to relief (no "direct physical loss of or damage" to covered property) and Defendants' Motion to Dismiss is due to be granted. *See, e.g.*, *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137 (11th Cir. 2020) (applying Alabama law in affirming dismissal of breach of contract and bad faith claims under Rule 12(b)(6) based upon the ordinary meaning of the terms of an insurance policy that excluded coverage for "insects" and "vermins"); *see also Goldberg v. National Union Fire Ins. Co.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (dismissal is appropriate "when a review of the insurance policy and underlying claim for which coverage is sought reveals that the claim is not covered"), *aff'd sub nom. Stettin v. National Union Fire Ins. Co.*, 861 F.3d 1335 (11th Cir. 2017).

It is well-established in Alabama that where there is "no ambiguity in its terms, an insurance contract must be enforced as written."[3] *Monninger v. Group Ins.*

---

[3] Alabama applies the traditional rule of *lex loci contractus* to insurance contracts, such that "a contract is governed by the law of the jurisdiction within which the contract is made." *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). The Wagner policy indicates it was written for an Alabama company and delivered to an Alabama address. (*See* Ex. A at 1). Thus, Alabama law applies. *See Thompson v. Acceptance Ins. Co.*, 689 So. 2d 89, 92 (Ala. Civ. App. 1996) ("The 'delivered or issued for delivery' rule comports with Alabama's

*Serv. Ctr.*, 494 So. 2d 41, 43 (Ala. 1986). The insured bears the initial burden of proving the existence of coverage under an insurance policy. *FCCI, Inc. v. Capstone Process Sys., LLC*, 49 F. Supp. 3d 995, 998 (N.D. Ala. 2014) (citing *Colonial Life & Acc. Ins. Co. v. Collins*, 280 Ala. 373, 194 So. 2d 532, 535 (Ala. 1967)). The insurer bears the burden of proving an exclusion applies. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1181 (11th Cir. 2015) (citing *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001)). "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court . . . ." *Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 697 (Ala. 2003) (citing *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So.2d 853, 855 (Ala. 1991)).

In the present case, Wagner's policy provided insurance for the risk of "*direct physical loss of or damage to Covered Property* . . . caused by or resulting from any Covered Cause of Loss." (Ex. A at 42) (emphasis added). The policy defines "Covered Causes of Loss" as "*RISKS OF DIRECT PHYSICAL LOSS* unless the loss is: a. Excluded in Section B., Exclusions…." (Ex. A at 43).

In other words, the presence of "direct physical loss or damage to property" is necessary to trigger coverage. *Id.* Wagner's Fourth Amended Complaint, even

---

application of the *lex loci contractus* rule—the rule that the law of the state where the contract is made governs the interpretation of an insurance policy.")

given a liberal reading, contains no allegations of any physical damage to its property; it relies instead on losses sustained from the closure of its business under certain governmental orders. Wagner's conclusory allegation of "property damage caused by the COVID-19 agent"[4] in the abstract will not suffice for purposes of federal pleading standards. *Iqbal*, 556 U.S. at 678.

The fact that Wagner's policy is what some courts have described as an "All-Risk" policy does not alleviate its initial burden to plead and demonstrate physical damage to property, contrary to its claim otherwise. (Doc. 17 at 15, ¶27). As this Court stated in *Travelers Property Casualty Company of America v. Brookwood, LLC*: "[A]n all-risk policy mean[s] that it provides coverage for *all physical damage to covered property* unless a cause of loss is specifically excluded or limited." 283 F. Supp. 3d 1153, 1160 (N.D. Ala. 2017) (citing *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 809–810 (Ala. 2016)) (emphasis added). In order for Wagner to meet its initial coverage burden, it must demonstrate that "its covered property *was fortuitously physically damaged* through no misconduct or fraud on [Wagner's] part." *Id*. (emphasis added).

The Fourth Amended Complaint contains no allegation that Wagner's physical property was damaged but instead cites only business losses due to its

---

[4] (*See* Doc. 17 at 16, ¶ 29).

mandated closing. (Doc. 17). Thus, the allegations, even if taken to be true, do not establish coverage under the Businessowners Special Property Form.

Wagner's policy, unlike some property insurance policies, does not contain any provisions affording coverage for business interruption losses caused by a Civil Authority Order. That is one of the distinguishing facts from certain other recently-filed cases that rely on various Civil Authority provisions in seeking coverage for COVID-19 losses. Those cases cite policy provisions that are alleged to specifically include coverage for losses due to civil authority orders, under some circumstances. For example, some policies provide Civil Authority coverage if (among other things) damage to property occurs either at the premises or near the premises, resulting in a civil authority order prohibiting access to the property.[5] Wagner's policy contains no such provision. Thus, the Fourth Amended Complaint does not plead a claim that falls within the policy's insuring agreement; indeed, it shows the opposite. The motion to dismiss is due to be granted.

