# Exhibit D

IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

| | | |
|---|---|---|
| SYLVESTER AND SYLVESTER, INC., b/d/a Nick Sylvester's North End Italian Grille, | ) ) ) ) | CASE NO. 2020 CV 00817 |
| | ) | JUDGE TARYN L. HEATH |
| Plaintiff, | ) ) | JUDGMENT ENTRY |
| | ) | (Denying State Automobile Mutual |
| v. | ) | Insurance Company's Motion for |
| | ) | Judgment on the Pleadings) |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY d/b/a State Auto Insurance Companies, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter came before the Court on State Automobile Mutual Insurance Company's Motion for Judgment on the Pleadings; Sylvester and Sylvester, Inc.'s Response in Opposition to State Automobile Mutual Insurance Company's Motion for Judgment on the Pleadings; Plaintiff Sylvester and Sylvester, Inc.'s Supplement to its Response in Opposition to State Automobile Mutual Insurance Company's Motion for Judgment on the Pleadings; Plaintiff Sylvester and Sylvester, Inc.'s Notice of Filing Exhibits to Supplement to its Response in Opposition to State Automobile Mutual Insurance Company's Motion for Judgment on the Pleadings; and State Automobile Mutual Insurance Company's Reply in Support of its Motion for Judgment on the Pleadings and Supplement Addressing Plaintiff's Amended Complaint. State Auto has likewise filed three notices of supplemental authority.

1

## Background Facts

Plaintiff Sylvester and Sylvester, Inc., d/b/a Nick Sylvester's North End Italian Grille ("Sylvester") is the insured of Defendant State Automobile Mutual Insurance Company ("State Auto"). Sylvester purchased insurance through State Auto, including Commercial General Liability Coverage and a Businessowners Special Property Coverage, identified as Policy Number BOP 2917869 ("the Policy"). The Policy included several additional endorsements and exclusions.

Sylvester is a family operated restaurant located in North Canton, Ohio. On March 15, 2020 beginning at 9:00 pm, Sylvester shut down its business operations in response to civil authority orders issued by the Governor of Ohio and the Ohio Department of Health. Sylvester alleges that the actual or suspected presence of COVID-19 at or in the vicinity of its property has caused it a loss of use of the property. Sylvester alleges this constitutes a physical loss of its property. Sylvester further alleges that it has suffered additional damages in time and money expended in order to protect its employees and patrons from the coronavirus pandemic. Sylvester seeks coverage for its losses under its policy with State Auto.

The parties first disagree as to whether Sylvester's adequately pled that there was "direct physical loss or damage" necessary to trigger the Policy's Business Income or Extra Expense coverages.

The Policy's Special Property Coverage outlines its scope of coverage as follows: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.[1]" A Covered Cause of Loss includes all risks of direct physical loss unless otherwise excluded or limited by the terms of the

---
[1] Business Owners Special Property Coverage Form, Part A, Coverage (SA000065)

Policy.[2] The Policy provides "Additional Coverages" for Business Income and Extra Expense. With respect to the Policy's additional coverage for Business Income, it provides:

> **(1) Business Income**
>
> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> **(2) Extended Business Income**
>
> If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during [a specified period].
>
> However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.
>
> Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.[3]

And with respect to the Policy's additional coverage for Extra Expense, it provides:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.[4]

Sylvester's Policy also included an amendment to extend the Business Income and Extra Expense Coverage to expand the additional coverages provided in the standard policy. It provides that the amendment "modifies the insurance provided" and should be "added to Paragraph **A.5. Additional Coverages**." The endorsement provides:

---

[2] Business Owners Special Property Coverage Form, Part A(3) Covered Causes of Loss (SA000066)
[3] Business Owners Special Property Coverage Form, Part A(5)(f)(1) & (2) (SA000068).
[4] Business Owners Special Property Coverage Form, Part A(5)(g) (SA000069).

3

**Business Income – Limited Extension For Food-Borne Illness**

Additional Coverages **f.** Business Income and **g.** Extra Expense is amended to include coverage for the following Causes of Loss:

> 1. The suspension of your "operations" at the described premises due to the order of a civil authority; or adverse public communications or media reports, resulting from the actual or alleged:
> 
> \* \* \*
> 
> **b.** Exposure of the described premises to a contagious or infectious disease[5].

Finally, the Policy also contains Civil Authority Coverage, which states:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense cause by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.[6]

State Auto has moved for judgment on the pleadings, arguing that there is no set of facts that could entitle Sylvester to relief under the language of the Policy.

## Motion for Judgment on the Pleadings

A Motion for Judgment on the Pleadings is governed by Civ.R. 12(C), which provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Court may grant a motion for judgment on the pleadings only where the Court "(1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). The Court may consider the complaint and answer in determining a Civ.R. 12(C) motion.

---

[5] Business Income and Extra Expense – Limited Extension for Food-Borne Illness (SA000126).
[6] Business Owners Special Property Coverage Form, Part A(5)(i) (SA000070).