## II. Under Alabama law, "direct physical loss of or damage to covered property" does not mean business losses occasioned by civil ordinance.

---

[5] *See, e.g.*, *El Novillo Restaurant, et al. v. Certain Underwriters at Lloyd's London, et al.*, Case No. 1:20-cv-021525 (S.D. Fla. filed Apr. 4, 2020)  at (Docs. 1, 1-2);  *Big Onion Tavern Group, LLC, et al v. Society Ins. Inc.*, Case No. 1:20-cv-02005 (N.D. Ill. filed March 27, 2020) at (Docs. 1, 1-1); *Sandy Point Dental PC v. The Cincinnati Ins. Co.*, Case No. 1:20-cv-02160 (N.D. Ill. filed Apr. 6, 2020) at (Docs. 1, 1-1); *Frosch Holdco, Inc. v. The Travelers Indemnity Co.*, Case No. 4:20-cv-01478 (S.D. Texas filed April 24, 2020) at (Docs. 1, 1-2).

As noted in the previous section, Wagner's Fourth Amended Complaint does not allege the presence of COVID-19 germs on its premises or any other actual physical damage to its property. Even if it did allege that virus germs were present, such facts would not constitute "direct physical loss of or damage to property" under Alabama law because the germs can be cleaned off, leaving no lasting harm or disfigurement. In fact, Wagner's lawsuit now alleges only losses attributed to "business interruption caused by the closure orders." (*See* Doc. 17 at 16, ¶ 32). Such purely economic business losses do not equate to "physical damage" under an insurance policy in Alabama and other jurisdictions.

Where a term such as "direct physical loss" is undefined in the policy, Alabama courts look to its ordinary meaning, giving the words their "common interpretation" which "persons with usual and ordinary understanding would [ascribe to the words] when used to express the purpose for which they are employed." *Alabama Farm Bureau Mut. Cas. Co. Ins. Co. v. Goodman*, 279 Ala. 538, 541, 188 So. 2d 268, 270 (1966); *see also Safeway Ins. Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) (explaining that Alabama courts give the terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean").

Existing Alabama law construes "direct physical loss" as more than a mere economic loss; it means a tangible change that results in physical alteration of the

property. This issue was addressed by this Court in *Camp's Grocery, Inc. v. State Farm Fire & Cas. Co.*, No. 4:16-cv-0204-JEO, 2016 WL 6217161, at *1 (N.D. Ala. 2016). Three credit unions sued Camp's (the policyholder) alleging that its computer network was hacked and the confidential data of its customers was compromised. In seeking insurance benefits under a property insurance form, Camp's argued that the three credit unions' losses, which necessitated replacing the customers' physical debit cards, were covered "property damage" because the cards were tangible property that could be touched and handled. *Id*. at *7. This Court disagreed. It found that the corrupted credit data resulted only in *economic loss* creating "the need to issue replacement cards with new electronic data" and not "physical harm or damage to any cards as tangible property." *Id*. at *8. (emphasis added).

This Court in *Camp*'s relied on the seminal Alabama case on this issue, *American States Insurance Co. v. Martin*, 662 So. 2d 245 (Ala. 1995). In *Martin*, a policyholder claimed that its security instruments were exposed to unsafe financial conditions which "caused property loss or damage or loss of use . . . of the property." *Id*. at 249. The Alabama Supreme Court stated that such "economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to `tangible property.'" *Id*. at 249. The court noted that the policy contemplates a risk associated with "the assumption that tangible property, unlike an economic interest, is generally subject to physical damage or

14

destruction." *Id*. at 249. It cited several cases for the rule that "purely economic losses are not included in" the definition of "tangible property." *See id*. at 248–49 (citing *Grayber v. State Farm Fire & Cas. Co.*, 797 P.2d 214 (1990) (lost business and injury to reputation and goodwill are not damage to tangible property under a business owner's policy); *Travelers Indemnity Co. v. State*, 680 P.2d 1255 (Ariz. App. 1984) (loss of investment represented by an investment certificate not a loss of tangible property); *Keating v. National Union Fire Ins. Co. of Pittsburgh*, 995 F.2d 154 (9th Cir. 1993) (economic loss is not damage or injury to tangible property covered by a comprehensive general liability policy)).