4

*Id.* at 569. Civ.R. 12(C) motions "are specifically for resolving questions of law." *Id.* at 570, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166, 297 N.E.2d 113 (1973).

Accordingly, "Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *Id.*, citing *Burnside v. Leimbach*, 71 Ohio App.3d 399, 403, 594 N.E.2d 60 (1991). In so determining, "the complaint must allege sufficient facts to support any conclusions, and unsupported conclusions are not presumed to be true." *Boske v. Massillon City School Dist.*, 5th Dist. Stark No. 2010-CA-00120, 2011-Ohio-580, ¶12, citing *Barnsville Edu. Assoc. v. Barnsville Exempted Village School District Bd. of Edu.*, 7th Dist. Belmont No. 06BE32, 2007-Ohio-1109. In other words, "[a] legal conclusion cannot be accepted as true for purposes of ruling on a motion to dismiss." *Cirotto v. Heartbeats of Licking Cty.*, 5th Dist. Licking No. 10-CA-21, 2010-Ohio-4238, ¶18, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### Analysis

The interpretation of an insurance contract is a matter of law for the Court. *Imhoff v. Encompass Ins.*, 5th Dist. Tuscarawas No. 09-AP-09-0048, 2010-Ohio-2760, ¶11, citing *City of Sharonville v. American Employers Ins. Co.*, 109 Ohio St.3d 186, 846 N.E.2d 833, 2006-Ohio-2180, at paragraph six of the syllabus. The Court must interpret the policy in conformance with the intention of the parties, and by applying the ordinary and common meaning of the words used. *Id.*, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211, 519 N.E.2d 1380 (1988). Ambiguous provisions must be construed "strictly against the insurer and liberally in favor of the insured." *Id.*, citing *King* at the syllabus.

Under Ohio law, "the insured bears the initial burden of proof to establish that a policy provides coverage for a particular loss," but if the insurer contends that an exclusion applies, "the

5

insurer has the burden of proving the applicability of the exclusion." *Collins v. Auto-Owners Ins. Co.*, 12th Dist. Warren No. CA2016-08-074, 2017-Ohio-880, ¶24, 80 N.E.3d 542, citing *Will Repair, Inc. v. Grange Ins. Co.*, 8th Dist. Cuyahoga No. 100717, 2014-Ohio-2775, 15 N.E.3d 386, ¶21 and *Continental Ins. Co. v. Louis Marx & Co., Inc.*, 64 Ohio St.2d 399, 401, 415 N.E.2d 315 (1980). "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King, supra,* 35 Ohio St.3d 208 at the syllabus.

State Auto argues that Sylvester's has not adequately pled facts that would support a claim that there was "direct physical loss of or damage to" to the insured premises, and therefore Sylvester's claim must fail as a matter of law. The policy does not define "direct physical loss of or damage to."

State Auto argues that "direct physical loss of or damage to" should be read to require a "specific alteration" to Sylvester's property in order to trigger coverage. State Auto relies upon *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130. In *Mastellone*, the appellate court did not provide the entirety of the policy language, but stated that it was interpreting a policy that required "physical loss to property," and proceeded to consider the meaning of the undefined term "physical injury," which it "read in context with the other terms used in the definition of 'property damage'" to "mean harm to the property that adversely affects the structural integrity of the house." *Id.* at ¶60-61. Applying its definition, it found that a temporary black stain from mold which could be clean and did not otherwise affect the building's siding, and concluded that the homeowners "failed to show that their house suffered any direct physical injury as required by the homeowners' policy." *Id.* at ¶68. It is unclear to this Court whether the phrase "physical injury" appeared elsewhere in the policy at issue in *Mastellone* or

whether the *Mastellone* court considered the phrases "physical loss" and "physical injury" to be interchangeable.

State Auto also argues that "physical loss of or damage to property" is required to trigger coverage under the Civil Authority Coverage as well.

As discussed by each party, courts across the nation have reached differing results as to whether insureds have adequately stated claims for "physical loss of or damage to" their property in coverage cases for loss of business income or expenses incurred as a result of coronavirus and the resulting governmental shutdowns.[7]

None of the cases cited by either party—nor any of the cases considered by the Court in its own research—concerned an additional endorsement for food borne illness comparable to the one at issue in State Auto's policy.[8] State Auto's policy provides coverage for the suspension of Sylvester's operations due to the order of a civil authority "resulting from the actual or alleged * * * [e]xposure of the described premises to a contagious or infectious disease.[9]" This provision