The holding in *Martin* has been followed in multiple Alabama cases. For example, in *State Farm Fire and Casualty Co. v. Sexton & Sexton, Inc.*, the Middle District of Alabama construed an accounting firm's Businessowners policy that defined property damage as "a physical injury to or destruction of tangible property." 985 F. Supp. 1336 (M.D. Ala. 1997). That action involved a business owner's claim for economic losses and harm to the owner's credit rating caused by his spouse/employee's acts of insurance fraud. The Court held that such "loss of business" is "economic loss" which does not qualify as tangible "property damage." *Id*.; *see also Thorn v. American States Ins. Co.,* 266 F. Supp. 2d 1346, 1353 (M.D. Ala. 2002) (holding "[l]oss of money" from a contractual business dispute does not qualify as property damage under Alabama law as "[a] physical injury to tangible

property must occur."); *Gunnin v. State Farm Fire & Cas. Co.,* 508 F. Supp. 2d 998 (M.D. Ala. 2007) (Alabama law does not regard losses of business income as "tangible property damage" for purposes of determining whether a policy covers such loss); *State Farm Fire & Cas. Co. v. Middleton,* 65 F. Supp. 2d 1240 (M.D. Ala. 1999) (landlord's interference with a retail store's credit was not "physical damage to or destruction of tangible property").

Alabama's interpretation of "direct physical loss of or damage to covered property" is consistent with other jurisdictions which, using the same 'ordinary meaning' standard, have construed the same or similar words to mean a physical change in the insured's property. *See, e.g.*, *Universal Image Prod., Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (applying Michigan law, construing "direct physical loss or damage" as requiring "tangible damage" to the policyholder's property, equating to "physical loss"); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("a direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so"); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 37–38 (Cal. Ct. App. 2010) ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state,

occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."); *Mastellone v. Lighting Rod Mut. Ins. Co.,* 175 Ohio App. 3d 23, 884 N.E.2d 1180, ¶ 68 (holding "physical loss to property" language in insuring agreement requires harm to the structural integrity of the property); *see also* 10A Steven Plitt, *et al*., COUCH ON INSURANCE § 148:46 (3d ed. 2019) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") Thus, under its plain meaning, "direct physical loss of or damage to covered property" means that coverage is not triggered by the mere presence of virus germs that make no alteration to tangible property.

Recent early rulings in other COVID-19 business interruption suits are also consistent with Alabama law on this issue. The Southern District of New York denied a request for a preliminary injunction (thus finding no likelihood of success on the merits) finding business losses from COVID-19 did not equate to property damage. The case involved a publishing house in New York City which sought payment of benefits under a Businessowner's policy for COVID-19 losses. *See Social Life Magazine v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3311 (VEC) (S.D.N.Y.

17

argued May 13, 2020). Judge Valerie E. Caproni conducted a preliminary hearing on May 13, 2020, focusing on whether the plaintiff had demonstrated "direct physical loss of or damage to insured property requirement." She rejected the notion that the presence of virus in a community equates to property damage. *See id.*, Oral Argument Transcript attached as **Exhibit B**. She commented, "[the virus] damages lungs. It doesn't damage printing presses." (Ex. B, Transcript at 5). The cause of the damage (even if present in the business) is "that the governor has said you need to stay home. It is not that there is any particular damage to your specific property." (*Id.* at 8). The same is true for Wagner.

More recently, Michigan Circuit Court Judge Joyce Draganchuk granted an insurer's motion for summary judgment in a case involving a claim for lost profits sustained by a restaurant due to closure orders. The Court held oral argument on July 1, 2020. *See Gavrilides Management Co. v. Michigan Insurance Co.,* No. 20-258-CB (Ingham County Circuit Court, Lansing, Michigan), Oral Argument Transcript attached as **Exhibit C**. Judge Draganchuk considered the phrase "direct physical loss of or damage to property" finding it synonymous with "something that physically alters the integrity of the property." (Ex. C at 19-20). She also concluded (as did Judge Caproni), that "a virus can't cause physical loss or damage to property because virus' harm people, not property." (*Id.* at 21).

18

A dismissal would thus be in order even if Wagner could show that its premises were contaminated with COVID-19 germs and required some type of cleaning or disinfecting (which is not alleged). Such cleaning and disinfecting is not "physical damage" to property and is, at most, an economic loss. *See Universal Image Prod., Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012); *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018). In short, the damage alleged by Wagner is strictly economic, not physical, which does not trigger coverage under its policy.

Wagner's Fourth Amended Complaint contains some paragraphs that cite an extrinsic document issued by the Insurance Services Office (ISO) in conjunction with the introduction of a "virus exclusion" form in 2006. (Doc. 17 at 8-14). Wagner offers the self-serving conclusion that "ISO's amendment concedes that viral contamination is property damage," which is a mischaracterization. (Doc. 17 at 12, ¶19). This is a moot point, however, since Wagner has <u>not</u> alleged the presence of any virus germs on its property. These new paragraphs appear to serve no other purpose than to camouflage the fact that Wagner's complaint (now in its fifth version) fails to allege an actual injury to its property caused by the virus.