---

[7] For a non-exhaustive comparison of courts who have considered this issue and reached differing conclusions, compare *Hillcrest Optical, Inc. v. Continental Casualty Co.*, S.D. Ala. No. 1:20-CV-272-JB-B, 11 F.Supp.3d --, 2020 WL 6163142; *10E, LLC v. Travelers Indem. Co. of Connecticut*, C.D. Cal. No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653 (Sept. 2, 2020); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, S.D. Cal. No. 20-CV-907-CAB-BLM, --F.Supp.3d --, 2020 WL 5500221 (Sept. 11, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, S.D. Fla. No. 20-22615-Civ-WILLIAMS/TORRES, 2020 WL 5051581 (Magistrate's report and recommendation, case dismissed before objections due); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, --F.Supp.3d --, 2020 WL 5938755 (N.D. Ga.); *Whiskey River on Vintage, Inc. v. Illinois Casualty Co.*, --F.Supp.3d --, 2020 WL 725875 (S.D. Iowa); *Real Hospitality, LLC v. Travelers Casualty Ins. Co. of America*, -- F.Supp.3d --, 2020 WL 6503405 (S.D. Miss.) (all concluded that insureds did not adequately plead "physical loss of or damage to" their property), with *Dino Palmieri Salons, Inc. v. State Automobile Mus. Ins. Co.*, Cuyahoga No. CV-20-932117 (Nov. 17, 2020); *Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd.*, -- F.Supp.3d --, 2020 WL 5939172 (M.D. Fla.) (albeit based in part on failure to provide the entire insurance policy to the Court); *North State Deli, LLC v. The Cincinnati Ins. Co.*, N.C. Super. No. 20-CVS-02569, 2020 WL 6281507 (granting partial summary judgment in favor of insured); *Studio 417 v. Cincinnati Ins. Co.*, W.D. Mo. No. 20-cv-03127-SRB, 2020 WL 4692385; *Blue Springs Dental Care v. Owners Ins. Co.*, W.D. Mo. No. 20-CV-00383-SRB, 2020 WL 5637963; *Hill and Stout PLLC v. Mut. Of Enumclaw Ins. Co.*, Wash.Super. No. 20-2-07921-1 SEA, 2020 WL 6784271 (Nov. 13, 2020) (all concluding that the insureds had stated a claim upon which relief could be granted under the terms of the insurance policies.)

[8] *Whiskey River on Vintage, Inc. v. Illinois Casualty Co.*, --F.Supp.3d --, 2020 WL 7258575 (S.D. Iowa) contained "Food Contamination Coverage," but the policy required a governmental authority or board of health to close the premises due to contaminated food, a condition that does not exist in the policy at issue in this case. *See id.* at *17.

[9] Business Income and Extra Expense – Limited Extension for Food-Borne Illness (SA000126).

modifies the Extra Expense and Business Income provisions. It does not require proof of physical loss of or damage to Sylvester's property. It also contains its own unique definition for the "period of restoration" it covers. By its own terms, it is in addition to and modifies the other coverage provided by the Policy.

State Auto urges this Court to limit application of its additional coverage titled "Food-Borne Illness Endorsement" as intending to cover only "risks emanating from or relating to food." However, the scope of coverage is determined not by the headings or titles used by the insurer, but by the policy language itself. *See Hillyer v. State Farm Fire & Cas. Co.,* 97Ohio St.3d 411, 2002-Ohio-6662, ¶16, 780 N.E.2d 262 and *Miami-Luken, Inc. v. Navigators Ins. Co.,* S.D. Ohio No. 1:16-CV-876, 2018 WL 3424448, at *7 ("[T]he heading does not define the coverage."). The policy language contains no limitation that the risk must be related to food, but rather applies to "a contagious or infectious disease."

State Auto also seems to argue that Sylvester's claim must fail because the governmental orders were not targeted specifically at Sylvester or because there is no allegation that the coronavirus was actually discovered on the Sylvester's premises. The plain language of the policy, however, provides coverage for either actual or "alleged" exposure of the premises to a contagious disease. Nor does anything in the policy language requires that the civil authority order be directed specifically at Sylvester rather than at the restaurant industry more generally. Sylvester has pled that it was forced to suspend in-person dining operations due to an order of a civil authority. Sylvester has pled that its losses are a result of "the physical spread and/or contamination of COVID-19 at, in, on, and/or around Sylvester's premises described in the policy." COVID-19 is a contagious disease.

Accepting as true all allegations in the Amended Complaint, construing all inferences in favor of Sylvester, and considering the language of the Policy as a whole, the Court cannot concludes that Sylvester can prove no set of facts that would entitle it to relief under one or more of the Policy's provisions.

## Conclusion

State Automobile Mutual Insurance Company's Motion for Judgment on the Pleadings is **DENIED**.

**IT IS SO ORDERED.**

_____
**JUDGE TARYN L. HEATH**

cc. Atty. Lee E. Plakas/ Gary A. Corroto/ Maria C. Klutinoty Edwards/ Collin S. Wise/ Jeanne M. Wickham- via email
Atty. Drew H. Campbell/ David K. Stein- via email
Atty. Adam H. Fleischer/ David J. Buishas/ Elise D. Allen- via email