Wagner's policy also contains a number of express exclusions that would bar coverage even if COVID-19 germs had been found in the store. Examples include (without limitation) the Pollution Exclusion, Building Ordinance Exclusion,

Governmental Action Exclusion, Consequential Losses Exclusion, and Acts or Decision Exclusion. (*See* Ex. A at 47–49). However, the Court need not consider these exclusions since Wagner has <u>not</u> alleged the presence of any virus germs. The main insuring agreement thus is not triggered (requiring "direct physical damage or loss") and Defendants need not rely on those exclusions as grounds for dismissal. However, Defendants expressly reserve and do not waive the right to assert those provisions if placed at issue.

### III. Wagner's claims for breach of contract and bad faith (Counts II, III, and IV) must be dismissed absent a *prima facie* right to contractual benefits.

Wagner's Fourth Amended Complaint, in order to state a common law claim in contract or tort, must allege at least a colorable right to contract benefits; but its own allegations demonstrate otherwise. "An insurance policy is a contract," *Medlock v. Safeway Ins. Co.*, 15 So. 3d 501, 509 (Ala. 2009), so "[g]eneral rules of contract law govern an insurance contract," *Safeway Ins. Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). An element of breach of contract is "the defendant's nonperformance" of its obligations under the contract. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001).

First, Auto-Owners has no contractual relationship with Plaintiff—as the policy on its face demonstrates that Owners issued the policy. *See* (Ex. A at 8). As the Complaint correctly acknowledges, Owners and Auto-Owners are separate entities. (Doc. 17 at 3, n. 3; Docs. 17-2- 17-5). It is axiomatic that insurance policies

are contracts, and that contractual privity is required to maintain a breach of contract (or bad faith) action against an insurer. *See Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Auto-Owners, therefore is due to be dismissed from this action for this reason alone.

Regardless, as demonstrated previously, the policy does not afford benefits to Wagner where its alleged business losses were a result of civil authority orders, not "direct physical loss of or damage to property." Absent coverage, Defendants could not have breached and did not breach the insurance contract by declining to pay Wagner's claim. The Court should thus dismiss the breach of contract count. *See Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137 (11th Cir. 2020) (affirming the dismissal of breach of contract and bad faith claims under Rule 12(b)(6), where the ordinary meaning of the terms of an insurance policy excluding coverage for "insects" and "vermins" required dismissal); *see also Goldberg v. National Union Fire Ins. Co.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015)("… Courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered").

Moreover, since Wagner has not pled plausible facts to establish a breach of the insurance contract, there can be no cause of action for bad faith. *See Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001) ("[C]ontractual liability is a

prerequisite for liability for bad faith. Therefore, one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad faith claim); *see also State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013).

## IV. Alabama does not recognize causes of action for negligent or wanton claims handling (Count V).

Wagner's claim for negligent or wanton failure to investigate (Count V of the Fourth Amended Complaint) is due to be dismissed for the additional reason that Alabama does not recognize a cause of action for negligent or wanton handling of insurance claims. As this Court has previously noted, "[t]he Alabama Supreme Court 'has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims." *Lawson v. Fed. Ins. Co.*, No. 4:17-CV-01387-SGC, 2018 WL 6171430, at *5 (N.D. Ala. Nov. 26, 2018) (citing *Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995)); *see also Hillery v. Allstate Indem. Co.,* 705 F. Supp. 2d 1343, 1366–67 (S.D. Ala. 2010) (finding claim for negligent investigation not cognizable under Alabama law).

## <u>CONCLUSION</u>

Wagner's Fourth Amended Complaint shows on its face that its "business interruption" claim does not fall within the risks insured under its policy. It therefore is due to be dismissed.

Respectfully submitted,

*/s/ Forrest S. Latta*

Forrest S. Latta
forrest.latta@burr.com
S. Greg Burge
gburge@burr.com
Robert S. Given
rgiven@burr.com
Katherine West
kwest@burr.com

**OF COUNSEL:**
**BURR & FORMAN LLP**
Forrest S. Latta
S. Greg Burge
Robert S. Given
Katherine West
420 North 20th Street, Suite 3400
Birmingham, AL  35203
Tel:   205-251-3000

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 21st day of July, 2020:

Ted Colquett
ted@colquettlaw.com
COLQUETT LAW, LLC
Post Office Box 59834
2917 Central Avenue, Suite 305
Birmingham, AL  35259-0834

R. Matt Glover
mglover@princelaw.net
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL  35406

/s/ Forrest S. Latta
OF COUNSEL